EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO. |
| Plaintiffs, | : | 291CV00180 (RNC) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al. | : | |
| Defendants. | : | OCTOBER 1, 2004 |

## **DECLARATION OF DAVID C. SHAW IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND COSTS**

I, David C. Shaw, declare under penalty of perjury that the following statements are true and correct:

1. I was graduated from the University of Connecticut School of Law in June of 1973.

2. I was employed by the Legal Aid Society of Hartford County, Inc., in Hartford, Connecticut from February 1, 1974 through August 1, 1984 and have been in private practice ever since. Throughout these thirty years of practice I have concentrated on litigation on behalf of persons with disabilities and their families.

3. From 1975 to the present I acted as lead counsel, or played a central role, in many class action and civil rights lawsuits brought to enforce the constitutional and civil rights of disabled citizens. I am, or have been, lead counsel in:

P.J. v. State of Connecticut, No. 2:91CV00180 (RNC). This case was brought on behalf of 4000 mentally retarded school age children who have been unnecessarily segregated from regular classrooms and nondisabled children. The settlement of this case requires the state to

significantly increase the number of children with mental retardation attending regular classes in their home schools, to increase their participation in extracurricular activities and to end the racial and gender bias in the identification and placement of these children.  The settlement is in the implementation phase.

Arc Connecticut v. O'Meara, No. 3:01CV1871 (JBA).  A settlement has been negotiated, pending approval by the Connecticut Legislature and the Court, which will provide community residential supports for approximately 750 persons with mental retardation currently living at home and will provide that services for the 6700 DMR clients currently receiving support from the Home and Community Based Waiver will be based on individual need rather than on what funding DMR has available.

R. v. Waterbury Bd. of Educ., No. 3:00CV0887 (WWE).  This case achieved a settlement for the sexual assault of a child with mental retardation who attended public school.

Santaniello v. Clasp Homes, Inc., et. al., No. 3:04CV806 (RNC). This lawsuit seeks money damages for the removal of seventeen teeth of a mentally retarded woman in one sitting after years of inadequate care by DMR and private group home providers.

Brown v. Clasp Homes, Inc., et al., No.CV02-0187652.  Settlement of a lawsuit relating to the drowning of an adult retarded woman in a private group home.

B.H. v. Southington Bd. of Educ., 40 IDELR 36 (D.Conn 2003).  This case seeks orders requiring the Southington school district to provide necessary public school supports for a severely disabled child.

A.S. v. Norwalk Board of Education, 183 F.Supp. 2d 534 (D.Conn. 2002). Obtained a regular classroom placement with appropriate supplementary aids and supports for a child with severe disabilities.

M.C. v. Voluntown, 226 F.3d 60 (2nd Cir. 2000).  This case obtained reimbursement for a private school educational program for a child with disabilities.

M.H. v. Bristol Bd. of Educ., 169 F. Supp. 2d 21 (D. Conn. 2001).  This lawsuit sought damages for tying a disabled child to a chair without the consent of the parents.

G.M. v. New Britain Board of Educ., 173 F.3d 77 (2d Cir. 1999).  This case obtained a community special education program for a child with a disability.

Messier v. Southbury Training School, No. 3:94CV01706 (EBB).  This lawsuit seeks decent care and treatment and an opportunity for community placement for the 500 residents of

Southbury Training School. The case has been tried and a final decision is pending.

C.A.R.C. v. Thorne, No. H78-653 (AVC). This lawsuit eliminated unconstitutional conditions and obtained community placements for the 1200 residents of the Mansfield Training School.

Bredice v. Guevarra, No. 3:94CV01316 (PCD) This case obtained money damages for the death of a retarded man due to an overdose of seizure medication administered by physicians at Southbury Training School.

Amy Dunion v. Bureau of Rehabilitation Services, No. 3:96CV1923 (AWT). This lawsuit challenges the policy of the Bureau of Rehabilitation Services of never accepting facilitated communication as a means of evaluating a severely disabled individual.

P.J. v. State of Connecticut, 788 F.Supp. 673 (D.Conn. 1992). This case invalidated one school's decision to exclude a retarded child from a regular classroom without regard to whether inclusion was possible if modifications were made available to the regular classroom and additional support was made available to the classroom teacher.

Jacob Pratt v. Regional School District No. 15, Civ. No. 2:91CV00180 (JAC). This case invalidated Regional School District No. 15's policy of excluding a child with autism from regular classes because he could not master the regular curriculum.

Orville Karan, Ph.D. v. Frederick Adams, No. H-90-135 (JAC). This lawsuit invalidated a portion of Connecticut's licensing scheme for practicing psychologists from other states on the ground that the scheme deprived out-of-state psychologists of rights secured by the Fourteenth Amendment.

Derek C. v. Southington Board of Education, Richard P. v. Meriden Board of Education, Christopher D. v. Hartford Board of Education, and Meghan D. v. Granby Board of Education; Patrick J. v. West Haven Board of Education; April S. v. Norwalk Board of Education; Nicholas D. v. West Hartford Board of Education; Christa F. v. New Britain Board of Education; K.J. v. New Britain Board of Education; E.B. v. Canterbury Board of Education; Nicholas G. v. Ellington Board of Education; S.B. v. Litchfield Board of Education; M.E. v. Stamford Board of Education; P.C. v. West Haven Board of Education; N.D. v. West Hartford Board of Education; M.H. v. Southington Board of Education; I.K. v. Stamford Board of Education; M.K. v. Farmington Board of Education; J.R. v. Farmington Board of Education; E.P. v. Meriden Board of Education; T.P. v. Regional School District # 1; D.P. v. Stafford Springs Board of Education; G.R. v. Regional School District No. 15; D.F. v. Enfield Board of Education; N.S. v. Stratford Board of Ed., K.L. v. Stonington Board of Education; C.C. v. Regional School District #15, E.H. v. Wallingford Board of Education, C.W. v. Middletown Board of Education, C.M. w. Stamford Board of Education, and M.E. v. Stamford Board of Education. Decisions by state

hearing officers, or settlements, after lengthy litigation, required the named public schools to develop the supports and modifications necessary to educate children with disabilities ranging from profound to mild retardation in regular classrooms with appropriate support services.

Timothy Olander v. Benhaven, Inc., et al, Civ. No. N-87-423 (TFGD).  This lawsuit sought and obtained money damages for the use of restraint and aversive stimuli on a handicapped child without permission of the child's parents.

Mary Astorino v. Brian Lensink, et al, No. H-89-106 (JAC).  This lawsuit obtained money damages and community placement for an adult woman who was sexually assaulted on two occasions at the Southbury Training School.

Hillburn v. Maher, 795 F. 2d 252 (2d Cir. 1986), cert. denied, 479 U.S. 1046 (1987).  Secured adaptive wheelchairs and related services for some 400 severely handicapped nursing home residents.

Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979), *aff'd* 448 U.S. 122 (1980).  This case establishes that settling plaintiffs are entitled to reimbursement for attorneys' fees and costs under 42 U.S.C. § 1988 and that counsel is entitled to compensation for the time spent litigating the fee claim.

Lelsz v. Kavanaugh, 710 F. 2d 1040 (5th Cir. 1983). I represented the Association of Retarded Citizens of Texas in its effort to obtain minimally adequate treatment for over 5000 retarded citizens of Texas.  Following a full trial United States District Judge Barefoot Sanders found the State of Texas in contempt of the settlement and court order and ordered remedial measures.

Connecticut Coordinating Committee of the Handicapped v. Cotter, Civ. No. H-80-573 (D. Conn. slip op. February 24, 1973).  The settlement of this lawsuit required the Connecticut Judicial Department to make the Hartford Housing Court accessible to wheelchair users.

Young v. Coleman, Civ. No. H-76-21 (D. Conn. *slip op.* 1976), rev'd, 2d Cir. order of August 15, 1979.  The settlement of this lawsuit required Connecticut to purchase only wheelchair accessible buses for the Hartford, New Haven, and Stamford urbanized areas.

      4.      Through litigation of these cases and the associated claims for costs and

attorneys' fees in Connecticut and other states I have become skilled in litigating federal civil

rights matters and have become familiar with the rates charged by attorneys who specialize in

disabilities rights litigation.

5.      The time spent and costs incurred by class counsel during the period November 28, 2000 through September 22, 2004 have not previously been addressed in the negotiations or covered by a prior fee application.

6.      The plaintiffs' original demand for costs and attorneys' fees was submitted to opposing counsel and Magistrate Judge Martinez by letter to Mr. Urban dated November 28, 2000.  That demand and the subsequent negotiations that led to the settlement figure that appears in the Settlement Agreement covered the period from August 27, 1991 up to November 28, 2000.  November 28, 2000 was the date of the demand for Attorneys' fees, costs and expert fees that was submitted to Attorney Urban and the Magistrate Judge and formed the basis of the negotiations that led to the final settlement that appears in the Settlement Agreement.  At all times relevant, Plaintiffs expressly limited their motion and the negotiations to the time spent up to November 28, 2000.

7.      The time spent and costs incurred by class counsel subsequent to that period, covering the period November 28, 2000 through March 20, 2002 were expended by class counsel to: (1) negotiate plaintiffs' claim for costs, expert fees and attorneys' fees incurred up to November 28, 2000 with the assistance of the Magistrate Judge, and (2) pursue litigation to challenge and have removed from the Settlement Agreement unilateral changes that were made in the language of the Settlement Agreement by defendants after a final agreement was reached that may have precluded class counsel from seeking reimbursement for costs and attorneys fees incurred during the remedial phase of this litigation.  These

actions were necessary to secure a court-ordered Settlement Agreement that provided a fair and reasonable resolution of the violations of law described in the complaint.

8. The time spent and costs incurred during the period March 21, 2002 through May 22, 2002 were necessary to assist in the drafting of notice of the proposed settlement to the class, respond to questions from the parents of class members about the proposed settlement, and prepare for and participate in the fairness hearings held by this court on the fairness and reasonableness of the settlement.

9. The time spent and costs incurred during the period June 4, 2002 through August 14, 2002 were necessary to work cooperatively with the state and plaintiffs in the selection and convening of the Expert Advisory Panel.

10. The time spent and costs incurred during the period August 15, 2002 up to September 24, 2004 were necessary to review and comment on the three Annual Reports submitted by defendants on the implementation of the Settlement Agreement, attend EAP meetings so that the EAP and defendants are aware of and could take into account plaintiffs views on the adequacy of defendants' remedial efforts and to take such other actions as were necessary in plaintiffs' counsel's judgment to secure the benefits of the Settlement Agreement to the class as a whole.

11. I have reviewed my time records in connection with this case. Attached as Attachment 1 to this Declaration are my office's computerized time records of the time the attorneys in this firm have spent working on this case. This constitutes an accurate reflection of

the time spent working on this case to date. This computerized time record is prepared on a regular basis in the course of business of this office.

12. As owner of the firm Law Offices of David C. Shaw, LLC, I am responsible for and have had considerable experience in setting billing rates for attorneys and the paralegal in this firm. In setting rates it has been essential that I familiarize myself with the rates charged by attorneys for complex federal litigation throughout the state of Connecticut.

13. Based upon my experience, regular contact with attorneys pursuing similar cases in other states and billing rates that exist in the community, it is my opinion that the current market rate for attorneys with comparable experience in litigating civil rights cases for persons with disabilities is $375 per hour as reflected in the Declaration of Francis J. Brady, Esq., attached herewith.

14. I worked 424.7 hours in this case since November 28, 2000. Reasonable attorney's fees for my efforts to date at $375 per hour are $159,262.50.

15. I have incurred $253.65 in costs in connection with this litigation since the demand of November 28, 2000.

16. The total attorneys' fees and costs incurred by this office since November 28, 2000 are $159,516.15. My time records and a summary of the costs are attached hereto.

/s/ *David C. Shaw*
David C. Shaw, Esq.

Attachment 1 to Declaration Filed Manually