EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO. |
|     Plaintiffs, | : | 291CV00180 (RNC) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al. | : | |
|     Defendants. | : | SEPTEMBER 27, 2004 |

## **DECLARATION OF FRANK LASKI**

I, Frank J. Laski, declare under penalty of perjury that the following statements are true and correct:

1. I am submitting this declaration in connection with plaintiffs' application for an award of attorneys' fees and expenses in this case.

2. I graduated from the Harvard Law School in 1967. I have been licensed to Practice law in the Commonwealth of Massachusetts since 1968. I have also been admitted to the bars of the United States Supreme Court, the Courts of Appeals for the First, Third, Fourth and Tenth Circuits, the United States District Court of Massachusetts and several other federal district and state courts including the District Court of Connecticut *pro hac vice* in this case.

3. My legal and professional career since graduation from law school in 1967, with the exception of military service, has been devoted to matters affecting the legal rights of persons with disabilities. Currently, I am Executive Director of the Massachusetts Mental Health Legal Advisors Committee. I supervise all litigation for the Committee and am currently co-counsel in two statewide class action lawsuits on behalf of children and adults with mental disabilities, Rolland v. Romney 52 F.Supp.2d 231 (D. Mass. 1999), 191F.R.D. 3 (D.Mass.

2000), 138 F. Supp.2d. 110 (D. Mass.2000), (enforcing the Nursing Home Reform Act on behalf of 1,500 persons with developmental disabilities in nursing facilities), and Rosie D. v. Romney, 55 F. R. D. 3d 883 (D. Mass. 2003), 310 F. 3d 230 (1st Cir. 2003), (enforcing the Medicaid Act on behalf of 3,000 children in need of home-based mental health services). Previously, I held two positions where I directed supervised and conducted complex litigation on behalf of large classes of persons with disabilities. I was staff attorney at the Massachusetts Advocacy Center and counsel of record in Allen v. Parks (Suffolk Superior Court C.A.14948 - Judge Catherine White) representing 12,000 children in special education in Boston Public Schools on all matters relating to Boston Public Schools' compliance with Chapter 766. I was also Director of the Disabilities Project of the Public Interest Law Center of Philadelphia where I had been employed since 1976. Among my cases at the Law Center were the following class actions seeking class relief:

> Cramer v. Bush, C.A. 96-6619-CIV-Ferguson, Appeal No. 98-5876 (D. So. Fla.), With co-counsel Florida Advocacy Center, I represented 2000 developmentally disabled persons residing in intermediate care facilities challenging state legislation abolishing certain Medicaid programs and restricting class members to large-scale care facilities. Plaintiffs secured injunctive relief for the class obligating the state to maintain Medicaid expenditures of over $54 million annually and secured settlement providing waiver service opportunities for all class members.
>
> Guckenberger v. Boston University, 974 F. Supp. 106 (D. Mass. 1997) with Co-counsel Disability Rights Advocates, I represented 500 learning disabled students challenging Boston University's policies and practices regarding accommodations as violations of ADA and § 504 of the Rehabilitation Act. After a two-week trial, Judge Patti Saris found in favor of plaintiffs on their ADA and § 504 claims.
>
> In Messier v. Southbury Training School, (D. Conn. 94-CV1706), 1999 U.S. Dist. Lexis 1479, 1999 WL 20910 at *8 (D. Conn. Jan. 5 1999) with local counsel, David Shaw, I represented residents of Connecticut's largest institution for persons with developmental disabilities against three state agencies, challenging conditions in

violation of the Constitution and ADA.  U.S. District Court Judge Ellen Bree Burns certified the class of 800 residents.  This case was tried in January 1999 and is yet pending before Judge Burns.

4. The list of cases noted above are representative of the scope, complexity and effectiveness of my civil rights litigation experience.  For example, from 1976 to 1995, I was been class counsel in <u>Halderman v. Pennhurst</u>, a leading institutional reform case.  Over the years, the <u>Pennhurst</u> case has been heard by the U.S. Supreme Court on three occasions and is the subject of over twenty published district court opinions.  The 3d Circuit Court of Appeals decision in <u>ADAPT v. Skinner</u>, 881 F.2d 1184, defining the federal right to accessible public transit, was the culmination of ten years national litigation to enforce the Urban Mass Transportation Act and 504, (<u>see</u>, e.g., <u>Disabled in Action v. Coleman</u>, 448 F. Supp. 109 (E.D. Pa. 1978).

5. I have represented individual plaintiffs and classes of children and adults with disabilities in educational settings, including <u>Beard v. Folks and Oklahoma Board of Education</u>, C.A. No. 87-C-704-E (N.D. Okla. 1987); <u>Oberti v. Clement School District</u>, 789 F. Sup. 1322 (D.N.J. 1992), <u>aff'd</u>, 995 F.2d 1204 (3d Cir. 1993); <u>Kirby v. School Board of Pinellas County, Florida</u>, Case No. 901057-CIV-17-B (M.D. Fla. 1990); <u>Devries v. Fairfax County School Board,</u> No. 88-3644 (4th Cir.); <u>Merry v. Parkway School District</u>, No. 88-2189-C-4 (E.D. Mo.); and <u>Pennsylvania Association for Retarded Citizens v. Commonwealth of Pennsylvania, Department of Education</u>, (E.D. Pa. 1980).

6. In addition, I have been counsel to plaintiffs and plaintiff classes in statewide class actions resulting in entitlement to services and improved conditions for persons with disabilities in Massachusetts <u>(Mahony  v. Weld</u>, Suffolk Superior Court No- 95-889) (enjoining state appropriations act a unconstitutional under equal protection); in Illinois <u>(Bogard v. Duffy,</u> C.A. No. 88-C-2414 (N.D. Ill. 1988) ; Pennsylvania <u>(Halderman v.</u>

Pennhurst State School and Hospital, 446 F. Supp. 1295 (E.D. Pa. 1977) aff'd in part, rev'd and remanded in part, 612 F.2d 84 (3d Cir. 1979) (en banc) , rev'd and remanded, 451 U.S. 1 (1981) , on remand 673 F.2d 645 (3d Cir. 1982) (en banc) , rev'd and remanded, 465 U.S. 89 (1984) ; Connecticut (CARC v. Thorne, C.A. #H-78-653 D.Conn. 1990); New Mexico (Jackson v. Fort Stanton Hospital and Training School, 964 F.2d 980 (10th Cir. 1992); and Oklahoma Homeward Bound v. The Hissom Memorial Center, No. 85-C-437-E (N.D. Okla. 1987) U.S. Dist. Lexis 16866, July 24, 1987.

7. In addition to the above cases, I have represented national organizations in the Courts of Appeals regarding important matters affecting rights of children with disabilities (Timothy W. v. Rochester N.H. District, 875 F.2d. 954 (lst Cir. 1989), cert. denied, 493 U.S. 983 (1989), and a nation-wide class of persons with disabilities in enforcing §504 against the U. S. Department of Transportation (ADAPT v. Skinner, 881 F.2d 1184 (3d Cir. 1989)).

8. I have been a trainer and faculty member in programs on disability law and litigation including continuing legal education. Each year under my direction, the Mental Health Legal Advisors Committee designs and conducts continuing legal education for approximately 400 lawyers on various aspects of representing persons with mental disabilities. I have held a number of academic appointments, including adjunct faculty, Temple University, Visiting Professor, Syracuse University and Visiting Scholar, Boston College. In 1987, I was the first lawyer awarded a Distinguished Fellowship by the National Institute of Handicapped Research.

9. My legal practice over the last twenty-five years has been exclusively a public interest practice. I do not bill clients for fees but rely instead on statutory fee awards available under various civil acts. I generally represent individuals and groups of individuals who cannot afford legal representation. Because most of these cases take years and risk of

non-payment is substantial, private law firms are unwilling to undertake representation without the involvement of experience public interest counsel.  I often adopt the Lawyer's Committee model of co-counseling with private firms.  For example, in <u>Mahony v. Weld,</u> and <u>Rolland v. Cellucci</u> I was co-counsel with Foley, Hoag and Eliot. In <u>Rosie D. v. Romney</u> I co-counsel with Wilmer Cutler Pickering Hale and Dorr.  In <u>Messier v. Southbury</u>, I co-counsel with the Law Office of David Shaw in Bloomfield.  In <u>Homeward Bound</u>, I was co-counsel with the Tulsa firm of Bullock and Bullock.

     10.  In this case I have served as co-counsel to plaintiff class participating as assigned in all aspects of this class action in the district court from the time of class certification. Including conducting discovery, drafting trial memoranda, trial preparation, and trial and post trial settlement proceedings. After the negotiation of the settlement, I participated in the efforts to perfect and enforce the settlement and in the ongoing monitoring of implementation of the settlement.

     11.  I am requesting an hourly rate of $375 for work in this case, a rate of compensation that is comparable to similarly experienced attorneys for non-contingent work in complex civil litigation for Connecticut based firms.

     12.  The hourly rate requested is consistent with contested awards I have received from other federal courts in similar litigation, payment of attorneys fees by public defendants in settled cases, and the relevant Connecticut market for a person of my experience and ability. In <u>Guckenberger v. Boston University</u>, 8 F. Supp. 3d 91 (D. Mass. 1998) the court awarded the lead counsel $325, and awarded me the hourly rate that I had requested, $275 for work done during 1997-98. In Rolland post settlement enforcement, where all plaintiffs counsel entered into a stipulation with the Massachusetts Attorney General for uncontested rates, I agreed to a rate of $275. <u>Rolland v. Romney,</u> 292 F. Supp.2d 268, 270 n.1.

13. I was awarded my full requested lodestar at a rate of $275 by U.S. District Judge Stuart Dalzel for 1995 work in <u>Drinker v. Colonial School District,</u> 888 F. Supp. 674 (E.D. Pa 1995). I was awarded attorney fees at a rate of $250 an hour by the U.S. District Judge Raymond Broderick for work done prior to 1993. That rate was not challenged on appeal. <u>Pennhurst</u>, 855 F. Supp. 733, 743 (E.D. Pa 1994), <u>aff'd in pertinent part, rev'd in part</u>, 49 F.3d 939 (3d Cir. 1995).

14. I was paid my full lodestar at the $250 rate by the State of Illinois, in a settlement approved by Judge Norgle in the U.S. District Court of Northern Illinois in <u>Bogard v. Duffy</u>, C.A. No. 88-C-2414 (N.D. Ill. 1988). For work done in 1989, I was awarded $250 per hour by U.S. District Court Judge Marvin Katz in <u>Americans Disabled for Accessible Transportation v. Dole</u>, C.A. No. 86-2989 (E.D. Pa 1989).

15. The true and correct statement of my hours based on contemporaneous time records is attached. In this case, I followed the practice of keeping daily time sheets; manually recording my work and entering time on a computerized spread sheet.

16. I calculated my lodestar by multiplying my current hourly rate times the number of hours spent on this case. I consider the fee I am seeking to be reasonable.

17. I incurred $470 in costs related to this litigation.

                                                 /s/ *Frank J. Laski*
                                                 FRANK LASKI