UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al. | : | CIVIL ACTION NO. |
| *Plaintiffs* | : | 2:91CV00180(RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al. | | |
| *Defendants* | : | NOVEMBER 16, 2004 |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR FURTHER ATTORNEYS' FEES AND COSTS

**I. Introduction**

The defendants in the above matter respectfully submit this memorandum in opposition to plaintiffs' motion dated October 1, 2004 seeking further attorneys' fees and costs in the amount of $195,011.15.

The Settlement Agreement ("Agreement") in this case, signed by the parties in March 2002 and approved by the Court on or about May 22, 2002, contains two provisions critical to the issue currently before the Court. At Section X, entitled "Payment," the Agreement provides that "[t]he Defendants shall make to the Plaintiffs … *a one-time payment* of $675,000.00 in attorneys' fees and costs, payable to Attorney David Shaw, attorney for the Plaintiffs, within ninety (90) days of the effective date of the approval of this agreement." (Emphasis added). Section XI, entitled "Total Agreement," states that "[t]his agreement contains the complete and sole agreement of the parties."

There is no dispute that the $675,000.00 payment was duly made to Attorney Shaw.

**II. Discussion**

**A. Plaintiffs Have Waived Their Right to Further Fees and Costs**

It is well settled that fee waivers in civil rights cases are not only permissible, but may even at times be desirable. Evans, et al. v. Jeff, et al., 475 U.S. 717 (1986). In Evans, the defendants offered a settlement that arguably exceeded what plaintiffs thought they could obtain after a trial, but conditioned the settlement offer on the plaintiffs waiving any claim to fees and costs. Plaintiffs accepted. While the district court approved the settlement, the appellate court invalidated the fees waiver, but left standing the balance of the settlement agreement. The Supreme Court reversed, noting that with respect to class actions, "the power to approve or reject a settlement negotiated by the parties before trial *does not authorize the court to require the parties accept a settlement to which they have not agreed."* Id. at 726 (Emphasis added). Accordingly, "[t]he District Court could not enforce the settlement on the merits and award attorney's fees anymore than it could, in a situation in which the attorney had negotiated a large fee at the expense of the plaintiff class, preserve the fee award and order greater relief on the merits." Id. [1] Finding that "[t]he text of the Fees Act [42 U.S.C.§1988] provides no support for the proposition that Congress intended to ban all fee waivers offered in connection with substantial relief on the merits," [2] the Supreme Court in Evans concluded that "[t]he statute and its legislative history nowhere suggest that Congress intended to forbid *all* waivers of attorney's

---

[1] The Supreme Court expressly rejected the oft-repeated canard that that plaintiffs' counsel in such circumstances are confronted with an "ethical dilemma." In the Court's words, "[p]lainly, Johnson had no *ethical* obligation to seek a statutory fee award. His ethical duty was to serve his clients loyally and competently. Since the proposal to settle the merits was more favorable than the probable outcome of the trial, Johnson's decision to recommend acceptance was consistent with the highest standards of our profession." Evans, 475 U.S. at 728. (Emphasis in original).

fees -- even those insisted on by a civil rights plaintiffs in exchange for some other relief to some other relief which he is indisputably not entitled to -- any more than it intended to bar a concession on damages to secure broader injunctive relief." Id. at 731-32. (Emphasis in original).[3]  Accord, Willard et al. v. City of Los Angeles et al., 803 F.2d 526 (9th Cir.1986) (Settlement of civil rights action can be predicated on waiver of fees).

While some courts since Evans have held that silence alone will not suffice to constitute such a waiver (see, Swan, et al. v. Daniels, et al., 917 F. Supp. 292 (D.Del.1995) (citing Ashley v. Atlantic Richfield, 794 F.2d 128, 132 (3d Cir.1986)); Muckleshoot Tribe v. Puget Sound Power & light Co., 875 F.2d 695 (1989)), others have held otherwise. Wray et al. v. Clarke, et al., 151 F.3d 807, 809 (8th Cir.1998); see also, Alison H. v. Byard et al., 163 F.3d 2, 4 (1st Cir.1998) (Having released any and all claims, any claim for fees was barred); Bell v. Schexnayder et al., 36 F.3d 447, 450 (5th Cir.1994) (Where the settlement agreement was intended to resolve all claims, no fees available; plaintiff's counsel's "secret intent" to later file for fees after the matter settled cannot be rewarded).

In this case, the Court is confronted with neither *silence* with respect to fees and costs, nor a blanket waiver to be construed from such silence, but rather the plain and unambiguous wording of a long negotiated settlement agreement, fully reviewed and approved by the Court, wherein plaintiffs explicitly waived any claim to *further* fees and costs. Moreover, with respect to one of the factors the Evans Court suggested district courts could look to to determine the

---

[2] It is also well settled that the legal principles applicable to §1988 fee applications apply to fee applications under 20 U.S.C. §1415. Hensley v. Eckerhardt, 461 U.S. 424, 433, n.7 (1983); J.C. v. Regional School Dist., 278 F.3d 119, 124 (2d Cir.2002).

[3] Even prior to Evans, many courts had approved implicit or explicit fee waivers in civil rights settlements. See, e.g., Brown v. General Motors et al., 722 F.2d 1009 (2d Cir.1983) (Settlement agreement releasing all claims barred fee award); Lazar v. Pierce, 757 F.2d 435 (1st Cir.1985) (Consent decree providing no fees bars subsequent claim for fees).

3

legitimacy of such fee waivers, namely whether the defendant appears to have a blanket policy of routinely refusing to pay any such fees (Evans, 475 U.S. at 766), it is readily evident these defendants have no such policy, having agreed to pay a one-time payment of $675,000.00 in fees and costs in connection with this very case.

The plaintiffs, by virtue of the Agreement itself, have thus waived any further claims for fees and costs, and their motion should be denied.

### B. The *Buckhannon* Decision Bars the Payment of Further Fees

In Buckhannon Board and Care Home, Inc. et al. v. West Virginia Dept. of Health and Human Resources, et al., 532 U.S. 598, 605, 610 (2001), the Supreme Court ruled that the "catalyst" theory for recovery of attorneys' fees in civil rights cases, long relied upon in this and other Federal circuits, was not the law of the land because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." As described by the Buckhannon Court,

> [a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

Id. (Emphases in original).[4] The lower courts, including those of this circuit, have of course adhered to the Buckhannon ruling. See, Preservation Coalition of Erie County v. Federal Transit Administration et al., 356 F.3d 444, 451 (2d Cir.2004) ("In Buckhannon … the Supreme Court rejected the catalyst theory of recovery and held that the term 'prevailing party' required a

---

[4] Citing the Court's previous decision in Evans v. Jeff, 475 U.S. at 717, the Buckhannon Court noted that the catalyst theory of recovery may actually provide a disincentive for a defendant to voluntarily alter its conduct, especially when the potential liability for fees can be as great as or greater than the defendant's potential liability on the merits. Buckhannon, 532 U.S. at 608.

4

material alteration of the legal relationship of the parties or a court ordered change in the legal relationship between the plaintiff and the defendant." (Internal quotations omitted)). In accordance with Hensley, 461 U.S. at 424, 433, n.7, the Buckhannon decision is applicable to the fees-shifting provision of the Individuals with Disabilities Education Act, 20 U.S.C. §1415(i)(3)(B) ("IDEA"). Kosweda v. Flossmoor School Dist. No. 161, 227 F.Supp. 2d 979 (N.D.Ill.2002).

In their motion, plaintiffs assert they are entitled to attorneys' fees and costs for monitoring the defendants' compliance with the Agreement. In support of this assertion, plaintiffs cite a number of pre-Buckhannon cases (see, plaintiffs' memorandum at 6-7). Given the fundamental change wrought by Buckhannon, these cases are of dubious, if any, reliability as precedent. For example, in Miller v Carson, 628 F.2d 346, 348 (5th Cir.1980), cited by the plaintiffs, the Court noted that "[t]he motion for contempt, although never ripening into courtroom activity, no doubt had the effect of maintaining compliance with the Court's injunction," and found the plaintiffs were entitled to fees. Such reasoning cannot withstand the strictures of Buckhannon.

There are of course post-Buckhannon cases that address the issue of attorneys' fees for the monitoring of settlement agreements. These cases in large measure seek to establish the parameters whereby a settlement or consent agreement carries sufficient indicia of judicial "imprimatur" to warrant the awarding of attorneys' fees. (See, e.g., Roberson et al. v. Giuliani, et al., 346 F.3d 75, 82-85 (2d Cir. 2003) (District court's retention of jurisdiction carried sufficient judicial approval of the agreement to warrant an award of fees); Torres v. Walker, et al., 356 F.3d 238, 244-45  (2d Cir. 2004) (Insufficient judicial imprimatur to award fees where court did not retain jurisdiction, and there was no indication that the district court had reviewed and

5

approved the stipulation); P.O. v. Greenwich Board of Education, 210 F.Supp. 2d 76, 84-85 (D.Conn.2002) (Request for fees brought by Attorney Shaw's office; claim for fees premised on catalyst theory fails under Buckhannon).[5]

In Rolland et al. v. Romney, et al., 292 F.Supp. 2d 268, 271 (D.Mass.2003), the Court (albeit a trial court not in this circuit), noting that it was the Court's first opportunity to fully address Buckhannon, concluded that Buckhannon does not bar the award of attorneys' fees for the monitoring of a settlement agreement. In large measure, the opinion seeks to distinguish Buckhannon, at one point even going so far as to assert -- in what appears to be a very thin reed indeed -- that "Buckhannon does not control the compensability of post-judgment monitoring efforts."

While these post-Buckhannon cases may not provide the clearest guidance on when a settlement agreement carries sufficient judicial imprimatur to warrant the award of fees and costs, and further whether post settlement agreement monitoring qualifies for an award of fees under Buckhannon, two critical factors in this case establish beyond peradventure that plaintiffs are *not* entitled to any further award of fees and costs.

First, as noted above, the Agreement, reviewed and approved by the Court, states in plain and unambiguous language, that plaintiffs will receive a "one-time payment" of $675,000.00 in attorneys' fees and costs -- a very substantial sum indeed. The Agreement is not silent as to fees and costs; it is not opened-ended as to fees and costs. Rather it is as clear and direct as any

---

[5] Curiously, the Court's decision in West et al. v. Manson, et al., 163 F.Supp. 2d 116 (D.Conn.2001) discusses fees for monitoring a consent decree, but makes no mention of Buckhannon. This may be because the decision came out just months after Buckhannon, and the case was not brought to the West Court's attention in the briefs, or perhaps because the fees at issue accrued prior to the decision. In any event, the Buckhannon decision predated the execution of the Agreement here, and thus counsel were fully aware of it at the time of the negotiation and drafting of the Agreement.

6

language can be. While the Agreement provides for limited continuing jurisdiction of the Court (Section III), it just as clearly limits attorneys' fees and costs to a specific, negotiated amount (Section X). Surely a grade school child would understand what "one-time payment" means. It is eminently fair to assume that two sophisticated attorneys, whose skills and experience in handling complicated civil rights class action litigation we are told warrant fees of $375 per hour, were capable of comprehending the import of this language. Assuming they did so comprehend, but nevertheless harbored an intent all along to apply for further fees notwithstanding this plain language, such tactics should not be countenanced by the Court, and the Court must not enforce against the defendants an "agreement" they never entered into. Bell, 36 F.3d at 450; Evans, 475 U.S. at 726.

Secondly, there is *no* judicial order or action plaintiffs can point to since the Court's approval of the Agreement that could even approach satisfying Buckhannon's requirement of an act reflecting the Court's judicial imprimatur in some respect. Thus even if this Court were to adopt what defendants believe is the highly suspect reasoning of the Court's decision in Rolland, 292 F.Supp.2d at 268, it would not alter the outcome here, since, while there is no doubt we have a judicial order here (the Court's review and adoption of the Agreement), the Agreement itself definitively spells out in plain language what the attorneys' fees and costs will be. There simply is no further order or act of judicial imprimatur.

### C. Even If This Court Awards Fees and Costs, Which It Should Not, Plaintiffs' Claim Is Excessive and Improper in Several Respects

For the reasons set forth above, the Court should deny plaintiffs' motion in its entirety. However, even if the Court somehow concludes plaintiffs are entitled to some fees and/or costs, plaintiffs' claim as submitted is excessive and improper in several important respects.

Under the fee shifting statutes, attorneys' fees are determined using the lodestar method, which multiplies hours reasonably expended times a reasonable hourly rate. <u>Hensley</u>, 461 U.S. at 433. The petitioner "must submit sufficient documentation to show that an appropriate amount of time was spent at an appropriate hourly rate." <u>C.M. by O.M. v. Chicago Public School Dist. No. 229</u>, 34 IDELR 178, (N.D.Ill.2001). Excessive or duplicative time, or time expended unwisely is not compensable. <u>Hensley</u>, 461 U.S. at 433; <u>E.S. v. Ashford Board of Education</u>, 134 F.Supp. 2d 462, 470 (D.Conn.2001) (Time spent exploring avoidance of a defense not raised not compensable).

This fee request reflects excessive time unwisely spent on certain tasks. Between the dates of October 11, 2001 and November 16, 2001, Attorney Shaw reports he spent 67.8 hours on drafting and revising briefs on his "motion to enforce settlement." During the same period Attorney Laski reports 7.8 hours spent on the same tasks or projects. The so-called motion to enforce settlement was never ruled upon by the Court and was an entirely bogus exercise in any event. Every draft of a possible settlement agreement defendants produced (and as appears in the final Agreement) throughout the lengthy negotiations contained a "merger" clause, indicating the written agreement would be the sole and complete agreement of the parties. In addition, every draft produced by the defendants included language reflecting a "one-time payment" of attorneys' fees and costs, or words to that effect. Defendants made it crystal clear throughout the negotiations that: i) all attorneys' fees had to be included as part of the settlement or there would be no settlement at all; and ii) because of the anticipated cost of the whole package to the State, pursuant to Conn. Gen. Stat. § 3-125a [6] there could be absolutely no agreement until the draft

---

[6] Conn. Gen. Stat. § 3-125a in pertinent part mandates that

agreement had been approved by the Connecticut General Assembly and then signed by the parties' representatives. Notwithstanding all this, when plaintiffs felt a tentative understanding had been reached as to all but attorneys' fees and costs, in what defendants viewed as a horrific breach of the good faith negotiating process, plaintiffs filed their spurious "motion to enforce settlement," urging the Court enforce a non-existing contract and decide attorneys' fees separately. Ignoring the black letter law of contracts, including the statute of frauds (the obligations under consideration were not to be performed within one year), plaintiffs forged ahead with this wholly improper and unwarranted motion. This Court should refuse to reward such unprincipled and cynical tactics by denying any fees for such actions.

The time expended as reflected in other entries is also excessive. For example, the Court should disallow Mr. Shaw's or Mr. Laski's hours for meeting with the Expert Advisory Panel ("EAP") where they were both in attendance. The EAP meetings generally have no role for the attorneys, and plaintiff organizations always attend in any event. Counsel's "double-teaming" them is indefensible. (See, entries for August 14, 2002). In addition, Mr. Laski's entries purport to reflect attendance at an EAP meeting on December 22, 2003. There was no such meeting. (See, attached affidavit of Deborah Richards). This raises serious questions about whether Mr. Laski's records are truly contemporaneous. Similarly, on September 9, 2004 Mr. Laski reports he

---

> [t]he Attorney General shall not enter into any agreement or stipulation in connection with a lawsuit to which the state is a party that contains any provision which requires an expenditure from the General Fund budget in an amount in excess of two million five hundred thousand dollars over the term of the agreement or stipulation, unless the General Assembly, by resolution, accepts the terms of such provision.

9

spent six hours conferring with Mr. Shaw. Mr. Shaw records that conference as lasting 2.8 hours. Someone's records are seriously inaccurate.[7]

### III. Conclusion

The defendants respectfully urge the Court to deny the plaintiffs' claim for further fees and costs in its entirety.

                          DEFENDANTS
                          STATE OF CONNECTICUT ET AL.

                          RICHARD BLUMENTHAL
                          ATTORNEY GENERAL

BY:      /s/_____
       Ralph E. Urban
       Assistant Attorney General
       Federal Bar No. 00349
       55 Elm Street
       P.O. Box 120
       Hartford, CT  06141-0120
       Tel: (860) 808-5210
       Fax: (860) 808-5385

---

[7] As set forth above, defendants believe plaintiffs are entitled to no further fees and costs beyond the substantial amount already received. As such, plaintiffs are also obviously not entitled to be paid for the considerable time expended drafting the current fees petition. (See, Mr. Shaw's entries for September 19, 2004 and following).

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 16th day of November, 2004, first class postage prepaid to:

David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT  06002

Frank J. Laski, Esq.
Mental Health Legal Advisors Committee
294 Washington Street, Suite 320
Boston, MA  02108

_____/s/_____
Ralph E. Urban
Assistant Attorney General