The statement in Section X that a "one-time payment …in attorneys' fees and costs" does not address whether the State must pay the costs and attorneys' fees that may be incurred in the future during the eight-year implementation phase of this litigation.  This language certainly cannot rationally and reasonably be construed as an "explicit" fee waiver as defendants represent.  Defs' br. at 3.  The language in Section X describes only the amount, method of payment (one-time payment), time within which payment is due, and to whom payment is to be made.  The language relied upon by defendants in Section XI states that the Settlement Agreement is the "complete and sole agreement of the parties" but does not purport to release defendants from any claims.  The language in Sections X and XI does not even come close to the language found necessary to constitute a waiver in *Brown v. General Motors Corp.*, 722 F.2d 1009 (2nd Cir. 1983).  Section X is less explicit than the provision in *Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 71 F.3d 1053 (2nd Cir. 1995)("dismiss with prejudice any claims made by the District") that was found to be insufficiently explicit to constitute a waiver.

Defendants cite *Wray v. Clarke*, 151 F.3d 807, 809 (8th Cir. 1998); *Alison H. v. Byard*, 163 F.3d 2, 4 (1st Cir. 1998) and *Bell v. Schexnayder*, 36 F.3d 447, 450 (the Cir. 1994) for the proposition that plaintiffs have waived any claim for costs and attorneys' fees not specifically

mentioned in the Settlement Agreement.  *Wray v. Clarke*, however, stands for the limited proposition that having manifested an intention during the settlement conference to settle all of the matters in dispute and having failed to reserve a post-settlement claim for attorney fees in the settlement document, all fees were waived.  *Wray v. Clarke*, 151 F.3d at 809.  This holding is not binding here where plaintiffs made it clear during the settlement negotiations that they would not settle the case if the Settlement Agreement contained a provision which might possibly be construed as waiving reimbursement of costs incurred during the implementation phase of the litigation and opposing counsel specifically represented to the Court and plaintiffs that the "one-time payment" language in Section X would not be interpreted by defendants as a waiver of such costs and fees.

Similarly, the decision in *Alison H. v. Byard*, 163 F.3d 2 (1st Cir.1998) is of no help to defendants.  There the parties negotiated a settlement that included "a release of any and all claims arising prior to the execution of the agreement."  *Alison v. Byard*, 163 F.3d at 6.  The Court, noting it could find no ambiguity in this language about the parties' intent to waive claims for costs and attorneys' fees, held that by accepting such clear and unmistakable language plaintiffs' waived their claim for attorneys' fees.  *Id*.  Again, there is no language in the Settlement Agreement here that contains such a clear and unambiguous release of all claims not clearly expressed in the Settlement Agreement.  The "one-time payment" language does not

purport to release defendants from claims for costs and attorneys' fees during the remedial

phase and defendants' counsel have told plaintiffs and the Court during negotiations that this

language was not meant to constitute a waiver.

Similarly, in *Bell v. Schexnayder*, the question before the Fifth Circuit was far different

that the one presented to this Court. The issue in *Bell* was whether plaintiff could file a request

for attorneys' fees that was nearly double the monetary settlement after a monetary settlement

was agreed to and a dismissal order had been entered. The Court found that the District Court

did not abuse its discretion in denying the request for attorneys' fees in those circumstances.

*Bell v. Schexnayder* 36 F.3d 447, 450 (5th Cir.1994). By contrast, the plaintiffs have made it

clear all along to the Court and defendants that they intend to seek costs and attorneys' fees for

work performed in the implementation phase of the lawsuit, and defendants have agreed that an

award of costs and attorneys fees will be appropriate if permitted by controlling law.

The defendants suggest that the Second Circuit has approved "implicit or explicit" fee

waivers in *Brown v. General Motors*, 722 F.2d 1009 (2nd Cir. 1983). While it is clear that

*Brown* permits "explicit" fee waivers, "implicit" fee waivers have been rejected by the Second

Circuit. Attorneys' fees may be waived through a broad general release of claims and a

stipulation that dismissal is "without costs to any party", but a waiver will not be found unless

the language clearly reveals an intention of the parties to preclude claims for costs and attorneys

fees after the settlement is finalized.  *Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 71 F.3d 1053, 1058 (2nd Cir. 1995).  In *Brown v General Motors* the parties agreed during arms-length negotiations to a settlement that provided that the case would be dismissed "without costs to any party" and to a broad release that released defendants from any and all claims.  *Brown v. General Motors*, 722 F.2d at 1012.  The Court noted that the application for fees "made no showing or offer of proof that less that a complete settlement of all claims …was intended."  *Id.*  Here, by contrast, the Settlement Agreement does not indicate that the case was settled "without costs to any party" and does not provide for a general release of claims against defendants.  The Settlement Agreement simply does not contain language that could be fairly construed as reflective of an intent of the parties to release defendants from any future claims for attorneys' fees.  *See also, Valley Disposal, Inc. v. Central Vermont Solid Waste Management*, 71 F.3d at 1058 (language dismissing "any claims made by the [plaintiffs]" was found to be insufficiently clear to constitute a waiver of attorneys' fees.)

Moreover, if the Court determines that the Settlement Agreement is unclear as to whether a waiver was intended, plaintiffs have produced an impressive record that plaintiffs signed the Settlement Agreement only after defendants agreed that the language in the Section X would not be construed as a waiver of attorneys' fees and costs during the implementation phase of the litigation.  Referral to the record is appropriate where the intent of the parties is not

clear and the recitals in contemporaneous documents casts doubt on the interpretation of the language proffered by defendants.  *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261 (2nd Cir. 1965).[1]

Plaintiffs have offered compelling proof that a settlement of future claims of costs and attorneys' fees was not intended.  The record clearly indicates that the parties never intended the language in the Settlement Agreement quoted by Attorney Urban as a waiver of claims for attorneys' fees during the remedial phase.  It is undisputed that the "one-time payment" language in Section X was not language that was the product of negotiations or that was agreed upon during the negotiations before the Magistrate Judge.  Indeed, plaintiffs notified the Magistrate Judge and the Court that negotiations had broken down after they learned that Attorney Urban inserted this language in the proposed Settlement Agreement after the negotiations were over but before the Settlement Agreement was submitted to the General Assembly for final approval.  Plaintiffs only agreed to this new language after a Motion to Enforce Settlement Agreement [Doc. # 431] was filed with the Court, after Attorney Urban

---

[1] The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an interpreted written contract.  *Giorgio v. Nukern, Inc.*, 31 Conn. App. 169, 173-74 (1993).  The rule does not forbid the presentation of parol evidence, but prohibits the use of such evidence to vary or contradict the terms of the agreement.  *See Foley v. Huntington*, 42 Conn. App. 712 (1996).  "[W]hen parties have merged all prior negotiations and agreements in a writing, intending to make that the repository of their final understanding, evidence of such prior negotiations and agreements will not be received to vary or add to the writing."  *Harris v. Clinton*, 142 Conn. 204, 210 (1955).

represented to this Court on the record that the State defendants did not interpret this new

language as a waiver of future claims for fees (*see*, Transcript of Chambers Conference

(11/19/01)(Exhibit R), pp. 17, 18, 44, 46 – 48, 51), and after Attorney Urban represented to the

Magistrate Judge orally and in writing that "the defendants do not interpret Section X of the

draft agreement to preclude the Court from awarding reasonable attorneys' fees and costs to the

plaintiffs upon a finding by the Court that the defendant had failed to substantially comply with

the consent decree (Exhibits S and T) and "[t]he parties agree to be bound by controlling law on

the issue of attorneys' fees and costs."  (Exhibits P and Q).  Defendants cannot possibly

maintain that they intended the language "one-time payment" to mean a waiver of all claims to

costs and attorneys' fees during the remedial phase of this litigation, after representing on the

record and in writing to the Court that this language was *not* intended to constitute a waiver.

 In the event the Court disagrees with plaintiffs' position and finds that the language in

Sections X and XI clearly reveals the intent of the parties to waive and future claims for costs

and attorneys' fees, the Court should, nonetheless, refuse to enforce such waiver because it was

obtained through bad faith negotiations and/or unconscionable conduct.  The courts have

interpreted the *Evans v. Jeff D*. decision as precluding the use of fee waivers where the

"situation presents a grossly unfair choice to the plaintiff and his/her counsel, and permitting

such offers to be made would seriously undermine the purpose of fee shifting provisions."

*Ashley v. Atlantic Richfield Co.,* 794 F.2d 128, 139 n. 17 (3rd Cir. 1986), *quoting Evans v. Jeff D.,* 106 S.Ct. at 1544 &n. 32.  A bad faith exception is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to demands of justice and good conscience.  *Habetz v. Condon*, 224 Conn. 231, 238 (1992).

In *Phillips v. Allegheny County, Pennsylvania*, 869 F.2d 234 (3rd Cir. 1989) the Court was asked to decide whether a district court may override a fee waiver procured through bad faith or unconscionable conduct.  The Court held that a party or attorney who wishes to complain of an unfairly obtained fee waiver must register a complaint with the district court before any required approval is obtained.  *Id.* at 239, 240.  Here, opposing counsel inserted Section X in the Settlement Agreement without plaintiffs' knowledge or consent.  When plaintiffs' counsel brought this conduct to the Court's attention through a Motion to Enforce Settlement Agreement, Attorney Urban changed his position and represented to the Court, the Magistrate Judge and plaintiffs' counsel that defendants would not interpret Section X as a waiver of claims for costs and attorneys' fees during the remedial phase of the litigation.  Based on those representations plaintiffs accepted the Settlement Agreement with the new Section X. Plaintiffs therefore brought their concern to the Court in an appropriate and timely manner.

Defendants' counsel now seeks to disavow his representations to the Court and plaintiffs. This conduct is unconscionable.  The doctrine of unconscionability protects against

unfair bargains and unfair bargaining practices.  Unconscionability is determined by reference to the relative benefit of the bargain to the parties at the time of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties.  *United States v. Bedford Associates*, 657 F.2d 1300, 1312, 1313 (2nd Cir. 1981).  Here, under the defendants' interpretation of Section X, plaintiffs have waived any claim for reimbursement for attorneys' fees and costs during the eight-year remedial phase of this litigation.  As waiver of attorneys' fees and costs during the remedial phase was neither raised or discussed during the negotiations, and will result in the diminution of plaintiffs' ability to represent the class, the "waiver" is grossly one-sided and is against the strong public policy expressed in 42 U.S.C. § 1988, 20 U.S.C. § 1415(i)(3)(B) and Rule 23 that the class is entitled to vigorous representation.[2]

Second, the methods employed by the defendants in negotiating this "waiver" are beyond the range of acceptability.  It is highly improper to insert a waiver provision into a settlement of a class action without class counsel's consent, and equally as improper to secure class counsel's consent to such a provision through misrepresentation.  An analysis of the above

---

[2] Compare *Jeff D.*, 475 U.S. at 741 n.33 where the Supreme Court noted the parties' acknowledgement that a fee waiver was fair to the class.  There is no such agreement here.  In fact, given the extent of defendants' noncompliance as reflected in the EAP reports, and the extensive role of class counsel contemplated by the Settlement Agreement, a prospective waiver of fees is unfair to the class and will deprive class members of their rights under the Settlement Agreement.

two factors clearly points to a finding that the "waiver" was obtained through unconscionable conduct even though the parties were in relatively equal bargaining positions throughout the negotiations.

Plaintiffs also assert that defendants' counsel acted in bad faith in procuring this "waiver". The Connecticut Courts define bad faith as the absence of good faith. *Buckman v. People Express, Inc*., 205 Conn. 166, 171 (1987). Bad faith in general implies a design to mislead or deceive another, or a neglect to fulfill some duty, not prompted by an honest mistake as to one's rights or duties, but by some interested motive. *Habetz v. Condon*, 224 Conn. 231, 237 (1992). Here, defendants have obtained plaintiffs' consent to a "waiver" by misrepresenting to plaintiffs and the Court that it would not interpret Section X as a waiver of prospective fee claims. Defendants' counsel cannot claim based on this record that this was an "honest mistake" or that obtaining plaintiffs' consent through misrepresentations was consistent with his duty to the Court. This conduct constitutes bad faith under the Connecticut standard.

Moreover, plaintiffs promptly challenged the insertion of the "waiver" language to the Court's attention as soon as they learned of it so that the Court could take appropriate action. Plaintiffs have therefore properly and timely raised their assertion that any waiver was obtained through bad faith and/or unconscionable conduct. The Court may therefore invalidate any waiver clause it finds in the language of Sections X and XI.

**2. An Award of Costs and Attorneys' Fees is not Precluded by the Holding in *Buckhannon*.**

The defendants argue on pages 4-7 of their brief that the holding in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001) precludes an award of costs and attorneys' fees for the activities covered by class counsel's time sheets. According to defendants, the decision in *Buckhannon* invalidated the case law cited on pages 6 and 7 of plaintiffs' brief that has been well-established for over a quarter century that holds that attorneys' fees and costs may be awarded for post-judgment monitoring of consent decrees. The defendants' objection should be overruled for several reasons.

*Buckhannon* requires that there be a judicially sanctioned change in the legal relationship of the parties as a prerequisite to award of attorneys' fees under civil rights fee shifting statutes. *Buckhannon*, 532 U.S. at 605

*Buckhannon* set in motion a great sea change in the threshold determination of prevailing party status, removing from the calculus any consideration of a pure catalytic success. Whatever the reach of *Buckhannon* ultimately in defining prevailing party status based on a judicial imprimatur touchstone, the majority opinion in *Buckhannon* cannot be used to

support defendants' argument to defeat fees here. *Buckhannon* certainly does not disturb well settled law regarding the court's discretion to award fees to a prevailing party in the post-judgment phase of a civil rights lawsuit where the court retains jurisdiction to assure that the rights declared a judicially approved are actually implemented.[3]

The analysis of the application of *Buckhannon* must start from the undisputed proposition that plaintiffs are prevailing parties in this lawsuit. The court-approved settlement in this case significantly altered the legal relationship between the State Board of Education and both the organizational plaintiffs and the class of students with mental retardation. The prevailing party status earned by the plaintiffs and sanctioned by this court is kept by plaintiffs and secured to plaintiffs as long as is reasonable for the court to retain jurisdiction for implementation.[4]

Prevailing party status is not so fleeting as defendants imagine. It did not come and go on the day the court approved and adopted the Settlement Agreement. Prevailing party status clearly stays with plaintiffs for the period of time following the judicial imprimatur and governs

---

[3] The overarching purpose of the agreement approved by this court is" to implement the[se] rights and obligations" as set forth in 20 USC 1412 (a)(5)(A). (Settlement Agreement Introduction.)

[4] In this case, by agreement of the parties, the "reasonable time" is fixed not to exceed eight years. (Section III Continuing Jurisdiction)

those activities inextricably intertwined with the settlement and the lawsuit.

Even Justice Scalia who casts the net of *Buckhannon* wide to capture all would -be prevailing parties, allows for a fee award in the circumstances here.  In his concurring opinion he states:

> ."....  In the case of court -approved settlements and consent decrees, even if there has been no judicial determination of the merits, the outcome is at least the product of, and bears the sanction of, judicial action *in the lawsuit*.  There is at least *some* basis for saying that the party favored by the settlement or decree prevailed *in the suit. "Buckhannon,* 121 and 1847-1848 *(emphasis in original).[5]*

As prevailing parties plaintiffs are entitled to compensation for their post-judgment work.  This entitlement is just as solid now as it was before *Buckhannon.*  See, *San Francisco NAACP v. San Francisco Unified School District, 284 F3d.1163 (9th Cir.2002(It is settled law … that a district court has discretion to award fees to a prevailing party in consent decree litigation for work reasonably spent to monitor and enforce compliance with the decree…"; Cody v. Hillard 304 F.3d 767,773 (8th Cir. 2002)( A district court may award fees to a prevailing party for reasonable post judgment monitoring."; Rolland v. Romney, 292*

---

[5] In the Second Circuit, prevailing party status is not strictly limited by a court judgment on the merits or a court order consent decree.  These are "merely examples" of the requisite judicial imprimatur.  *Roberson v. Giuliani,* 346 F.3d 75 (2nd Cir. (N.Y. 2003).

*F.Supp.2nd 268,273 (D. Mass 2003)""(…monitoring is eligible for compensation as is successful enforcement).*

Defendants' brief ignores the fact that most of the time spent and costs incurred covered by the plaintiffs' fee petition is not related to post-judgment monitoring.  During the period November 29, 2000 through March 20, 2002 the time spent and costs incurred were related to negotiating plaintiffs' claim for costs and attorneys fees incurred up to November 28, 2000 and addressing the break down in negotiations that occurred when defendant Urban inserted the "one-time payment" language in Section X after the negotiations were concluded.  A negotiated settlement and court order would not have been possible if class counsel had not taken these actions.  Clearly, plaintiffs secured a "material alteration of the legal relationship of the parties" or a "court ordered change [in] the legal relationship between [the plaintiff] and the defendant" by obtaining an order that required defendants to implement the Settlement Agreement, and became prevailing parties as a result.

For the same reasons, defendants' arguments in opposition to plaintiffs' motion for reimbursement for time spent and costs incurred during the period March 21, 2002 through May 22, 2002 are not relevant.  During that period of time class counsel assisted in drafting a notice of the proposed settlement for distribution to the class.  Class counsel also responded to questions about the settlement from the parents of class members and participated in the

fairness hearings held by the Court on the fairness of the Settlement Agreement to the class as a whole. Again, these actions were necessary to secure a finding the settlement fair and reasonable resolution and an order requiring the implementation of the Settlement Agreement. Again, defendants' brief in opposition does not comment on whether plaintiffs became prevailing parties and entitled to attorneys' fees under *Buckhannon* because they resulted in a court-ordered change in relationship between plaintiffs and defendants.

Counsel's efforts after the Court approved the Settlement Agreement are related to implementation and monitoring. During the period June 4, 2002 through September 24, 2004 class counsel were involved in various efforts to fully implement the Settlement Agreement. They worked cooperatively with the State to select and convene the Expert Advisory Panel ("EAP"). They attended meetings convened by the EAP and made comments relating to the steps the State defendants were taking to implement the Settlement Agreement. They have prepared and submitted to the EAP detailed written comments on the progress of the State defendants in implementing the Settlement Agreement. (Exhibits V, W and X.) And, they have participated in two conferences convened by the Magistrate Judge. The defendants do not dispute that the holdings of the cases cited on pages 6 and 7 of plaintiffs' Memorandum in Support of Motion for an Award of Costs and Attorneys' Fees stand for the proposition that such post-judgment monitoring activities have been considered compensable activities under 20

U.S.C. § 1415(i)(3)(B) and 42 U.S.C. §1988 for over a quarter century.  They argue, however, that these cases have been overruled by *Buckhannon* or are distinguishable.

The case law does not support defendants' position.  *Buckhannon* does not address whether post-judgment monitoring of class counsel may be reimbursed where the court-ordered Settlement Agreement specifically assigns class counsel a monitoring role during the implementation phase of the settlement.  Defendants have not cited a single case that stands for the proposition that *Buckhannon* reverses the holdings in *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559 (1986), *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983), *Wilder v. Bernstein*, 975 F. Supp. 276 (1997) and *Vecchia v. Town of North Hempstead*, 927 F. Supp. 579, 581 (E.D.N.Y. 1996) that time spent and costs incurred in monitoring a court-ordered Settlement Agreement may be reimbursed through these fee-shifting statutes.  In fact, the cases that have been decided since *Buckhannon* in Second Circuit indicate that the opposite is true.

The Supreme Court recognized in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* that Congress enacted the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988, to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts.  *Pennsylvania v. Delaware Valley,* 472 U.S. at 559, 560, *citing*, *Hensley v. Eckerhart,* 461 U.S. at 429.  "The effective enforcement of Federal civil rights statutes

depends largely on the efforts of private citizens," and unless reasonable attorney's fees could be awarded for bringing these actions, Congress found that many legitimate claims would not be addressed. *Id.*, *quoting* H.R. Rep. No. 94-1558, p. 1 (1976). Similarly, the Congress enacted the IDEA to eliminate the exclusion and segregation of children with disabilities from public school. It required public schools to educate children with disabilities with children who are not disabled, and that they could segregate or otherwise remove such children from the regular classroom setting "only when the nature or severity of the handicap is such that education in regular classes ... cannot be achieved satisfactorily." *Honig v. Doe* 484 U.S. 305, 310-311, 108 S.Ct. 592, 597 (1988); *See also*, *A.S. v. Norwalk Bd. of Educ.*, 183 F.Supp. 2d 534 (D. Conn. 2002). The fee shifting provisions in 20 U.S.C. § 1415(i)(3)(B) were included within the IDEA to ensure vigorous enforcement of these provisions by the parents of disabled children.

The importance of requiring a defendant to reimburse class counsel for attorneys' fees and costs in this lawsuit is readily apparent. For the first three years of implementation defendants have made little or no progress in ending the unnecessary segregation of students with mental retardation despite provisions in the Settlement Agreement that requires significant progress each year. The Court order will mean little unless these fee-shifting statutes are interpreted in such a way that post judgment monitoring by class counsel are not reimbursable. Nothing in *Buckhannon* requires a different result. The Order requiring the implementation of a

Settlement Agreement that provides for the continuing jurisdiction of the Court provides a sufficient Court ordered change in the relationship between plaintiffs and defendants to justify a fee award whenever counsel's monitoring efforts are reasonably necessary and appropriate and contributed to the goal of ensuring defendant's compliance with the Settlement Agreement.

Two relevant cases have been decided in the Second Circuit since the *Buckhannon* decision was released. In *Peterson v. Continental Casualty Co.,* 282 F.3d 112 (2nd Cir. 2002), the Second Circuit held in a post-*Buckhannon* decision, that the precedent in *Delaware Valley* required the payment of costs and attorneys' fees be shifted to defendants after a court of competent jurisdiction has assumed jurisdiction over a lawsuit. "The fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the 'action'." *Peterson v. Continental Casualty Co*., 282 F.3d at 122. As this Court has assumed jurisdiction over the Settlement Agreement and ordered the parties and the EAP to convene meetings, file reports with the Court and take such actions as are necessary to achieve the goals of the Agreement, the Court retains jurisdiction to order the payment of such fees and costs for post judgment monitoring. Similarly, in *West v. Manson*, 163 F. Supp. 2d 116 (D. Conn. 2001) the Court held in a post-*Buckhannon* decision, that class counsel were entitled to compensation for work done in protecting and enforcing their favorable judgment, provided that the work was reasonably necessary and appropriate and contributed to

some degree to the goal of ensuring the defendants' compliance with the judgment.  *West v. Manson*, 163 F. Supp. 2d 116, 119 (D. Conn. 2001).

The defendants acknowledge that the Court in *Rolland v. Cellucci,* 151 F.Supp.2d 145, 154 (D.Mass. 2001) and *Rolland v. Romney*, 292 F. Supp. 2d 268, 271, 272 (D. Mass. 2003) hold that reimbursement for post judgment monitoring is appropriate <u>and</u> that these cases were decided after *Buckhannon.*  These cases hold that post judgment monitoring may be compensated where the Consent Decree contemplated that class counsel would engage in various activities during the implementation phase.  In these circumstances the Court held that the time spent and costs incurred in post-judgment monitoring could be reimbursed if the work was "'useful and of a type ordinarily necessary to secure the final result obtained.' "  *Rolland v. Cellucci*, 151 F.Supp. 2d at 154, q*uoting, Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. at 561, 106 S.Ct. 3088, 92 L.Ed. 2d 439 (1986) (citation and internal quotation marks omitted).  The Court specifically held that reimbursement for post-judgment monitoring was not addressed in *Buckhannon.   Rolland v. Romney,* 292 F.Supp. 2d at 273.

Here, as in *Rolland*, the parties contemplated a substantial monitoring role for class counsel during the implementation phase of this litigation.  The Settlement Agreement provides that class counsel will collect data relating to the class (Settlement Agreement, § I, III), that class counsel will review that data to "assess compliance" (Settlement Agreement § III), review

the CSDE annual reports (Settlement Agreement § III), and meet and work with the EAP and

defendants in an effort to work out disputes during the implementation period out of court.

(Settlement Agreement, §§ I. 2 and 3)  Finally, it is contemplated that class counsel will file

motions for substantial non-compliance where appropriate (*Id.*)  In these circumstances,

*Rolland v. Romney* stands for the proposition that reasonable post-judgment monitoring by class

counsel is reimbursable.

Defendants' attempt to distinguish *Rolland v. Romney* on its facts.  According to

defendants, the Settlement Agreement states in plain and unambiguous language that costs and

attorneys' fees will not be awarded during the implementation phase.  As previously argued, the

"one-time payment" language in Section X of the Settlement Agreement does not come close to

meeting the Second Circuit standard relating to waiver of attorneys' fees in civil rights cases.

The plain meaning of this language is that the negotiated fees will be made in one payment,

rather than through several payments.  The plaintiffs' interpretation is consistent with the

representations Attorney Urban made to this Court and to the Magistrate Judge orally and it

writing.  Having represented to the Court and plaintiffs that the "one-time payment" language

would not be interpreted by defendants as a waiver of claims for attorneys' fees and costs

during the implementation phase, it is disingenuous to argue here that they always intended the

"one-time payment" language as a waiver of such claims.

**3.  Plaintiffs' Fee Petition is Not Excessive:**

Defendants argue that the plaintiffs' claim for costs and attorneys' fees is unreasonable or excessive in two limited respects.  First, they argue that all fees for work in connection with the Motion to Enforce Settlement Agreement [Doc. ## 431, 432] should be denied because it was never ruled upon by the Court and was "an entirely bogus exercise in any event."  Defs' br. at 8.  The defendants assert that compensation for 67.8 hours[6] of Attorney Shaw's time and 7.8 hours of Attorney Laski's time should be disallowed.  Plaintiffs do not agree the time spent on this motion and brief was unnecessary or that reimbursement for this time should be disallowed.

Plaintiffs prepared this motion and brief after settlement negotiations had broken down.  After difficult negotiations the parties reached final agreement on the substantive provisions of a settlement during a settlement conference convened by Magistrate Judge Martinez on October 16, 2000.  The final draft of that Agreement was incorporated into a draft Settlement Agreement dated November 1, 2000.  A copy of that Agreement is attached as Exhibit B.[7]

_____

[6] The time spent includes 35.6 hours for the preparation of the Motion to Enforce Settlement Agreement and supporting memorandum, 2. 6 hours for reviewing defendants' brief in opposition, and 29.6 hours to prepare a Reply brief.

[7] Mr. Urban represents on page 8 of his brief that "every draft produced by the defendants included language reflecting a "one-time payment" of attorneys' fees, or words to that effect.  As can be seen from Exhibit B, however, this draft contained no such language.  In fact, the attached exhibits establish that none of the draft Settlement Agreements contained this language until Attorney Urban unilaterally inserted it after negotiations were concluded.

The second phase of the negotiations involved reimbursement for costs and attorneys' fees incurred. Plaintiffs' correspondence made clear that the documentation submitted included only costs and attorneys' fees incurred up to November 28, 2000. Exhibits C and D. Plaintiffs initially demanded $972,115.91 based on those time records and documented costs and expert fees, but, following intense negotiations supervised by the Magistrate Judge, plaintiffs agreed to reduce their demand to $675,000 in order to settle. This settlement figure was based entirely on time spent and costs incurred up to November 28, 2000. The issue of compensation of counsel for work during the remedial phase of the litigation was never discussed during the negotiations.

On May 18, 2001 the Magistrate Judge convened another settlement conference to address the State's new demand that a limitation be placed on the duration of the Settlement Agreement. After difficult negotiations the parties made agreed-upon handwritten changes to the draft Settlement Agreement. Copies of that draft with the agreed-upon handwritten changes were made in the Magistrate Judge's Chambers and were distributed to all the participants, including the Magistrate Judge. A copy of that draft is attached as Exhibit E hereto.[8]

---

[8] Once again, contrary to Attorney Urban's representations, please note that the one-time payment language does not appear in this agreed-upon draft.

Magistrate Judge Martinez requested that Attorney Urban incorporate the agreed-upon changes, and send opposing counsel and her a copy.

Instead of complying with this request, Attorney Urban added a new Section X to the proposed Settlement Agreement containing the "one-time payment" language relied upon here without consulting plaintiffs' counsel or the Court. Plaintiffs learned that Attorney Urban added a new Section X to the agreement with the new "one-time payment" language, after they learned by accident that the draft Settlement Agreement had been submitted to the legislature, and they demanded a copy of the document from Attorney Urban. [Affidavit of David C. Shaw (Exhibit A), ¶¶ 15, 17-19].

Plaintiffs immediately wrote to Attorney Urban and the Court in opposition to these unilateral changes to the agreement because they were concerned that the new language could arguably be construed as a waiver of fees during the eight-year implementation period and such a waiver was not discussed during the negotiations and was totally unacceptable to plaintiffs. [Affidavit of David C. Shaw (Exhibit A) ¶ 20]. When plaintiffs were informed by Attorney Urban that he would not agree to remove the language from the agreement, plaintiffs wrote to the Court indicating that they could not agree to this new language in Section X and that the negotiations had broken down as a result of Attorney Urban's actions. [Exhibit M; Affidavit of David C. Shaw (Exhibit A) ¶ 23.]

On August 16, 2001 Magistrate Judge held a settlement conference in an attempt to resolve the differences that led to the breakdown in negotiations. Attorney Urban admitted during that conference that he inserted the language in Section X without plaintiffs' agreement but that the State defendants would nonetheless not remove the objectionable language. [Affidavit of David C. Shaw, (Exhibit A) ¶¶ 27-29.]

The plaintiffs' Motion for Enforcement of the Settlement Agreement was filed to enforce the written agreement that had been agreed to by the parties during negotiations supervised by the Magistrate Judge, without the "one-time payment language" Attorney Urban had inserted in Section X. The Court held a Status Conference on November 19, 2001. During that Status Conference Attorney Urban stated on the record that the State defendants never intended the "one-time payment" language to constitute a waiver of all costs and attorneys' fees during the implementation phase. [Exhibit R; Affidavit of David C. Shaw (Exhibit A) ¶ 35]. After noting substantial consensus on the meaning of the "one-time payment" language, the Court referred the matter back to Judge Martinez for further negotiations. Judge Martinez convened a Settlement Conference on February 8, 2002. [Affidavit of David C. Shaw (Exhibit A) ¶ 37.] During that conference and in subsequent correspondence Attorney Urban represented that the "one-time payment" language in Section X was never intended to constitute a waiver of claims for all costs and attorneys' fees during the implementation phase, and that

"[t]he parties agree to be bound by controlling law on the issue of attorneys' fees and costs."

[Exhibits S and T].  Based on these representations on the record, that were later documented in

correspondence to plaintiffs and the Court, the plaintiffs agreed to sign the Settlement

Agreement.  Plaintiffs became a prevailing party as a result of obtaining Court approval of this

Settlement Agreement.

The case law is clear that in these circumstances attorneys' fees and costs must be based

on the formula set out in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  Under that approach,

where excellent results are achieved, fees must be based on the time spent times the market rate

for comparable services, unless the time spent is unreasonable in light of the results achieved.

461 U.S at 435.  The Court specifically rejected the notion that the Court should calculate the

fee award based on mathematical calculation based on the number of issues or motions won or

lost unrelated to the results achieved.  *Id*.

The plaintiffs' preparation of a Motion to Enforce Settlement Agreement must be

viewed as one of many motions and legal strategies employed by class counsel to secure the

final Settlement Agreement that was ultimately approved and ordered by this Court.  At the

time the Motion was filed negotiations had broken down, and could not be revived, despite the

best efforts of the Magistrate Judge.  The plaintiffs' choices at that point were to file a final

brief requesting the Court decide the case on the merits, or file a Motion to Enforce the

Settlement Agreement that had been negotiated with the assistance of the Magistrate Judge.

Accordingly, the fee award must be based on the overall results achieved, not on whether class

counsel won or lost this particular motion.  Since plaintiffs achieved excellent results, the

plaintiffs should receive a fully compensatory fee.

The case law does not support defendants' argument that the fees associated with time

spent on unsuccessful motions or erroneous decisions of counsel must be deducted without

regard to the significance of the overall results achieved.  *Hensley v. Eckerhart*, 461 U.S. 424,

435 n.11 (1983).  Here, plaintiffs achieved excellent results, and the time spent is reasonable in

light of the overall success of obtaining a special education program that has prepared plaintiff

for successful living in society.  Accordingly, defendants' argument must be rejected.

Defendants argue on pages 9 and 10 of their brief that time spent by class counsel in

attending EAP meetings should be disallowed.  But class counsel have been urged by the

Magistrate Judge to be active participants in these meetings to ensure that their point of view is

taken into account by the defendants in the EAP in the remedial process.  As can be seen from

plaintiffs' comments to the EAP, Exhibits  V, W and X, counsel have contributed to the process

significantly.  Plaintiffs have brought to the EAP's attention, for example, that approximately

800 class members have been reclassified by local school districts (especially by a few large

school districts, such as Bridgeport, New Haven) and discharged from the class, that

approximately 321 class members have been graduated from high school before their eligibility would otherwise expire, and that defendants' efforts to address the principle goals of the Settlement Agreement have been woefully inadequate.  As such efforts by class counsel serve to enhance the quality of the monitoring by the EAP and forestall the filing of formal motions, such activities are appropriate.[9]

Finally, on page 10 n. 7 of their brief, defendants assert that plaintiffs are "obviously not entitled to be paid for the considerable time expended drafting the current fees petition." However, it is well established that compensation for the time spent in this litigation pursuing reimbursement for the costs and attorneys' fees is appropriate.  *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) aff'd. 448 U.S. 122 (1980).  The Second Circuit held in *Gagne v. Maher* that such a rule is necessary so that defendant with deep pockets cannot "dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees." *Id.*  Accordingly, the Court should follow the well-established rule of this Circuit that fees associated with litigating a fee claim should be reimbursed.

### III. <u>CONCLUSION:</u>

---

[9] The defendants also claim that plaintiffs' counsel have overstaffed EAP meetings.  Defendants fail to mention, however, that Attorney Laski attended EAP meetings only in those limited circumstances where the EAP requested his presence so that negotiations could occur around the issues raised in plaintiffs' comments to the EAP.

For the foregoing reasons, and for the reasons set forth in plaintiffs' Memorandum in Support of Motion for an Award of Costs and Attorneys' Fees, the plaintiffs' Motion should be granted and a fully compensatory award should be made.


PLAINTIFFS,


By  /s/  David C. Shaw
David C. Shaw, Esq.
Fed. Bar No. ct05239
34 Jerome Ave., Suite 210
Bloomfield, CT 06002
(860) 242-1238
Email   dcshaw@cttel.net



By   /s/  Frank J. Laski
Frank J. Laski, Esq.
Mental Health Legal Advisors Committee
294 Washington St., Suite 320
Boston, MA  02108
Tel. (617) 338-2345
Email   flaski@email.mhl.state.ma.us
Fed. Bar No.  ct16180

EXHIBITS A THROUGH Z
Filed manually

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed first class, postage prepaid to counsel of record on December 17, 2004:

Ralph Urban, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

/s/    David C. Shaw_____
David C. Shaw, Esq.