UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al. | : | CIVIL ACTION NO. |
|    *Plaintiffs* | : | 2:91CV00180(RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al. | | |
|    *Defendants* | : | DECEMBER 21, 2004 |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT PLAINTIFFS' MOTION FOR
FURTHER ATTORNEYS' FEES AND COSTS**

**I. Introduction**

The defendants respectfully submit this memorandum in response plaintiffs' lengthy memorandum dated December 17, 2004 (received December 20, 2004) in support of their motion for further attorneys' fees and costs.

Stripped of its hyperbole and repetition, plaintiffs' most recent memorandum makes three basic assertions, namely: i) Section X of the Settlement Agreement ("Agreement") cannot be construed as a waiver of the attorneys' fees and costs plaintiffs are currently seeking because of defendants' representations made in a certain letter dated March 1, 2002 (Exhibit T of the attachments to plaintiffs' most recent memorandum); ii) Buckhannon Board and Care Home v. West Virginia Dept of Health and Human Resources, 532 U.S. 598 (2001) and its progeny do not preclude the payment of the fees and costs plaintiffs currently seek despite the fact that there has been no act of judicial imprimatur since the Court's endorsement of the Agreement with its sizable and explicit payment of attorneys' fees and costs to the plaintiffs ($675,000.00); and iii) notwithstanding the Agreement's specific wording, plaintiffs' counsel should be reimbursed for

whatever time and expense they choose to incur in "monitoring" the Agreement. Each of these assertions is fallacious.

## II. Discussion

Among other things, plaintiffs' memorandum consists in large measure of *ad hominem* attack on the integrity of undersigned counsel. This is unfortunate and uncalled for. Undersigned counsel will seek not to respond in kind. In fact, the "record" supplied by plaintiffs, selectively edited though it may be, reveals defendants' positions, at least on the critical issue here. (See, e.g., Exhibits N, P, S and T to plaintiffs' most recent memorandum). Exhibit N establishes, for example, that plaintiffs were provided, in accordance with the Magistrate's instruction and on the very day of the negotiations, the language that had been the subject of that day's negotiation, namely, how and under what circumstances the Court would have continuing jurisdiction, and for how long.[1] As Exhibit N reveals, attorneys' fees and costs were *never* the subject of any dispute in terms of language, but rather, only the *amount* of the one-time payment. As Exhibit N points out, the plaintiffs and the Magistrate were well aware that the defendants were required to clarify for the State's Office of Policy and Management and ultimately justify to the State's General Assembly under Conn. Gen. Stat. §3-125a the full term cost of the Agreement to the taxpayers of the State of Connecticut. Plaintiffs could not have truly believed that the General Assembly was approving an open-ended arrangement whereby plaintiffs' counsel could submit whatever they wanted as future fees and costs and the State was simply going to leave the matter

---

[1] Plaintiffs claim undersigned counsel violated a further "instruction" from the Magistrate Judge arising from the May 18, 2001 meeting to have a revised draft of the proposed agreement to her and the plaintiffs by Monday, May 21, 2001. If such further instruction issued, undersigned counsel's contemporaneous notes of the meeting (mistakenly dated May 17, 2001) (attached hereto) do not reflect such an instruction.

to what a Court might choose to endorse.[2] Indeed, as the plaintiffs and the Magistrate will recall, defendants repeatedly refused to divorce the resolution of the educational issues from a finite resolution of the attorneys' fees issue, repeatedly objected to any casting of the negotiations in such a light, hence the "merger" clause in every draft of the Agreement. It was for this very reason that defendants were so appalled by plaintiffs' filing of a motion to "enforce" a "settlement agreement" when this final contentious issue concerning attorneys' fee and costs arose prior to any party's signature on any settlement document.

Plaintiffs' counsel and their clients may sign innumerable affidavits implying or asserting that undersigned counsel has acted in bad faith, but that does not alter the truth. Nor does it alter the fact that on the issue of attorneys' fees and costs nothing other than a one time payment was discussed in negotiations until *after* plaintiffs objected to the language of the draft, which defendants had thought (perhaps naively as it turned out since plaintiffs apparently harbored all along an unexpressed intent to continually seek fees for "monitoring" despite the provision for an Expert Advisory Panel ("EAP") selected by the parties to keep tabs on the defendants' implementation of the Agreement) was wholly uncontroversial given that nothing else had ever been discussed. When plaintiffs objected, the negotiations -- again under the auspices of the Magistrate Judge -- were reopened on this issue, and the defendants made good faith attempts to solve the impediment (see, Exhibit P, S and T to plaintiffs' last memorandum). At that point, as reflected in Attorney Shaw's affidavit, the issue was *fully* aired and discussed, and the outcome was that plaintiffs ultimately elected to sign the Agreement with its "one time payment" language intact, having received Exhibit T as an assurance. Such was the choice plaintiffs made,

---

[2] Indeed, the discussion at the State legislature regarding the proposed Agreement reflects the very deep concern that there be finality to the Court's jurisdiction and finite liability for attorneys' fees and costs. (Exhibit J to plaintiffs' most recent memorandum).

3

fully cognizant of the risks and benefits of so doing. Defendants have in no way reneged on their representations in Exhibit T, because, as set forth more fully below, Exhibit T simply does not contradict defendants' assertion that plaintiffs' motion for attorneys' fees and costs should be denied.

Despite the fact that it quotes Exhibit T, plaintiffs' memorandum ignores the critical phrase within the document, and thus document's clear import. The second paragraph of the letter (Exhibit T) states that "the defendants do not interpret Section X [containing the "one time payment" provision] of the draft agreement to preclude the Court from awarding reasonable attorneys' fees and costs to the plaintiffs *upon a finding that the defendants had failed to substantially comply with the consent decree."* (Emphasis added). It further provides that "[t]he parties agree to be bound by controlling law on the issue of attorneys' fees and costs." In order to accept plaintiffs' claim that Exhibit T means that Section X of the Agreement cannot be read to *ever* limit plaintiffs' receipt of future fees and costs, one must ignore the plain wording of the this paragraph.[3]

It is indisputable that there has been no finding by the Court that the defendants have failed to substantially comply with the Agreement. Plaintiffs clearly suffer delusions of grandeur if they believe their responses to the reports of the Expert Advisory Panel ("EAP") constitute

---

[3] As the last bastion of their argument, plaintiffs urge the Court, should it find that the relevant documents do indeed establish that plaintiffs have waived this claim for fees, to refuse to enforce such a waiver because it was purportedly obtained through "bad faith and/or unconscionable conduct." (Plaintiffs' memorandum at 26). The record reveals that the defendants did *not* act in bad faith. Moreover, a Court ruling as proposed by the plaintiffs would deprive the defendants of the benefit of their strenuously negotiated bargain, and would, in violation of the Supreme Court's directive in Evans v. Jeff, 475 U.S. 771, 726 (1986), force the defendants to "accept a settlement to which they have not agreed." These negotiations, including those that led to the language of Exhibit T, were conducted under the auspices of the Magistrate Judge herself. Nor were the plaintiffs' lawyers neophytes in this area of law, who were somehow taken advantage of by the defendants, as their claimed hourly rates attest.

"findings" of the Court. Moreover, as defendants argued in their original memorandum, under controlling law, plaintiffs are not entitled to attorneys' fees and costs, as Buckhannon, 532 U.S. at 598, and its progeny make clear. Citing Justice Scalia's concurring opinion in Buckhannon, plaintiffs posit that Buckhannon does not prohibit attorneys' fees in consent decree cases.[4] Defendants do not assert that it does, elst they would not have agreed to pay $675,000.00 in attorneys' fees. What plaintiffs conveniently overlook is that all the fees and costs connected with plaintiffs' attainment of the Agreement, and the judicial imprimatur reflected by the Court's endorsement of the Agreement, have been negotiated and paid, and no one can seriously contend that there has been any further act reflecting judicial imprimatur or endorsement of the plaintiffs' position since that time. In short, the "finding" required by Exhibit T for the possible receipt of further fees and costs clearly accords with Buckhannon's requirements for the payment of fees, hence the final operative sentence of Exhibit T that "[t]he parties agree to be bound by the controlling law on the issue of attorneys' fees." [5]

All the pertinent benchmarks -- Section X of the Agreement, Exhibit T outside the Agreement, and Buckhannon and its progeny -- whether read separately or *in para materia*, dictate that plaintiffs' motion for attorneys' fees and costs be denied.

---

[4] In their most recent memorandum plaintiffs again cite to cases where post consent decree attorneys' fees were awarded. Again, these cases do not involve explicit agreements limiting fees to "one time payment(s)." In this circuit, in Peterson v. Continental Casualty Co., 282 F.3d 112 (2d Cir. 2002), relied upon by the plaintiffs (plaintiffs' memorandum at 37), the issue was fees for administrative proceedings resulting from a court remand, without reference to a fee agreement, hardly the issue in this case. As for West v. Manson, 163 F.Supp.2d 116 (D.Conn.2001), as discussed in defendants' original memorandum, it is puzzling that Buckhannon is never mentioned in that decision; Buckhannon was brand new at the time, and was perhaps not raised. Nonetheless, there is no discussion in Manson about any provision of the consent decree that would limit fees, as here.

[5] Indeed, an agreement to be bound by controlling law is little more than a recitation of the obvious.

5

Finally, plaintiffs assert that the Agreement calls for the plaintiffs' attorneys to play a major role in implementation of the Agreement, and, as they have expended the time, they should be paid. The notion that plaintiffs' attorneys -- as opposed to the plaintiff advocacy organizations themselves, which possess extensive expertise in the subject area (not to mention the role of the EAP) -- must be so heavily involved in the implementation process is largely a figment of plaintiffs' counsels' imaginations. The second assertion -- that plaintiffs' counsel are entitled to fees for any time they choose to expend on any matter arguably related to the Agreement -- is similarly false. Such a position belies the existence of the very documents that control this issue, as discussed above. The State purposely drove the bargain it did to avoid such a state of affairs, as it had experienced previously with Attorney Shaw in such cases, as discussed in the second page of Exhibit N to plaintiffs' most recent memorandum.

### III. Conclusion

The defendants respectfully urge the Court to consider not only its duty to the plaintiffs, but its duty to the taxpayers of the State of Connecticut, who are entitled to the benefit of their bargain, and protection from an open ended liability that they explicitly declined to accept. If open ended fees are available in this case, despite the operative documents, the State will have little incentive indeed to enter into consent agreements, knowing that its ultimate monetary liability can never be reliably controlled or predicted. The plaintiffs' claim for further fees and costs should be denied in its entirety.

                                        DEFENDANTS
                                        STATE OF CONNECTICUT ET AL.

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL

BY:   /s/ Ralph E. Urban_____
        Ralph E. Urban
        Assistant Attorney General
        Federal Bar No. 00349
        55 Elm Street
        P.O. Box 120
        Hartford, CT  06141-0120
        Tel: (860) 808-5210
        Fax: (860) 808-5385

# **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 21st day of December, 2004, first class postage prepaid to:

David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT  06002

Frank J. Laski, Esq.
Mental Health Legal Advisors Committee
294 Washington Street, Suite 320
Boston, MA  02108

    _/s/ Ralph E. Urban_____
Ralph E. Urban
Assistant Attorney General