UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO.: |
| Plaintiffs, | : | 291CV00180 (RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| BOARD OF EDUCATION, et al. | : | |
| Defendants. | : | January 12, 2005 |

## **MOTION FOR ORDER TO ENFORCE SETTLEMENT AGREEMENT**

The plaintiffs move for further orders to clarify and enforce Section I.2 and I.3 of the Settlement Agreement. In support of this motion the plaintiffs represent the following:

1. The Settlement Agreement was negotiated by the parties and approved by the Court on May 31, 2002 [Doc. # 463].

2. Section I.2. of the Settlement Agreement provides:

The defendants shall prepare and distribute to the parties and the court a list of public school students in Connecticut who on or after December 1, 1999 carry the label of either mental retardation or intellectual disability and who are eligible for special education; such list shall be updated periodically.

3. Section I.3. of the Settlement Agreement provides:

The plaintiffs shall have a right to collect data relating to the students identified in number 2. [Section I.2.] above and to challenge the adequacy of that list. CSDE shall cooperate with the plaintiffs to gain access to data and files relating to class members, to the extent allowed by state and federal statute, for all purposes relating to the enforcement and implementation of this Agreement….

4. This provision was negotiated so that the class representatives could gain access to the list of class members and could challenge the adequacy of that list. It was also negotiated so

that plaintiffs could continue to obtain the data maintained on the Connecticut State Department of Education ("CSDE") computer database and, if necessary, obtain information on individual class members from local school districts.  It was the intention of the parties to continue the pattern of cooperating in the discovery process that had been established as early as 1996 with the assistance of Magistrate Judge F. Owen Eagan.

     5.  During the course of this litigation the parties negotiated Protective Order #1 with the assistance of U.S. Magistrate Judge F. Owen Eagan.  On December 11, 1992 Judge Eagan approved and entered this "Protective Order # 1" as an Order of the Court. [Doc. # 193, Attached as Exhibit A hereto.]  That Protective Order safeguards the confidential information in the "computer tapes, discs, diskettes, or other computer records (and all information contained therein) turned over to the plaintiffs or their attorneys during the course of this case…" Protective Order #1, p. 2.  The Protective Order remains in effect until "the conclusion of the above captioned case including the completion of any appeals, remands, or other continuing proceedings (as determined by the court)…"  (Protective Order #1, p. 2)   Therefore Protective Order #1 remains in effect during the remedial phase of this litigation.

     6.  Following the entry of Protective Order # 1, the parties, on April 26, 1996, negotiated a second Discovery Order that provided that the experts retained by plaintiffs and defendants were authorized to visit, review and copy the records of class members, interview teachers, administrators and other school and nonschool personnel involved in the supervision or delivery of special education and related services to class members and make observations of the special education programs provided by an agreed-upon sample of 229 students from twelve school

districts. The parties agreed further that the Commissioner of the Connecticut Department of Education would be ordered to notify local school districts using an agreed-upon letter encouraging them to cooperate fully in discovery as to a list of class members also agreed-upon by the parties. The Stipulated Order also limited the use of any information obtained though the site visits and prohibited improper disclosure of that information. That Stipulated Order was approved and entered as a Court Order on April 26, 1996. [Doc. # 247]. Pursuant to that Order the Commissioner of CSDE wrote a letter to each of the twelve school districts selected for expert discovery. Those twelve school districts then fully cooperated in allowing the experts for the parties to visit, observe and evaluate the educational programs of the 229 randomly selected students, and review and copy their individual educational program plans. As a result of that cooperation plaintiffs' and defendants' experts visited, made observations, interviewed teachers and administrators and copied files on class members maintained by local school districts. Much of this documentation and data were ultimately admitted into evidence and was the subject of expert testimony during the trial of this matter.

7. Further, pursuant to Protective Order #1, the entire CSDE database on 75,000 special education students in Connecticut was provided to plaintiffs and updated periodically up to the trial of this matter. Also, pursuant to Protective Order #1 and the Stipulated Order of April 26, 1996, plaintiffs and their experts reviewed and copied the files maintained by CSDE relating to the monitoring and oversight of local school districts. Much of the opinion testimony offered at trial was based on this data.

8. On October 18, 2002 the plaintiffs provided to the Expert Advisory Panel ("EAP")

and defendants their comments on the defendants' First Annual Report on the implementation of the Settlement Agreement. The plaintiffs asserted in those comments that defendants had not prepared and distributed to class counsel a list of public school students with mental retardation and intellectual disability as required by Section I.2. of the Settlement Agreement. (Exhibit B.) Plaintiffs also expressed deep concern over the fact that local school districts had through reclassification or other means eliminated 421 students from the class, mostly by school districts that CSDE had identified as "most in need" including 271 from Bridgeport, 101 from New Haven, and 43 from Stamford. (Id. at 2.)

9. The defendants took no action during the following year to respond to plaintiffs' comments or to halt this rather obvious pattern of removing students with a label of mental retardation or intellectual disabilities from the class to reduce the possibility of oversight with regard to these students.

10. The defendants filed their Second Annual Report on June 30, 2003.

11. On December 18, 2003 the plaintiffs indicated in their Comments on the Second Annual Report that the defendants had still not complied with the requirement of Section I.2. of the Settlement Agreement and had still not responded to plaintiffs' concerns or taken action to stop this removal of students from the class. (Exhibit C.)

12. During the months that followed, the plaintiffs continued to express objections to the defendants and the Expert Advisory Panel about the failure of the defendants to take any action to address plaintiffs' concerns.

13. On May 11, 2004 the undersigned counsel wrote to Attorney Urban asking him to

explain a statement he made during a meeting with EAP to the effect that the class list had been supplied. (Exhibit D.) Plaintiffs' counsel asserted in that letter that the defendants' failure to supply and update a list of class members violated Sections I.2. and I.3. of the Settlement Agreement. (*Id.*)

14. On May 25, 2004 Attorney Urban responded in a letter that the list of thirty-two character identification numbers in an Appendix to the Second Annual Report satisfied the requirements Sections I.2. and I.3. with regard to the class list. Attorney Urban also questioned whether the plaintiffs really needed the names of class members. (Exhibit E.)

15. On July 20, 2004 Attorney Shaw indicated in a letter to Attorney Urban that class counsel could not possibly represent the class properly unless the names and other identifying information about the class members are provided. (Exhibit F.) Plaintiffs also indicated that the defendants' position was unreasonable in light of the fact that the parties had a long history of sharing confidential information under a Protective Order that was negotiated by the parties and approved by the federal court. (*Id.*) Plaintiffs urged defendants to provide the class list with the names and school districts of class members or agree to negotiate a new Protective Order if the existing court orders were deemed insufficient. (*Id.*)

16. On July 28, 2004 Attorney Urban wrote an email to Attorney Shaw to request a copy of the agreed-upon Protective Order as his copy had been put into storage. (Exhibit G.)

17. On July 29, 2004 plaintiffs' counsel mailed Attorney Urban a copy of the agreed-upon Protective Order as requested. (Exhibit H.)

18. On August 9, 2004 Attorney Urban indicated in a letter to plaintiffs' counsel that

the agreed-upon Protective Order had been mailed to the U.S. Department of Education to determine if it will alter its position on disclosure of identifying information about class members to the plaintiffs in light of Protective Order #1. (Exhibit I.) Attorney Urban's response indicated that he would not supply plaintiffs with confidential information about class members under the existing Protective Order, or work with plaintiffs to negotiate a new protective order. Rather, defendants intend to leave the important issue of access by the class representatives to confidential information about the class to the Family Policy Compliance Office of the United States Department of Education.

19. On August 24, 2004 plaintiffs' counsel requested information on students with mental retardation and intellectual disabilities aged 18-21 who were exited from special education before they reached their twenty-first birthday or were otherwise aged out pursuant to CSDE Update # 32. (Exhibit J.) Plaintiffs made this request because counsel has received anecdotal information prior to and during a meeting with the EAP that local school districts were "exiting" significant numbers of students with mental retardation from the class at ages 18, 19 and 20 by presenting them with high school diplomas to avoid providing special education and related services those class members would otherwise be entitled until age 21.

20. On August 26, 2004 the Connecticut Department of Education indicated in a letter to Attorney Shaw that it would not provide any confidential information in response to Attorney Shaw's inquiry until the U.S. Department of Education responded to Attorney Urban's letter. (Exhibit K.)

21. On September 10, 2004 the plaintiffs submitted their comments on the Third Annual

Report on the implementation of the Settlement Agreement. (Exhibit L.) In those comments plaintiffs expressed alarm over the fact that defendants had refused to provide the class list and access to the CSDE database to the class representatives. They also expressed concern that the number of students removed from the class by local school districts with the implicit consent of CSDE had increased to 623 as of December 2003 and increased further to over 769 students with intellectual disabilities as of August 23, 2004. (*Id*., p. 10).

22. On September 17, 2004 Attorney Urban wrote a letter to Attorney Shaw confirming that defendants would not provide class counsel with personally identifying information about the class without first providing notice to the parents/guardians of the affected students. (Exhibit M)

23. On September 22, 2004 the plaintiffs indicated that they could not agree that access to the CSDE database under Protective Order #1 could properly be blocked by defendants. Plaintiffs agreed to cooperate in sending any notice relating to access to documents maintained by local school districts, however. (Exhibit N)

24. On October 8, 2004 Attorney Urban responded by indicating that CSDE's position would not change. (Exhibit O)

25. All of the information requested by plaintiffs – the class list and information about students exited from the class – can be obtained from the CSDE computer database which was provided and routinely updated during the period December 1992 through the trial of this matter. Plaintiffs must be able to identify the names, addresses and birth dates of the students on the class list, as well as those exited from the class, and the ability to follow up with the

families of those children to determine whether their children were properly exited from the class and whether any attempt was made to address any deprivation caused by any improper identification and long-term segregation of their children. It is essential that plaintiffs be given access to confidential information so that they can conduct their own independent analyses as to the impact of defendants' remedial efforts on the implementation of the five goals of the Settlement Agreement.

26. Plaintiffs cannot monitor the implementation of the Settlement Agreement and cannot properly assess the impact of defendants' policies on the class unless they are afforded access to confidential information about the children on the CSDE data base, including the names, addresses, birth dates, disabilities, placements and other identifying information about class members.  Plaintiffs must be able to assess the reasons each class member was exited from the class, and the defendants' response in order to determine whether the policies and practices that have impacted the class violated the Settlement Agreement and orders of this Court.

27. Defendants have failed to comply with Sections I.2 and I.3 of the Settlement Agreement by refusing to provide such access and/or to work cooperatively with plaintiffs to either provide confidential information about class members or negotiate a supplemental protective order to increase the safeguards for confidential information.

WHEREFORE, plaintiffs move for an order requiring the defendants to:

(1) produce a class list that includes at least the students names, addresses, birth dates, disabilities, schools they attend and responsible the school district as of 1999, with updates that indicate changes to the class list, including, but not limited to, any students who have been

exited or removed from the class with the reasons given for exiting those students from the class;

(2) provide plaintiffs with updates to the CSDE special education database previously provided to plaintiffs pursuant to Protective Order #1; and

(3) cooperate with the plaintiffs to gain access to all data and files maintained by CSDE relating to special education students with "mental retardation" or "intellectual disabilities", including all documents and data relating to defendants' monitoring efforts and actions taken to enforce the Settlement Agreement.

(4) cooperate with plaintiffs' counsel to gain access to the files and programs provided class members by local districts as necessary to monitor implementation and enforce the Settlement Agreement.

PLAINTIFFS,

By /s/ *David C. Shaw*
David C. Shaw, Esq.
Law Offices of David C. Shaw LLC
34 Jerome Ave, Suite 210
Bloomfield, CT 06002
Tel. (860) 242-1238
Fax. (860) 242-1507
Email: dcshaw@cttel.net
Fed. Bar No. ct05239

By /s/ *Frank J. Laski by DCShaw*
Frank J. Laski, Esq.
Mental Health Legal Advisors Committee
294 Washington St., Suite 320
Boston, MA 02108
Tel. (617) 338-2345
Email flaski@email.mhl.state.ma.us
Fed. Bar No. ct16180

9

EXHIBITS A THROUGH Q HAVE BEEN FILED MANUALLY.

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed first class, postage prepaid to all counsel of record on January 13, 2005:


Ralph Urban, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141


                /s/  *David C. Shaw*
                David C. Shaw, Esq.