UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO.: |
| Plaintiffs, | : | 291CV00180 (RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| BOARD OF EDUCATION, et al. | : | |
| Defendants. | : | JANUARY 12, 2005 |

**MEMORANDUM IN SUPPORT OF**

**MOTION FOR ORDER TO ENFORCE SETTLEMENT AGREEMENT**

**BACKGROUND**:

The plaintiffs move for further orders to enforce defendants' obligations under Section I.2 and I.3 of the Settlement Agreement. Further remedial orders are necessary because defendants have not provided to the parties and the court a useful and accurate list of student class members and have refused to provide the class representatives access to data and files on class members necessary to assess and enforce defendants' compliance with the Settlement Agreement. Despite repeated efforts by plaintiffs' counsel to obtain basic information essential to protecting rights of student class members, defendants have delayed deferred and stonewalled for well over three years. The relevant facts supporting this enforcement motion are set forth below.

The Settlement Agreement was negotiated by the parties and approved by the Court on May 31, 2002 [Doc. # 463]. Section I.2. of the Settlement Agreement provides:

> The defendants shall prepare and distribute to the parties and the court a list of public school students in Connecticut who on or after December 1, 1999 carry the label of either mental retardation or intellectual disability and who are eligible for special education; such list shall be updated periodically.

Section I.3. of the Settlement Agreement provides:

> The plaintiffs shall have a right to collect data relating to the students identified in number 2. [Section I.2.] above and to challenge the adequacy of that list. CSDE shall cooperate with the plaintiffs to gain access to data and files relating to class members, to the extent allowed by state and federal statute, for all purposes relating to the enforcement and implementation of this Agreement….

These provisions were agreed to in order to enable the class counsel to gain access to the list of class members and verify the list and if necessary challenge the adequacy of the list and enforce the Settlement Agreement. The terms were included so that plaintiffs could obtain the data maintained by the Connecticut State Department of Education ("CSDE") computer database and, if needed, information on individual class members from local school districts. These simple provisions were designed to continue the practice and protocols of discovery and information sharing that had been established in the early stages of litigation with the assistance of Magistrate Judge F. Owen Eagan and used by the parties through trial.

On December 11, 1992 Judge Eagan approved and entered this "Protective Order # 1" as an Order the Court. [Doc. # 193, attached as Exhibit A hereto.] That Protective Order safeguards the confidential information in the "computer tapes, discs, diskettes, or other computer records (and all information contained therein) turned over to the plaintiffs or their attorneys during the course of this case…" Protective Order #1, p. 2. The Protective Order

2

remains in effect until "the conclusion of the above captioned case including the completion of any appeals, remands, or other continuing proceedings (as determined by the court)…" (Protective Order #1, p. 2.)   Therefore, Protective Order #1 remains in effect during the remedial phase of this litigation and removes any confidentiality concerns that might otherwise arise from disclosure of CSDE data.

On April 26, 1996, the parties negotiated a second Discovery Order that provided that the experts retained by plaintiffs and defendants were authorized to visit, review and copy the records of class members, interview teachers, administrators and other school and non-school personnel involved in the supervision or delivery of special education and related services to class members and make observations of the special education programs provided by an agreed upon sample of 229 students from twelve school districts.  The parties agreed further that the Commissioner of the Connecticut Department of Education would notify local school districts by letter enlisting their full cooperation in discovery as to a sample of student classmembers.. The Stipulated Order, entered as a Court Order on April 26, 1996, limited the use of any information obtained though the site visits and prohibited improper disclosure of that information. [Doc. # 247].  Pursuant to that Order the Commissioner of CSDE wrote a letter to the superintendents of twelve school districts. Those school districts fully cooperated :allowing the experts for the parties to review and copy individual program plans and to observe the educational programs of the 229 selected students. Also, pursuant to Protective Order #1, the entire CSDE database of 75,000 special education students was provided to plaintiffs and updated periodically up to the time of trial.  Under the authority of the court approved

protective orders, the parties and their experts reviewed and copied the files maintained by CSDE relating to the monitoring and oversight of local school districts, and visited, made observations, interviewed teachers and administrators and copied files on class members maintained by local school districts. The expert analyses formed the basis of the expert testimony offered during the trial of this matter.

On October 18, 2002 the plaintiffs provided to the Expert Advisory Panel ("EAP") and defendants their comments on the defendants' First Annual Report on the implementation of the Settlement Agreement.[1] The plaintiffs asserted in those comments that defendants had not prepared and distributed to class counsel a list of public school students with mental retardation and intellectual disability as required by Section I.2. of the Settlement Agreement. (Exhibit B.) Plaintiffs also expressed deep concern that local school districts through reclassification or other means had eliminated 421 students from the class, including 271 from Bridgeport, 101 from New Haven, and 43 from Stamford. (*Id*. at 2.)

The defendants took no action during the following year to respond to plaintiffs' comments or to halt the practice of removing students with a label of mental retardation or intellectual disabilities from the class. The defendants filed their Second Annual Report on June 30, 2003. On December 18, 2003 the plaintiffs submitted comments to the EAP pointing out defendants' continued failure to comply with the requirement of Section I.2. of the Settlement Agreement and lack of any attention or action to stop removal of students from the class. (Exhibit C.) Plaintiffs also asserted that the defendants had made little or no progress in

---

[1] These comments were initially filed with the Court, but were then referred to the EAP for consideration following a status conference with the Magistrate Judge.

implementing the central goals of the Settlement Agreement. During the months that followed, the plaintiffs continued to express these objections to the defendants and the Expert Advisory Panel.

On May 11, 2004 plaintiffs' counsel wrote to Attorney Urban asking him to explain his representation to the EAP that the class list had been disclosed as required by the Settlement Agreement. (Exhibit D.) Plaintiffs asserted that the defendants' failure to supply and update a list of class members violated Sections I.2. and I.3. of the Settlement Agreement. (*Id.*)

On May 25, 2004 Attorney Urban responded by indicating that the list of thirty-two character identification numbers in an Appendix to the Second Annual Report satisfied the requirements Sections I.2. and I.3. with regard to the class list. Attorney Urban also questioned whether the plaintiffs really need the names of class members. (Exhibit E.)

On July 20, 2004 Attorney Shaw responded by indicating that class counsel could not possibly represent the class properly unless the names and other identifying information about the class members were provided. (Exhibit F.) Plaintiffs also indicated that the defendants' position was unreasonable in light of the fact that the parties had a long history of sharing confidential information under a Protective Order that was negotiated by the parties and approved by the federal court. (*Id.*) Plaintiffs urged defendants to provide the class list with the names and school districts of class members or agree to a new Protective Order if the existing court orders were deemed insufficient. (*Id.*)

On July 28, 2004 Attorney Urban wrote an email to Attorney Shaw to request a copy of the agreed upon Protective Order as his copy had been put into storage. (Exhibit G.) On July

29, 2004 plaintiffs' counsel mailed Attorney Urban a copy of the agreed-upon Protective Order as requested.  (Exhibit H.)

On August 9, 2004 Attorney Urban indicated in a letter to plaintiffs' counsel that the agreed-upon Protective Order had been mailed to the U.S. Department of Education for an assessment that would enable CSDE to determine if it was willing to alter its position on disclosure of identifying information about class members to the plaintiffs in light of Protective Order #1.  (Exhibit I.)  Attorney Urban's response indicated that he would not supply plaintiffs with confidential information about class members under the existing Protective Order, or work with plaintiffs to negotiate a new protective order.

On August 24, 2004 plaintiffs' counsel requested information on students with mental retardation and intellectual disabilities aged 18-21 who exited special education before they reached heir twenty-first birthday or otherwise aged out pursuant to CSDE Update # 32.  (Exhibit J.)  Plaintiffs made this request because counsel received some information that local school districts were "exiting" significant numbers of students with mental retardation from the class at ages 18, 19 and 20 by presenting them with high school diplomas to avoid providing special education and related services those class members would otherwise be entitled until age 21.  On August 26, 2004 the Connecticut Department of Education indicated in a letter to Attorney Shaw, that it would not provide any confidential information in response to Attorney Shaw's inquiry until the U.S. Department of Education responded to Attorney Urban's letter.  (Exhibit K.)

On September 10, 2004 the plaintiffs submitted their comments to the EAP on CSDE's

Third Annual Report on the implementation of the Settlement Agreement. (Exhibit L.) In those comments plaintiffs expressed alarm over the fact that defendants had refused to provide the class list and access to the CSDE database to the class representatives. They also expressed concern that the number of students removed from the class by local school districts with the implicit consent of CSDE had increased to 623 as of December 2003 and increased further to over 769 students with mental retardation as of August 23, 2004. (*Id*., p. 10). Defendants' failure to make progress on the central goals of the Settlement Agreement was another major concern expressed by plaintiffs.

On September 17, 2004 Attorney Urban confirmed that defendants would not provide confidential information about class members maintained in the CSDE database without providing prior notice to the class. (Exhibit M) On September 22, 2004 plaintiffs indicated that they could not agree that access to the CSDE database under Protective Order #1 could be conditioned on prior notice to the class. Plaintiffs agreed, however, to cooperate in any notice needed to gain access to individual student files maintained by local school districts. (Exhibit N) On October 8, 2004 Attorney Urban responded by indicating CSDE's position would not change. (Exhibit O)

All of the information requested to date by plaintiffs – the class list and information about students exited from the class – can be obtained from the CSDE computer database which was provided and routinely updated during the period December 1992 through the trial of this matter. Plaintiffs must be able to identify the names, addresses and birthdates of the students on the class list, as well as those exited from the class, and the ability to follow up with the families

of those children to determine whether their children were properly exited from the class and whether any attempt was made to address any deprivation caused by any improper identification and long-term segregation of their children.  It is essential that plaintiffs be given access to confidential information so that they can conduct their own independent analyses as to impact of defendants' remedial efforts on the implementation of the five goals of the Settlement Agreement.

Moreover, plaintiffs cannot monitor the implementation of the Settlement Agreement and cannot properly assess the impact of defendants' policies on the class unless they are afforded access to confidential information about the children on defendants' data base, including the names, addresses, ages, disabilities, placements and other identifying information about class members.

**ARGUMENT**:

It is beyond dispute that the Court has the jurisdiction to enter such further orders as are necessary and proper to bring defendants into compliance with Sections I.2. and I.3. of the Settlement Agreement.  The Settlement Agreement was entered into to resolve the issue of segregation of students with mental retardation without the necessity of further litigation. Having entered the Settlement Agreement as an Order of the Court, it can surely enter such orders as are necessary to enforce that agreement. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380-81 (1994); *Kozlowski v. Coughlin,* 871 F.2d 241, 244 (2nd Cir. 1989); *See also*, *Frew v. Hawkins*, 124 S.Ct. 899, 905 (2004)("Federal courts are not reduced to approving consent decrees and hoping for compliance.  Once entered, a consent decree may be

enforced."); *Benjamin v. Jacobson,* 124 F.3d 162, 170 (2d Cir. 1997); *Wilder v. Bernstein*, 49 F.3d 69, 74 (2d Cir. 1995).

Here, the comments of the EAP indicate that the defendants have made no measurable progress in implementing the central goals of the Settlement Agreement. Moreover, defendants have not complied with Sections I.2. and I.3. of the Settlement Agreement. Providing a list of 32-character identification numbers does not comply with Section I.2. that requires defendants to prepare, distribute to the parties and the Court, and update a list of public school students in Connecticut who on or after December 1, 1999 carry the label of either mental retardation or intellectual disability. It is impossible for the class representatives to use that list to independently verify whether all students with mental retardation and intellectual disability are included on the class list or whether students have been improperly removed from the list by local school districts. It is impossible for plaintiffs to carry out their broader monitoring responsibilities as class representatives if the data and documents in CSDE's possession are not readily accessible to class counsel and if they are unable to review programs of a carefully selected sample of class members in local school districts.

Moreover, after providing plaintiffs with the complete CSDE database for all 75,000 special education students in Connecticut and updating that database for plaintiffs periodically during the period December 11, 1992 through the trial and settlement of this matter pursuant to an agreed upon Protective Order, it is inconceivable that defendants could now maintain that federal law prohibits the disclosure of CSDE data and files relating to class members pursuant to Section I.3. of the Settlement Agreement. If defendants had a legitimate concern about the

release of confidential information to class counsel, they should have presented it to the federal court, not to the Family Policy Compliance Office of the United States Department of Education. Attorney Urban indicates in his letter to Attorney Shaw dated May 25, 2004 that the interpretation of FERPA provided in the letter from the Director of the Family Policy Compliance Office of the United States Department of Education dated November 4, 2002 supports his position that CSDE is justified in withholding the further release of personally identifying information because Section I.3. of the Settlement Agreement requires the CSDE to cooperate with plaintiffs only "to the extent allowed by state and federal statute".  (Exhibit E.) Nothing in that letter, however, supports Attorney Urban's position that he may withhold personally identifying information about the class from class counsel.

      Class counsel has the right and duty  to collect such information as is necessary to monitor the implementation of the Settlement Agreement.  Once the class was certified by the Court, class counsel became responsible for representing the class.  *Blanchard v. Edgemark Financial Corp*., 175 F.R.D. 293, 301 (E.D. Ill. 1997); Newberg on Class Actions (4th ed.) §15.18, pp. 63-65.  Counsel assumes a fiduciary responsibility and must communicate with the class so that the class as a whole is properly represented during the litigation process.  Manual for Complex Litigation (3rd Ed.) §30.2.  Class counsel can hardly be expected to fulfill this responsibility if they cannot assess the adequacy of CSDE's remedial efforts through reviewing CSDE data and documents.  The State defendants recognized this important function of class counsel by stipulating in Section I.3. of the Settlement Agreement that "plaintiffs shall have a right to collect data relating to the students identified in number 2. [Section I.2.] above…".

Attorney Urban does not take the position that plaintiffs do not have a right to the data in the CSDE database, however. Rather, he takes the position the data will not be released because, based on an administrative interpretation of FERPA, CSDE has the responsibility to notify parents that confidential information will be released to class counsel. He argues that providing such notification will be cumbersome. There are at least three reasons that Attorney Urban's position should be rejected.

First, any notification requirement for notification to the class should not be interpreted so as to frustrate class counsel's ability to represent the class as the interest of class counsel in securing access far outweighs any reason for withholding the requested data. The proper analysis for determining the reach of discovery in the face of claims of privilege is set out in *Burka v. New York Transit Auth.*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986). In *Burka* the court was asked to decide whether plaintiffs' counsel should be allowed to review the files of *non*-party employees of the New York Transit Authority who tested positive for marijuana. The Court, applying the four-part balancing test articulated in *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N.Y. 1977) determined that plaintiffs should be accorded such access.

In finding that an assessment of the first prong of the *Lora* test (the nature of the privacy interest) pointed toward disclosure, the *Burka* court concluded that the interest in preventing disclosure was outweighed by the need for disclosure to fully and fairly litigate an important civil rights case. Similarly, since the data requested here will be disclosed only to the attorney for the class and his experts, and the need for fully implementing this settlement of an important civil rights case is great, any assessment of the first prong of the *Lora* test must be resolved in

11

favor of full disclosure.

Assessment under the second and third prongs of the *Lora* test (expectation of privacy) must also be resolved in favor of disclosure. Here, the strong policy in favor of full development of the facts in federal litigation so that the ends of justice will be served, outweighs any interest the defendants have articulated. This is particularly true as there is a strong public interest in fully remedying the unnecessary segregation of class members. *See, Burka*, 110 F.R.D. at 666. Moreover, in assessing this prong of the *Lora* test, relating to the employees expectation of privacy, the Court observed that "[a] further consideration in weighing the expectation of privacy is the relation to the litigation of the party with the interest in confidentiality." 110 F.R.D. at 665. This consideration weighed heavily in favor of disclosure in *Burka* because the plaintiffs were seeking to protect the rights of some of the non-party employees about whom confidential information was sought. Similarly, as class counsel is seeking to vindicate the rights of class members, the class as a whole has a stake in a favorable outcome to this litigation.

The fourth and final prong (limitation on disclosure) also points decisively in plaintiffs favor as the parties have agreed upon a Protective Order that strictly prohibits improper disclosure.

The holding in *Burka* has been has been followed in many subsequent lawsuits in this circuit. *See, Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 126-128 (N.D.N.Y. 1984) (privacy interests of non-party correction officers outweighed by the need of the inmate plaintiffs to fully litigate their claims relating to abuse by those correction officers); *Messier v.*

*Southbury Training School*, No. 3:94CV1706 (EBB)(Further Ruling and Order Regarding the plaintiffs' Motion to Compel-attached as Exhibit P); *C.T.B.I.A. v. Hogan*, Civ. No. H90-97(PCD)(Ruling on Motion for Orders Relating to Discovery-attached as Exhibit Q ).

Second, CSDE's reason for reversing its previous practice of full disclosure does not justify depriving class counsel the information needed to enforce the Settlement Agreement. The parties have previously agreed to a notification to the class about the proposed settlement. The Court subsequently approved that notice and the parents were notified by CSDE. That notice informed parents of class members of the settlement and of class counsel's role in representing their children on class issues. It is unclear why further notification is required. Moreover, even if further notification is deemed necessary, there is nothing prohibiting the distribution of a similar agreed-upon notification to inform parents that confidential information about their children will be released to class counsel.

Third, as this Court has determined that plaintiffs are the proper representatives of the class, the defendants do not have standing to use FERPA as a sword to prohibit enforcement of the rights of class members. Moreover, even if CSDE was found to have such standing, the Court lacks jurisdiction over FERPA claims. *Gonzaga University v. Doe*, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309, No. 01-679, 2002 WL 1338070 (June 20, 2002) (holding that FERPA does not confer personal rights enforceable under § 1983).

Fourth, the interpretation of FERPA contained in the letter to Mr. Dowaliby dated November 4, 2002 does not support Attorney Urban's position that prior notice is required. As there is an agreed-upon Court Order in place and plaintiffs do not at this time seek discovery

from local school districts, FERPA has no application.

**CONCLUSION**:

Defendants' failure to provide and update a list of class members, including at minimum, their names, addresses, birth dates, disabilities, school districts, and school of attendance violates Section I.2. of the Settlement Agreement. Moreover, CSDE's failure to respect the plaintiffs' right to collect data on class members and/or to work cooperatively with plaintiffs over the past two and one-half years to either provide confidential information about class members or negotiate a supplemental protective order to increase the safeguards for confidential information violates Sections I.2. and I.3 of the Settlement Agreement.

Plaintiffs seek by way of relief an order requiring the defendants to:

(1) produce a class list that includes at least the students names, addresses, birthdates, disabilities, schools they attend and responsible the school district as of 1999, with updates that indicate changes to the class list, including, but not limited to, any students who have been exited or removed from the class with the reasons given for exiting those students from the class;

(2) provide plaintiffs with updates to the CSDE special education database previously provided to plaintiffs pursuant to Protective Order #1; and

(3) cooperate with the plaintiffs to gain access to all data and files maintained by CSDE relating to special education students with "mental retardation" or "intellectual disabilities" including all documents and data relating to defendants' monitoring efforts and actions taken to enforce the Settlement Agreement.

(4) Cooperate with plaintiffs' counsel to assist them in gaining access to the files and programs provided class members by local school districts as necessary to monitor implementation and enforce the Settlement Agreement.

PLAINTIFFS,

By /s/ *David C. Shaw*
David C. Shaw, Esq.
Law Offices of David C. Shaw LLC
34 Jerome Ave, Suite 210
Bloomfield, CT 06002
Tel. (860) 242-1238
Fax. (860) 242-1507
Email: dcshaw@cttel.net
Fed. Bar No. ct05239

By /s/ *Frank J. Laski by DCShaw*
Frank J. Laski, Esq.
Mental Health Legal Advisors Committee
294 Washington St., Suite 320
Boston, MA 02108
Tel. (617) 338-2345
Email flaski@email.mhl.state.ma.us
Fed. Bar No. ct16180

EXHIBITS A THROUGH Q HAVE BEEN FILED MANUALLY.

**CERTIFICATION**

  This is to certify that a copy of the foregoing was mailed first class, postage prepaid to all counsel of record on January 13, 2005:

Ralph Urban, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

               /s/ *David C. Shaw*
              David C. Shaw, Esq.