**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

P.J., et al.                                    :           CIVIL ACTION NO.
    *Plaintiffs*                           :           2:91CV00180(RNC)
                                                       :
    v.                                          :
                                                       :
STATE OF CONNECTICUT, et al.
    *Defendants*                          :           FEBRUARY 15, 2005

**DEFENDANTS' MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' "MOTION TO ENFORCE"**

The defendants in the above action respectfully submit this memorandum in opposition to

plaintiffs' "motion to enforce," dated January 13, 2005.  In their motion and memorandum

plaintiffs have failed to articulate the controlling legal standard and have either misstated or

omitted certain material facts. Contrary to plaintiffs' assertions, the defendants have done their

level best to meet both the requirements of the Settlement Agreement and to comply -- as they

must -- with the directives of the United States Department of Education ("USDOE") and to

ensure plaintiffs have the information they claim to need in a timely and cost efficient manner.

For the reasons set forth below, the motion should be denied.

### I. The Legal Context

As noted by the plaintiffs, on May 31, 2002 the Court approved the parties' Settlement

Agreement, which does indeed contain the two provisions quoted in paragraph 2 of plaintiffs'

motion. Notably, the second section cited (Section I.3) provides that the plaintiffs shall have the

right to collect data relating to the students in the class *"to the extent allowed by state and*

*federal statute .…"* (Emphasis added). Plaintiffs' motion goes on to offer counsel's opinions on

why these provisions were included and what the parties' "intention[s]" were in agreeing to the

provisions. (Plaintiffs' memorandum at 2)  However, as the Supreme Court noted in United

States v. Armour & Co., 402 U.S. 673, 681-682 (1971), it is the language of the consent decree

that defines the obligations of the parties, not the parties' purported or intent or purposes.

> [T]he *decree* itself cannot be said to have a purpose; rather the *parties* have
> purposes, generally opposed to each other, and the resultant decree embodies as
> much of these opposing purposes as the respective parties have the bargaining
> power and skill to achieve. For these reasons, the scope of a consent decree must
> be discerned within its four corners, and not by reference to what might satisfy the
> purposes of one of the parties to it.

Id. (Emphases in original), quoted in United States v. O'Rourke et al., 943 F.2d 180, 187-188 (2d

Cir.1991)

While plaintiffs have denominated their pleading a "motion to enforce," the Court in

Martens, et al v. Thomann, et al, 273 F.3d 159, 172 (2d Cir.2001) observed that "there is nothing

in the Federal Rules of Civil Procedure styled a 'motion to enforce.' Nor is there approval for

such a motion to be found in this Circuit's case law, except it situations inapposite to the case

before us [plaintiffs claiming they sought compliance with a class action settlement agreement]."

If the plaintiffs are asserting the defendants have failed to comply with a Court order, then they

must shoulder the burden of proof commensurate with a motion for contempt.  If instead the

plaintiffs claim defendants have failed to live up to a contractual obligation under the agreement,

then the standard is that for breach of contract. Id.

The standard for contempt is clear.

The failure to meet the strict requirement of an order does not necessarily subject
the party to a holding of contempt:

> Parties may be held in civil contempt for failure to comply with an order of the court
> if the order being enforced is clear and unambiguous, the proof of noncompliance is
> clear and convincing, and [the parties] have not been reasonably diligent and
> energetic in attempting to accomplish what was ordered.

Dunn, et al v. New York state Dept. of Labor, et al., 47 F.3d 485, 490 (2d Cir.1995) (quoting

United States v. O'Rourke, 943 F.2d 180, 189 (2d Cir.1991)); EEOC v. Local 638 of the Sheet

Metal Workers' Int'l. Association, 753 F.2d 1172, 2278 (2d Cir.1985), aff'd. 478 U.S. 421

(1986); see also, Roberson, et al. v. Giuliani, 346 F.3d 75, 80 (2d Cir.2003) (Consent decrees

enforceable through the contempt power of the court).[1]

     If the Settlement Agreement is deemed a contract, the law clearly provides that

"settlement agreements are contracts and must therefore be construed according to general

principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484

(2d Cir. 1999). While a district Court may enforce a settlement agreement when it properly

retains jurisdiction to do so, such retention of jurisdiction does not empower the court to modify

the agreement's terms, absent special circumstances such as a material breach or duress. In re Air

Crash Disaster at John F. Kennedy Int'l. Airport on June 24, 1974, 687 F.2d 626, 629 (2d

Cir.1982). If the terms of a settlement agreement are unambiguous, "courts must take care not to

alter or go beyond the express terms of the agreement, or to impose obligations on the parties

that are not mandated by the unambiguous terms of the agreement itself." Palmdessa, 173 F.3d at

484.

     Under principles of contract law, the plaintiffs' motion raises several issues. Namely,

does the Settlement Agreement contractually bind the defendants to provide plaintiffs' counsel

personally identifiable information when counsel have been provided essentially all other data?

Defendants believe the plain wording of Section I.3 of the Settlement Agreement establishes the

---

[1] Indeed, as discussed below, the defendants actions in this case can hardly be compared to the behavior typically found contemptuous in cases such as U.S. v. ILA Local 1588, et al., 77 Fed. Appx. 542, 546, 2003 U.S.App. LEXIS 18062 (2d Cir.2003), wherein the Court found "[e]leven years of rampant racketeering … completely undeterred by the court's previous orders."

defendants are not so bound. But even assuming, *arguendo*, the defendants are so bound, are

such provisions void for violation of law or public policy, in particular, the Family and

Educational Right to Privacy Act, 20 U.S.C. 1232g, and the regulations promulgated thereunder

("FERPA"), as determined by USDOE? See, e.g.,. Transamerica Mortgage Advisors, Inc. v.

Lewis, 444 U.S. 11, 20 (1979) (No enforcement of contract that violates, and therefore is void

under Investment Advisors Act of 1940); NLRB v. Sheet Metal Workers Local 38, 575 F.2d 394

(2d Cir.1978) (Interest arbitration provision in contract unenforceable to the extent it applies to

nonmandatory bargaining subject); Wheelabrator Environmental Systems v. Galante, 136 F.

Supp. 2d 21 (D.Conn.2001) citing Solmon v. Gilmore, 248 Conn. 769, 774 (1999); U.S. v.

Bonanno Organized Crime Family, 879 F.2d 20 (2d Cir.1989); Alliance Metals v. Hinely

Industries, Inc., 222 F.3d 895 (11th Cir.2000)  And finally, if the contract requires providing such

personally identifiable information, and such a requirement is not void, do theses circumstances

warrant the Court ordering the extraordinary remedy of specific performance? See, Lucente v.

IBM, 310 F.3d 243, 262 (2d Cir.2002) (Before extraordinary remedy of specific performance

may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete

and inadequate to accomplish substantial justice); accord, Leasco Corp. v. Taussig, 473 F.2d

777, 786 (2d Cir. 1972)

The dilemma faced by the defendants, and indeed the crux of the issue before the Court,

is that, notwithstanding USDOE's full review of the Settlement Agreement in this case and other

related materials, USDOE has forbade the defendants from disclosing *personally identifiable*

information regarding the students at issue, absent written notice to parents and guardians, with

sufficient time for parents and guardians to object (and by implication a record keeping system to

keep track and honor such objections). Plaintiffs have so far proven either unwilling or unable to

approve the laborious process that would be required to carry out this mandate. [2] That being the

case, the decisions plaintiffs cite on this central and even dispositive issue are inapposite.  In

Lora, et al v. Board of Education of the City of New York, et al., 74 F.R.D. 565 (E.D.N.Y.1977)

the Court ultimately ruled that the psychiatric and social work records of the school children that

would be made available to the plaintiffs' experts would be *non-identifiable*. As reflected below,

plaintiffs in this case already have the data they truly need, with students identified by unique

identifying numbers. Stated bluntly, plaintiffs here want the names; Lora thus hardly supports

their arguments. In Burka v. New York Transit Authority, 110 F.R.D. 660 (S.D.N.Y.1986),

which relied on Lora, the Court was balancing the request for disclosure with what appears to

have been a common law privacy interest. In Inmates of Unit 14, et al. v. Rebideau, 102 F.R.D.

122, 126 (N.D.N.Y.1984) the basis for nondisclosure asserted was a New York state law on the

confidentiality of personnel files. None of these cases involved a federal regulatory agency

enforcing a countervailing *federal* law, as here, namely, FERPA. [3]

---

[2] Although defendants firmly believe they have not violated the Settlement Agreement in any
respect, this is not the first time the State Department of Education has been faced with the
Hobson's choice of deciding whether comply with directives of USDOE, which provides
significant federal monies to the State for special education (among other programs), or adhering
to federal court decisions -- or in this case one party's *interpretation* of a federal court directive.
In two decisions by different federal judges, the United States District Court in Lillbask v. Sergi,
193 F.Supp.2d 503, 513-514 (D.Conn.2002) and A.S. Board of Education, 245 F.Supp.2d  417,
427 (D.Conn.2001) ruled that a then-existing provision of a state law (Conn. Gen. Stat. 10-
76h(a)(1)), which mandated that any issues not raised at a special education planning and
placement team ('PPT") could not be litigated before a special education due process hearing
officer, did not violate the federal special education law, the Individuals with Disabilities
Education Act, 20 U.S.C. §1400 et seq. ("IDEA"). Notwithstanding these court decisions,
USDOE ordered the Connecticut law changed before it would approve Connecticut's IDEA Part
B plan. Eventually, Connecticut was forced to repeal this provision of the statute. June 30
Special Session P.A. 03-6.

## II. <u>Discussion</u>

It is remarkable that plaintiffs have accompanied their motion and memorandum with an

appendix ("Appendix") of the relevant documents, given that many of these documents directly

contradict assertions made in plaintiffs' motion and memorandum.

For example, plaintiffs claim defendants "have not provided the parties and the court a

useful and accurate list of class members and have refused to provide class representatives [i.e.,

Attorney Shaw] access to data …." (Plaintiffs' memorandum at 1)  In Exhibit E to the Appendix,

defendants reiterated that

> the data that your May 11 letter refers to was provided to you and the Expert
> Advisory Panel as a large appendix to the second annual report, so you already
> have the data, with each student identified by a unique number. The data also
> shows exit changes (graduated, moved, deceased, aged out, dropped out, no
> longer labeled), but as yet does not show reclassifications (i.e., intellectual
> disability to a different disability category), which, as George Dowaliby explained
> at the last EAP meeting, the Department is working on tracking. Current
> limitations of the Department's annual data reporting system requires that this be
> done manually. The Department expects preliminary data on this to be ready later
> this calendar year, when it will be shared with all the appropriate parties. I frankly
> do not understand why you need names, since with unique identifying numbers
> you can do all the statistical and other analyses you might need or want.

This letter further noted that

> [t]he U.S. Department of Education's FERPA Compliance Office has instructed CSDE in
> writing (copy attached) that prior to making personally identifiable information from
> education records (in this instance the names) available to the plaintiffs under the
> Settlement Agreement, CSDE must comply with the notice requirements in 34 CFR
> §99.31(a)(9). Having provided plaintiffs with all the data, with unique student identifiers
> so that plaintiffs could analyze the data any way they wished, CSDE did not undertake
> the cumbersome and expensive task of seeking to contact every parent or guardian to
> inform them of the intended disclosure of personally identifiable information, in

---

[3] While plaintiffs seek to downplay the importance of USDOE's determinations on this issue, the
defendants do not have this luxury. Indeed, during the trial, the Court (Chatigny, J.) was so
concerned with USDOE's views, it, *sua sponte*, ordered that a representative of USDOE from
Washington, D.C. appear and answer its questions, instructing the U.S. Attorney's Office to
make the necessary arrangements for a half day of testimony.

> "sufficient time to permit the parent or eligible student to take appropriate action," as
> required by USDOE's letter. Such a cumbersome task would be time consuming, and
> would take away from the substantive work those assigned to this matter are doing to try
> to further the goals of the Agreement.
>
> The letter went on to ask plaintiffs if
> [p]erhaps at this point you could articulate why you feel you need names, in addition to
> the unique numerical identifiers, so that if CSDE is going to expend its time and
> resources to comply with the USDOE's mandate on this issue, it can at least understand
> what further purpose would be served or how it would enhance anyone's understanding
> of the data or its usefulness. In the meantime, if you require another copy of the data
> already provided by unique numerical identifiers, we would be pleased to provide it
> again.

(Appendix Exhibit E). [4]  To this day, plaintiffs have never articulated why they cannot conduct

all the analyses required on this voluminous data  using the unique identification numbers, or

why they must have names. Just as plaintiffs never responded to this question, so too, plaintiffs

now simply assert, without explanation or justification that "[p]roviding a list of 32 character

identification numbers does not comport with Section I.2  [of the Settlement Agreement]…."

(Plaintiffs' memorandum at 9) Attached to defendants' May 25, 2004 letter (Appendix Exhibit

E) was the directive from USDOE (dated 11/4/02) which reflects that USDOE was in possession

of the previous Protective Order ("Protective Order #1) which -- contrary to plaintiffs' claim --

USDOE did not deem sufficient to obviate the need to seek written parental/guardian consent for

release of personally identifiable information (USDOE letter at 1).

 In the face of this same letter from USDOE,  plaintiffs make the patently false assertion

that "[n]othing in that letter … supports Attorney Urban's position that he may withhold

personally identifiable information about the class from class counsel." (Plaintiffs' memorandum

at 10)  In fact the first page of the letter reflects that "as part of the court ordered and approved

settlement, the CSDE is required to disclose certain information about members of the

classmembers' attorneys," while the last page of the letter states unequivocally that "CSDE or the school districts must comply with the notice requirements in §99.31(a)(9) [of 34 CFR] in advance of disclosing *any* information. The notice should allow sufficient time to permit the parent or eligible student [i.e., over 18 or emancipated] to take appropriate action. If they are not successful in their attempts to notify parents as required, then the school district must record the disclosure as required under §99.32 of the regulations." (Attachment to Appendix Exhibit E, emphasis added)  Again, plaintiffs' memorandum  at 13 claims that this USDOE letter does not say that prior notice to parents or students is required. How much plainer could USDOE have stated it than CSDE "must comply with the notice requirements…."? When USDOE wrote this letter, disclosure to anyone other than the attorneys had neither been discussed nor contemplated.

While the USDOE had already indicated that the Protective Order #1 had not changed its view that personally identifiable information could only be shared after notice to the parents or guardians (with sufficient time to respond, and a system for tracking all responses),  plaintiffs came up with a new theory that a stipulated order from the litigation, Stipulated Order dated April 26, 1996, would allow the disclosure of the personally identifiable information. While this document (attached to Appendix Exhibit H) by its own terms only covered a specific sample of student files from selected districts that were to be shared with the parties' experts for analysis prior to trial, the defendants dutifully posed this further question to USDOE to see if it altered USDOE's determination on the issue. (Appendix Exhibits I, K; attachment to Appendix Exhibit M)  USDOE's response to the renewed request with the further information was duly provided to the plaintiffs. (Appendix Exhibit M, with attachments)  USDOE indicated there "is no change in

---

[4] The defendants have, of course, supplied the periodic reports called for in the Settlement Agreement to the Court. These reports contain voluminous data and appendices.

8

the guidance we provided on November 4, 2002." Thus, on or about September 17, 2004

defendants informed plaintiffs

> [a]t this point, based on the current and consistent interpretation from the USDOE regarding FERPA requirements for the sharing of personally identifiable information in this instance and the language of the settlement agreement, the CSDE cannot provide you with the personally identifiable information you request without first providing appropriate notice to parents/guardians of the affected students.
>
> Please let me know if you wish the CSDE to proceed with the required notification and related requirements of FERPA that would allow compliance with your request. The CSDE wishes to cooperate with the Plaintiffs consistent with the requirements of the settlement agreement, but it also has a responsibility to abide by federal requirements regarding the confidentiality of student records.
>
> As the CSDE has stated several times before, it would also be pleased to provide the Plaintiffs with the information they seek using unique numerical identifiers for each student, which would allow the Plaintiffs to review and manipulate the data, without disclosing personally identifiable information in violation of federal requirements.

(Appendix Exhibit M; emphasis added) [5]

Appendix Exhibit N was plaintiffs' response to the September 17, 2004 letter. In it,

plaintiffs requested that defendants "immediately provide us the class list, with updates, that

includes the names, addresses, birth dates, disabilities … and name of the relevant school

districts." Confusingly, despite this demand, plaintiffs stated that

> [i]n light of your letter, we are willing to cooperate in preparing any notice to class members that you believe is necessary before we review any individual files and programs. Of course we will need to agree to any notification to class members as any such communication will constitute communication with our clients.

(Appendix Exhibit N)

---

[5] Plaintiffs' argument that the defendants do not have standing to interpose FERPA as a bar to giving them personally identifiable information misses the point. Defendants are not asserting the students' FERPA rights, they are simply acknowledging that USDOE, which enforces both FERPA and IDEA has mandated notice to parents and guardians, and as such defendants are in compliance with Section I.3 of the Settlement Agreement.

9

Defendants responded via Appendix Exhibit O. In it, the defendants reiterated that

> [i]f the State Department of Education ("SDE") is to provide you with educational information in its possession that is personally identifiable to particular students, i.e., including names and addresses in addition to the other data (some of which has already been supplied to you in a format that is not personally identifiable), SDE will need to provide notice to the parents/guardians and allow a reasonable time for objections, as spelled out by the correspondence SDE has received from the U.S. Department of Education's Family Policy Compliance Office, copies of which correspondence have already been shared with you. *To that end, we have attached a proposed notice for your review, as you have requested.*

(Appendix Exhibit O; emphasis added)  This letter went on to apprise the plaintiffs of "some

important caveats and limitations with respect to the data," and, in yet one more attempt to

resolve the issue by giving plaintiffs what they professed to need without having to await the

outcome of the cumbersome and expensive process of parent/guardian notification, the

defendants stated

> [f]inally, SDE believes that if you were to agree that the following proposal makes sense, it could provide all of the data you would need to effectively evaluate whether the goals of the settlement agreement are being achieved without SDE having to go through the cumbersome, time consuming and costly process of seeking to notify all parents or guardians, and keeping track of objections so that personally identifiable data could be released for those students for whom no objection has been received. In about five weeks time, SDE's data people could produce a report that would, district by district, using unique numerical identifiers for each student (as you have seen before), reflect each student, their race and ethnicity, their sex, their age, their percentage of time spent with nondisabled peers, whether they are attending their home school, and whether they are participating in extracurricular activities. I know you have indicated you are particularly concerned with the issue of students exiting special education as mentally retarded or intellectually disabled, and the reasons therefor -- whether graduation, dropping out, changing disability category, moving or other reasons. This information could be provided district by district for the 24 districts by December 30, 2004. For the remaining districts in the state it would probably not be completed for several more months, but reports could be released as completed. We obviously feel this option is more desirable, since it would be faster, less burdensome, and would ensure that you get the full set of data, not just the data for those students for whom no objection has been received.

(Appendix Exhibit O)  The letter closed with a clear and concise paragraph.

10

*Please let us know if you would like to take advantage of the proposal contained in the preceding paragraph, or whether you want to go the notification route, and if so, whether you have suggested changes to the attached proposed notice.*

(Appendix Exhibit O; emphasis added) [6] A proposed notification form to parents and guardians was attached. (Attachment to Appendix Exhibit O)  Plaintiffs did not respond to this letter, but rather filed the present motion.  Thus, while plaintiffs may technically have "agreed to cooperate in sending any notice related to access to documents maintained by local school districts," (Plaintiffs' memorandum at 7) they surely have not *actually* cooperated in sending notice to parents or guardians for the release of personally identifiable information by approving, disapproving or suggesting edits to the notice form, which they, in previous correspondence (Appendix Exhibit N) had *insisted* they had to approve. Nor, obviously did they respond to the alternative offer from CSDE to supply a specially created data set whereby they could effectively evaluate the progress on the goals of the Settlement Agreement. Given a menu of choices, plaintiffs did not even reply, but rather, tellingly, waited three months and initiated litigation.

Despite this factual record set forth in the Appendix, plaintiffs nevertheless represent to the Court that defendants have "fail[ed] … to work cooperatively with the plaintiffs over the past two and one-half years," that defendants have "delayed, deferred and stonewalled for well over three years," and that plaintiffs "cannot assess the adequacy of CSDE's remedial efforts through reviewing CSDE data and documents …." (Plaintiffs' memorandum at 14, 1, 10)  No fair-minded reading of this record can support such assertions, let alone permit a finding of contempt

[6] It is particularly revealing that in their motion and memorandum plaintiffs repeatedly insinuate that students have been dropped from the category of mentally retarded or intellectually disabled in some kind of cynical statewide attempt to eviscerate the class or eliminate its most disabled members, yet plaintiffs have not taken CSDE up on obtaining the data that would truly address this concern. Of course, in making such claims plaintiffs conveniently overlook that one of the principal stated goals of the Settlement Agreement is to address alleged over identification of students as mentally retarded or intellectually disabled. (Settlement Agreement at Section II.2)

under the standard set forth above. In short, the defendants have been diligent, conscientious, and indeed as accommodating as the law allows.

Nor do these facts establish that plaintiffs prevail under principles of contract law. In light of Section I.3 of the Settlement Agreement, defendants have fulfilled their contractual obligations. Even if the Court were to conclude they have not, any determination that the defendants must, under the terms of the Settlement Agreement, provide such personally identifiable information leads inexorably to the conclusion that the relevant provisions are void for violation of public policy, which policy has been clearly articulated by USDOE in the correspondence discussed above. Finally, even if the subject provisions are not void, principles of "substantial justice" hardly justify the imposition of the extraordinary remedy of an order for specific performance which would require release of personally identifiable information to counsel in the face of the USDOE's clearly stated prohibition, given that counsel have the data they need to conduct the relevant analyses -- and indeed have pointedly failed to take advantage of defendants' offers to provide them with the relevant data in highly useful formats. [7]

The defendants respectfully urge the Court to deny plaintiffs' motion.

---

[7] This is, of course, in addition to failing to follow up as promised on a proposed process for providing written notice to parents and guardians for release of personally identifiable information. See, supra at 11.

13

DEFENDANTS
STATE OF CONNECTICUT ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:      _____/s/_____
         Ralph E. Urban
         Assistant Attorney General
         Federal Bar No. 00349
         55 Elm Street
         P.O. Box 120
         Hartford, CT  06141-0120
         Tel: (860) 808-5210
         Fax: (860) 808-5385

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of

the Federal Rules of Civil Procedure on this 15th day of February, 2005, first class postage

prepaid to:

The Honorable Donna Martinez
United States Magistrate Judge
450 Main Street
Hartford, CT  06103

David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT  06002

Frank J. Laski, Esq.
Mental Health Legal Advisors Committee
294 Washington Street, Suite 320
Boston, MA   02108

_____/s/_____
Ralph E. Urban
Assistant Attorney General