

RICHARD BLUMENTHAL
ATTORNEY GENERAL

55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

(860) 808-5318

Office of the Attorney General
## State of Connecticut

*Tel. (860)808-5330*
*Fax (860)808-5383*

September 7, 1999

**VIA FACSIMILE TRANSMISSION**
Frank Laski, Esq.
c/o Law Offices of David Shaw
179 Allyn Street
Hartford, CT   06103

RE:  P.J. ET AL CSDE

Dear Attorney Laski:

    Attached please find defendants' counterproposal to plaintiffs' settlement proposal.

    As you will see, it contains components covering "law and philosophy," training, data collection and analysis, LEA implementation, program compliance reviews and legal fees.

    Defendants remain disappointed that plaintiffs have submitted no demand or offer on fees.

    Defendants look forward to plaintiffs' response.

Very truly yours,

Ralph E. Urban
Assistant Attorney General

Enclosure

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO.: |
| Plaintiffs, | : | 291CV00180 (RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| BOARD OF EDUCATION, et al., | : | |
| Defendants. | : | SEPTEMBER 7, 1999 |

## SETTLEMENT AGREEMENT

### I. INTRODUCTION

The state defendants and all named defendants deny the allegations in the plaintiffs' Amended Complaint in this case and admit no liability for the actions claimed therein. All parties to this litigation seek a resolution that is consistent with the requirements of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., its implementing regulations, and any other relevant federal law. Therefore, in the interest of an amicable settlement and in acknowledgment of future efforts regarding the effective implementation of IDEA throughout Connecticut, and in order to avoid a costly trial in this matter, plaintiffs and defendants hereby enter into this settlement agreement to be filed and approved by the Court.

### II. LAW AND PHILOSOPHY

1. The Parties agree that each decision regarding the educational placement of a child with mental retardation or another disability must be based upon the individual needs of that child.

2. The Parties agree that the decision-making process related to the educational placement of children with mental retardation or other disabilities is delineated in the final regulations for IDEA, published in the Federal Register on March 12, 1999.

3. The Connecticut State Board of Education has issued a position statement with regard to the education of children with disabilities. The Parties agree that this position statement reflects the intent of IDEA.

4. The Defendants will issue a policy letter from the Commissioner of Education in December 1999 which reiterates the Board position and which affirms the right of each child with mental retardation or another disability to be educated with nondisabled children to the maximum extent appropriate. The circular letter will be forwarded to each Superintendent of Schools, Board of Education Chairperson, and special education due process hearing officer in Connecticut.

5. The Defendants will issue a policy memorandum from the Bureau Chief of the Bureau of Special Education and Pupil Services of the State Department of Education (SDE) which reiterates the individual decision-making process which must be followed by the Planning and Placement Team (PPT) with regard to identifying the least restrictive environment for each child who has mental retardation or another disability. This memorandum will be sent in February 2000 to the Director of Special Education for each local education agency (LEA), the Executive Director of each private special education program approved by SDE, the Executive Director of each Regional Education Services Center (RESC), and each special education due process hearing officer in Connecticut.

### III. TRAINING

1. During the period September 1999 through August 2000, the Defendants will arrange or provide training related to the placement in the least restrictive environment (LRE) of children with mental retardation or other disabilities. This training, for education personnel and for families of disabled children, will consist of a minimum of eighty-five programs which will be held on a total of at least one hundred and twenty-five days.

2. Training programs, related to the education of disabled children in the least restrictive environment, will be conducted for education personnel which incorporates at least the following topics:
   - Adaptation of assessments,
   - Assessing child communication skills,
   - Assistive technology (basics),
   - Assistive technology in the general classroom,
   - Autism,
   - Building competence and confidence regarding inclusive programs through LEA professional development team support for teachers working with children with disabilities in general classrooms,
   - Child health assessment,
   - Co-teaching,
   - Collaborating for change,
   - Collaborative planning and teaming,
   - Computer-assisted reading,
   - Continuum of behavior supports/interventions,
   - Cooperative learning,
   - Creating professional partnerships,
   - Curriculum modification and adaptations,
   - Curriculum-based IEP goals,
   - Discrete trail instruction,
   - Families as allies,
   - Flexible grouping,
   - Fluency development,
   - Functional behavior assessment,
   - Futures planning (MAPS; COACH),
   - Guided reading,

2

- Impact of language on learning,
- Individualized health care plans,
- Instructional challenges of LRE/inclusion in middle/secondary schools,
- Integrated related services,
- Integrating technology into curriculum,
- Oral - motor skills,
- Positive, inclusive classroom management,
- PPT process,
- Section 504 decision-making and service provision,
- Social development,
- Teacher/paraprofessional teams,
- Transition for child with disabilities,
- Understanding special education and the role of the classroom teacher, and
- Utilizing SDE-developed special education profiles.

3. Training programs, related to the education of disabled children in the least restrictive environment, will be conducted for families which incorporates at least the following topics:
   - ADHD,
   - Becoming your child's best advocate,
   - Challenging behaviors,
   - Communication with educators,
   - Effective advocacy,
   - IEP development,
   - LRE/mainstreaming/inclusion (rules and regulations),
   - Making the general classroom work for diverse learners,
   - Multiple intelligences/emotional intelligence,
   - Preparation for PPTs,
   - Self-advocacy for children with disabilities,
   - Special education eligibility, and
   - Transition to adult life.

4. In the event that any of the above delineated training is canceled during the period September 1999 through August 2000 due to inclement weather or another emergency, the training will be held during the following year.

## IV. DATA ANALYSIS

1. The Defendants will provide to each LEA on an annual basis data which is not personally-identifiable and which is pertinent to the children with disabilities who are within the jurisdiction of the LEA. This provided data will include the following information regarding the LEA:
   - Graduation rate,
   - Dropout rate,
   - Suspension rate,
   - Expulsion rate, sorted by race and disability category,
   - Rate of participation in statewide assessments,

3

- Performance in statewide assessments,
- Types of placement, sorted by disability category,
- Percentage of time spent with nondisabled children,
- Frequency of placements in out-of-district sites including RESC programs and privately-operated programs, and
- Prevalence rate of disability category, sorted by ethnicity and gender.

2. The Defendants will review the provided data annually and determine whether revision to the data categories is required.

3. The Defendants will make the provided data available to the public at the central office of each Connecticut LEA. The provided data will also be accessible via the State of Connecticut website on the Internet.

## V.   LEA IMPLEMENTATION OF IDEA

1. The Defendants will ensure that children with mental retardation or other disabilities participate in statewide and districtwide assessments to the extent appropriate, as determined by the PPT for each such child.

2. The Defendants will develop guidelines to assist the PPT with its determination of the appropriate level of time that an individual child with mental retardation or another disability should spend with nondisabled children. The guidelines will be issued in May 2001.

3. The Defendants will provide a Resource Guide of projects within Connecticut which address programs and strategies related to LRE for children with mental retardation and other disabilities. Project topics will include inclusion, co-teaching and collaboration, and curriculum modification.

4. The Defendants will require each Connecticut PPT to utilize the SDE-developed "LRE Procedures Checklist" form with regard to the placement of any child with mental retardation or another disability who is being considered for an out of district placement and/or a placement in which the child will spend less than twenty percent of the child's time with nondisabled children.

## VI.   PROGRAM COMPLIANCE REVIEW (PCR)

1. The Defendants will include the following data-gathering activities in the SDE Program Compliance Review (PCR) process, conducted to ensure that each LEA meets the requirements of the IDEA:
   - Analyze the data previously provided by SDE to the LEA (as delineated in section IV of this agreement),
   - Compare the previously provided data regarding the LEA to data from the RESC in which the LEA is located, the Educational Reference Group (ERG) to which the LEA has been assigned, the RESC in whose territory the LEA is located, and statewide data,

- Review special education due process hearing and mediation requests initiated since the LEA's previous PCR,
- Review special education due process hearing decisions issued since the LEA's previous PCR,
- Review special education formal complaints initiated since the LEA's previous PCR, and
- Review the report regarding each special education formal complaint resolution resolved since the LEA's previous PCR, and
- Review all materials available to SDE regarding each Office of Civil Rights formal complaint resolution resolved since the LEA's previous PCR.

2. During PCR, the Defendants will monitor the process utilized by the LEA to determine the least restrictive environment for children who are eligible for special education. This monitoring will include review of policy and procedures, review of a random sample of student files, and an interview with the Director of Special Education and other LEA staff. The Defendants during each PCR either will recognize that the LEA is utilizing appropriate procedures to determine the extent which disabled children are educated with nondisabled children, or will require that the LEA take corrective action to remedy the situation.

3. The Defendants will, over the next six years, indicate in each LEA's PCR final report whether the LEA is implementing appropriate procedures with regard to LRE decision-making.

4. The Defendants will, over the next six years, conduct mandatory regional training following compliance review for LEAs having difficulty related to the education of children in the LRE.

5. The Defendants will, prior to September 2000, examine current monitoring practices in light of the changes in the federal monitoring system that is based on a continuous improvement and outcomes-oriented model.

6. The Defendants will include a continuous improvement component to PCR by:
   - Making available to all LEAs on an annual basis current compliance information for use in their LEAs;
   - Conducting training, one year prior to a LEA's scheduled review, on critical issues that were identified in the previous year's review or are of concern to SDE;
   - Providing each LEA with the name of a consultant in the Bureau of Special Education and Pupil Services who may be contacted in the year prior to the LEA's scheduled PCR to assist the LEA in preparation for the review; and
   - Providing training on a regional basis to LEAs, following the LEAs' PCR, on trends, noncompliance issues, and other concerns identified during that region's review, including the provision of examples of acceptable practices to address these issues.

7. The Defendants will implement a pilot system of PCR, beginning in the fall of 2000, based on the examination of the monitoring practices conducted over the course of the 1999-2000 school year.

8. Based upon concerns raised during a review of data available to SDE, such as complaints, mediations, due process hearings, and other data SDE deems appropriate, the Defendants may select an LEA for PCR during a year when the LEA is not scheduled for a review.

9. The Defendants will identify an SDE staff member to coordinate PCR and to ensure that PCR incorporates the requirements of this Agreement.

## VII.   LEGAL FEES

The Defendants will pay the Plaintiffs' counsel $25,000 for attorney's fees and costs in full and final payment of such fees and costs.

## VIII.   TOTAL AGREEMENT

This agreement contains the complete and sole agreement of the parties. It may not be altered or amended without the written consent of the parties.

RICHARD BLUMENTHAL
ATTORNEY GENERAL



55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

(860)808-5330

## Office of the Attorney General
# State of Connecticut

### TELEFAX COMMUNICATION

| | |
|---|---|
| Date: | September 7, 1999 |
| To: | Frank Laski, Esq. |
| Telefax #: | (617) 338-2347 |
| Number of Pages: (including this) | 7 Pages |
| From: | Ralph E. Urban, AAG |
| Telephone #: | (860) 808-5330 |
| Telefax #: | (860) 808-5383 |
| Information faxed by: | REU |

**COMMENTS:**

*NOTICE:* This telecopy transmission and any accompanying documents may contain confidential or privileged information. They are intended only for use by the individual or entity named on this transmission sheet. If you are not the intended recipient, you are not authorized to disclose, copy, distribute or use in any manner the contents of this information. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange retrieval of the faxed documents.

```
                        ********************
                        ***   TX REPORT   ***
                        ********************

        TRANSMISSION OK

        TX/RX NO                3352
        CONNECTION TEL                      916173382347
        SUBADDRESS
        CONNECTION ID           MH LEGAL ADVISOR
        ST. TIME                09/07 16:31
        USAGE T                 01'15
        PGS. SENT               8
        RESULT                  OK
```

RICHARD BLUMENTHAL
ATTORNEY GENERAL



55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

(860) 808-5330

Office of the Attorney General
# State of Connecticut

## TELEFAX COMMUNICATION

Date: September 7, 1999

To: Frank Laski, Esq.

Telefax #: (617) 338-2347

Number of Pages: 7 Pages
(including this)

From: Ralph E. Urban, AAG

Telephone #: (860) 808-5330

Telefax #: (860) 808-5383

Information
faxed by: REU

COMMENTS: