

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**DRAFT**

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO.: |
| Plaintiffs, | : | 291CV00180 (RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| BOARD OF EDUCATION, et al., | : | |
| Defendants. | : | February 16, 2000 |

## SETTLEMENT AGREEMENT

### I. INTRODUCTION

This case was filed in 1991 by five school-age children with mental retardation and their families against the Connecticut Department of Education. Later, four state-wide associations of persons with disabilities were granted the status of intervening parties. On December 13, 1993 this case was certified as a class action as to plaintiffs' claims against state defendants. The court defined the class as: "All mentally retarded school-age children in Connecticut who have been identified as needing special education and who, on or after February 20, 1991, are not educated in regular classrooms." C.A.R.C. v State of Connecticut Board of Education, 2:91CV00180 (JAC), Ruling on Motion to Reconsider Denial of Motion for Class Certification, slip op. at 6 (D. Conn. December 13, 1993).

On January 18, 2000 trial commenced in this matter and plaintiffs completed presentation of their proof on January 27, 2000.

The state defendants and all named defendants deny the allegations in the plaintiffs' Amended Complaint in this case and admit no liability for the actions claimed therein. All parties to this litigation seek a resolution that is consistent with the requirements of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., its implementing regulations, and any other relevant federal law. Therefore, in the interest of an amicable settlement and in acknowledgment of future efforts regarding the effective implementation of IDEA throughout Connecticut, and in order to avoid a costly trial in this matter, plaintiffs and defendants hereby enter into this settlement agreement to be filed and approved by the Court.

### II. LAW AND PHILOSOPHY

1. The Parties agree that each decision regarding the educational placement of a child with mental retardation or another disability must be based upon the individual needs of that child.

2. The Parties agree that the decision-making process related to the educational placement of children with mental retardation or other disabilities is delineated in the final regulations for IDEA, published in the Federal Register on March 12, 1999.

**DRAFT**

3. The Connecticut State Board of Education has issued a position statement with regard to the education of children with disabilities. The Parties agree that this position statement reflects the intent of IDEA.

4. The Defendants will issue a policy letter from the Commissioner of Education within ninety (90) days of the execution of this agreement which reiterates the Board position and which affirms the right of each child with mental retardation or another disability to be educated with nondisabled children to the maximum extent appropriate. The circular letter will be forwarded to each Superintendent of Schools, Board of Education Chairperson, and special education due process hearing officer in Connecticut.

5. The Defendants will issue a policy memorandum from the Bureau Chief of the Bureau of Special Education and Pupil Services of the State Department of Education (SDE) which reiterates the individual decision-making process which must be followed by the Planning and Placement Team (PPT) with regard to identifying the least restrictive environment for each child who has mental retardation or another disability. This memorandum will be sent within ninety (90) days of the execution of this agreement to the Director of Special Education for each local education agency (LEA), the Executive Director of each private special education program approved by SDE, the Executive Director of each Regional Education Services Center (RESC), and each special education due process hearing officer in Connecticut.

6. The Defendants will issue policy statements and/or policy clarifications regarding matters pertaining to LEA implementation of IDEA through the distribution of "Update" memoranda from the Bureau Chief of the Bureau of Special Education and Pupil Services to LEA directors of special education.

### III. TRAINING

1. During the period September 1999 through August 2000, the Defendants have provided or will provide training related to the placement in the least restrictive environment (LRE) of children with mental retardation or other disabilities. This training, for education personnel and for families of disabled children, will consist of a minimum of eighty-five programs which will be held on a total of at least one hundred and twenty-five days.

2. Training programs, related to the education of disabled children in the least restrictive environment, will be conducted for education personnel which incorporate at least the following topics:
   - Adaptation of assessments,
   - Assessing child communication skills,
   - Assistive technology (basics),
   - Assistive technology in the general classroom,
   - Autism,
   - Building competence and confidence regarding inclusive programs through LEA professional development team support for teachers working with children with disabilities in general classrooms,

2

**DRAFT**

- Child health assessment,
- Co-teaching,
- Collaborating for change,
- Collaborative planning and teaming,
- Computer-assisted reading,
- Continuum of behavior supports/interventions,
- Cooperative learning,
- Creating professional partnerships,
- Curriculum modification and adaptations,
- Curriculum-based IEP goals,
- Discrete trail instruction,
- Families as allies,
- Flexible grouping,
- Fluency development,
- Functional behavior assessment,
- Futures planning (MAPS; COACH),
- Guided reading,
- Impact of language on learning,
- Individualized health care plans,
- Instructional challenges of LRE/inclusion in middle/secondary schools,
- Integrated related services,
- Integrating technology into curriculum,
- Oral - motor skills,
- Positive, inclusive classroom management,
- PPT process,
- Section 504 decision-making and service provision,
- Social development,
- Teacher/paraprofessional teams,
- Transition for child with disabilities,
- Understanding special education and the role of the classroom teacher, and
- Utilizing SDE-developed special education profiles.

3. Training programs, related to the education of disabled children in the least restrictive environment, will be conducted for families which incorporate at least the following topics:
   - ADHD,
   - Becoming your child's best advocate,
   - Challenging behaviors,
   - Communication with educators,
   - Effective advocacy,
   - IEP development,
   - LRE/mainstreaming/inclusion (rules and regulations),
   - Making the general classroom work for diverse learners,
   - Multiple intelligences/emotional intelligence,
   - Preparation for PPTs,
   - Self-advocacy for children with disabilities,
   - Special education eligibility, and
   - Transition to adult life.

4. In addition to the above examples of training topics, during the 2000-2001 year training and technical assistance activities will be determined based on a review of the data listed in section IV.

5. Specific training to meet the needs of children with mental retardation will be designed based on a needs assessment distributed by the Bureau to parents and LEAs.

6. Beginning in the 2000-2001 school year, the Defendants will require each LEA to conduct an annual needs assessment of the training needs of LEA staff and of the parents of each child who receives special education services through the LEA, and to make available annual training based on the results of the needs assessment. The Defendants will create a sample Needs Assessment form that will be distributed to the LEAs for their recommended use. LEAs will be required to submit an annual plan, **no later than June 30**, for personnel development and training. **This plan shall include at least the following elements:**
   - **Documentation that training will be based on the results of the needs assessment;**
   - **Documentation that training will be offered to a range of audiences, including parents, special education, related services, general education and administrative personnel;**
   - **Documentation that training content is consistent with the elements of the State Board of Education's Position Statement (June 5, 1996); and**
   - **Documentation that among the topics offered, included will be a focus on providing educational services, including extra-curricular activities, in the least restrictive environment to students with mental retardation and other disabilities.**

7. The Defendants will require each LEA to [annually] submit **annually** a summary of training which the LEA made available to staff and parents during the previous year. The summary will provide information regarding the training topics, the training methodology, and the audience(s) to whom the training was presented. **The initial such summary must be submitted no later than June 30, 2001.**

8. **The Defendants shall design and implement a system of technical assistance which in their judgment will enable LEAs to extend and improve education in regular classes to children with mental retardation and other disabilities. This technical assistance will include on-site assistance by staff or contractors of the Defendants to districts identified by the Defendants for the purposes of assisting districts to provide educational services to students with mental retardation in regular classes with appropriate supplementary aids and services.**

## IV.  DATA ANALYSIS

1. The Defendants will provide to each LEA on an annual basis data which is not personally identifiable and which is pertinent to the children with disabilities who are within the

4

jurisdiction of the LEA. This provided data will include the following information regarding the LEA:
- Graduation rate,
- Dropout rate,
- Suspension rate,
- Expulsion rate, sorted by race and disability category,
- Rate of participation in statewide assessments,
- Performance in statewide assessments,
- Types of placement, sorted by disability category,
- Percentage of time spent with nondisabled children,
- Frequency of placements in out-of-district sites including RESC programs and privately-operated programs,
- Prevalence rate of disability category, sorted by ethnicity and gender,
- **Percentage of school day spent with non-disabled peers,**
- **Percentage of school day spent with nondisabled peers, sorted by race and gender, and**
- **Percentage of students placed out of district by the LEA, sorted by LEA.**

2. The Defendants will review the provided data annually and determine whether revision to the data categories is required.

3. The Defendants will make the provided data available to the public at the central office of each Connecticut LEA. The provided data will also be accessible via the State of Connecticut website on the Internet.

4. The Defendants will identify any LEA whose district wide "percentage of time with non-disabled children" for students who require special education is more than 1.5 standard deviations below the average statewide "percentage of time spent with non-disabled children" for students who require special education. Each such identified LEA will be required to submit to the Bureau of Special Education and Pupil Services a plan which addresses how the district will take steps to expand the capacity of the LEA to provide services to children with mental retardation or other disabilities in the least restrictive environment.

## V.    LEA IMPLEMENTATION OF IDEA

1. The Defendants will ensure that children with mental retardation or other disabilities participate in statewide and districtwide assessments to the extent appropriate, as determined by the PPT for each such child.

2. The Defendants will develop guidelines to assist the PPT with its determination of the appropriate level of time that an individual child with mental retardation or another disability should spend with nondisabled children. The guidelines will be issued in May 2001.

3. The Defendants will provide a Resource Guide of projects within Connecticut that address programs and strategies related to LRE for children with mental retardation and other

**DRAFT**

disabilities. Project topics will include inclusion, co-teaching and collaboration, and curriculum modification.

4. The Defendants will require each Connecticut PPT to utilize the SDE-developed "LRE Procedures Checklist" form with regard to the placement of any child with mental retardation or another disability who is being considered for an out-of-district placement and/or a placement in which the child will spend less than twenty percent of the child's time with nondisabled children.

5. The Defendants will issue a Request for Proposal (RFP) to LEAs in order to help support LEA development or expansion of services designed to increase the percentage of time that an LEA's students who are eligible for special education, including students with mental retardation, spend with non-disabled students. The Defendants, during review of LEA responses, will give preference to LEAs whose district wide "percentage of time with non-disabled children" for special education students is more than 1.5 standard deviations below the average statewide "percentage of time spent with non-disabled children" for special education students.

## VI. PROGRAM COMPLIANCE REVIEW (PCR)

1. The Defendants will [review] **include** the following [data-gathering] activities in the SDE Program Compliance Review (PCR) process, conducted to ensure that each LEA meets the requirements of the IDEA:
   - Analyze the data previously provided by SDE to the LEA (as delineated in section IV of this agreement),
   - Compare the previously provided data regarding the LEA to data from other LEAs in the Educational Reference Group (ERG) to which the LEA has been assigned and to statewide data,
   - Review special education due process hearing and mediation requests initiated since the LEA's previous PCR,
   - Review special education due process hearing decisions issued since the LEA's previous PCR,
   - Review special education formal complaints initiated since the LEA's previous PCR,
   - Review the report regarding each special education formal complaint resolution resolved since the LEA's previous PCR, and
   - Review all materials available to SDE regarding each Office of Civil Rights formal complaint resolution resolved since the LEA's previous PCR.

2. [Though the following proposed changes in PCR still require additional discussion within the Department and has not been officially approved, the Defendants are willing to consider changes in PCR as described below:]**The Defendants will implement the following in PCR as described below.**

   PCR will continue to be done regionally throughout the state. However, specific LEAs in a given region selected for on-site PCR will be based upon the results of the above review of data. Additional LEAs, selected through random sample within the scheduled region, will

6

**DRAFT**

also receive an on-site review. LEAs not selected for an on-site PCR may be subject to a "desk audit" regarding compliance issues.

Based on a review of the data, a certain number of LEAs outside of the normally scheduled region will be added to the PCR process in a given year. This off-cycle review will focus on the issue(s) identified as deficient in the review of data.

3. During PCR, the Defendants will monitor the process utilized by the LEA to determine the least restrictive environment for children who are eligible for special education. This monitoring will include review of policy and procedures, review of a random sample of student files including the files of three students whose percentage of time spent with nondisabled children is less than twenty percent, and an interview with the Director of Special Education, other LEA staff and[/or] parents. During each PCR, the Defendants either will recognize that the LEA is utilizing appropriate procedures to determine the extent that disabled children [are educated with nondisabled children (LRE)] **receive educational services in the least restrictive environment**, or will require that the LEA take corrective action to remedy the situation.

4. The Defendants will, over the next six years, indicate in each LEA's PCR final report whether the LEA is implementing appropriate procedures with regard to LRE decision-making.

5. The Defendants will, over the next six years, conduct mandatory regional training following compliance review for LEAs having difficulty related to the education of children in the LRE.

6. The Defendants will, prior to September 2000, examine current monitoring practices in light of the changes in the federal monitoring system that is based on a continuous improvement and outcomes-oriented model.

7. The Defendants will include a continuous improvement component to PCR by:
   - Making available to all LEAs on an annual basis current compliance information for use in their LEAs;
   - Conducting training, one year prior to a LEA's scheduled review, on critical issues that were identified in the previous year's review or are of concern to SDE;
   - Providing each LEA with the name of a consultant in the Bureau of Special Education and Pupil Services who may be contacted in the year prior to the LEA's scheduled PCR to assist the LEA in preparation for the review;
   - Providing training on a regional basis to LEAs, following the LEAs' PCR, on trends, noncompliance issues, and other concerns identified during that region's review, including the provision of examples of acceptable practices to address these issues; and
   - Providing technical assistance for each LEA for which there are findings of non-compliance as a result of PCR

8. The Defendants will pilot the above-described system of PCR beginning in the fall of 2000.

DRAFT

9. The Defendants will identify an SDE staff member to coordinate PCR and to ensure that PCR incorporates the requirements of this Agreement.

10. The Defendants will include in the PCR process, for each LEA reviewed during 1999-00 and during the subsequent five years, a specific review of the statement of "Justification for Exclusion" in the most recent IEP in each student file selected for PCR.

11. The Defendants will provide annually, to each individual who conducts PCR, training, including written guidelines, with respect to evaluating the process utilized by an LEA to determine the least restrictive environment for children who are eligible for special education.

12. For LEAs required to take corrective action due to noncompliance with the least restrictive environment provisions of IDEA, the LEA will develop a corrective action plan subject to the approval of the Bureau of Special Education and Pupil Services. Additionally, the Bureau of Special Education and Pupil Services will provide technical assistance to the LEA to assist the LEA's implementation of the corrective action plan. If the LEA does not demonstrate a good faith effort to correct the issue, the Department will consider, at the discretion of the Commissioner of Education, the withholding of federal funds until the problem is ameliorated.

## VII. PARENT INVOLVEMENT

**The Defendants will support and seek to increase parental involvement in the education of students with mental retardation and other disabilities through, at a minimum, the following activities:**

- **Provision of training to parents on a state-wide and regional basis on broad-based topics such as regulation, procedural safeguards, Individualized Education Program (IEP) development;**
- **Require training plans from LEAs that include training activities for parents on a local basis. Specific topics for such training activities shall be based upon locally conducted needs assessments;**
- **Review of parental involvement in Planning and Placement Team meetings as a specific component of PCR in accordance with requirements of IDEA;**
- **Support of and collaboration with the Connecticut Parent Advocacy Center, the organization which serves as Connecticut's Parent Training and Information Center;**
- **Support of the Parent Assistance Line currently operated by the Special Education Resource Center; and**

## VIII. POST SETTLEMENT CONSIDERATIONS

1. The Defendants will compile an annual written report with respect to the implementation of this agreement. The initial such report will be compiled by November 1, 2001.

2. The report will be forwarded to the Plaintiffs for their review and comment.

8

**DRAFT**

3. The Defendants, upon receipt of comments, will consider recommendations with regard to possible modification of PCR, training, data collection and parental involvement.

4. **The Defendants will designate an appropriate SDE staff member as having primary responsibility for seeking to ensure compliance with the terms of this agreement.**

## VII.   TOTAL AGREEMENT

This agreement contains the complete and sole agreement of the parties. It may not be altered or amended without the written consent of the parties.

## VIII.   ATTORNEYS' FEES AND COSTS

The Defendants will make a one-time payment to plaintiffs for costs and attorney's fees in the amount of $_____.

9

```
                    ***********************
                    ***   TX REPORT     ***
                    ***********************

    TRANSMISSION OK

    TX/RX NO              4916
    CONNECTION TEL                      92403614
    SUBADDRESS
    CONNECTION ID
    ST. TIME              02/16 10:41
    USAGE T               06'56
    PGS. SENT             10
    RESULT                OK
```

# State of Connecticut

State of Connecticut

Phone: (860) 808-5330
FAX: (860) 808-5383
email:

# Facsimile

To: The Honorable Donna Martinez, USMJ; David Shaw, Esq.
@Fax: 240-3614; 724-2306
From: Ralph Urban, Attorney General's Office
Date: Wednesday, February 16, 2000 @ 10:48AM
Re: PJ v. SDE
Pages: 10, including this

Removed langauge is bracketed, new or altered langauge is bolded.

```
***********************
***   TX REPORT    ***
***********************

TRANSMISSION OK

TX/RX NO              4917
CONNECTION TEL                    97242306
SUBADDRESS
CONNECTION ID         DAVID C SHAW
ST. TIME              02/16 10:48
USAGE T               05'01
PGS. SENT             10
RESULT                OK
```

# State of Connecticut

State of Connecticut

Phone: (860) 808-5930
FAX: (860) 808-5383
email:

# Facsimile

To: The Honorable Donna Martinez, USMJ; David Shaw, Esq.
@Fax: 240-3614; 724-2306
From: Ralph Urban, Attorney General's Office
Date: Wednesday, February 16, 2000 @ 10:48AM
Re: PJ v. SDE
Pages: 10, including this

Removed langauge is bracketed, new or altered langauge is bolded.