EXHIBIT C

# THE LAW OFFICES OF DAVID C. SHAW, LLC
34 Jerome Ave., Suite 210
Bloomfield, Connecticut 06002

David C. Shaw
dcshaw@cttel.net

Andrew A. Feinstein
feinsteinandrew@sbcglobal.net

Telephone: (860) 242-1238
Facsimile:  (860) 242-1507
www.davidshawatty.com

June 19, 2007

VIA FACSIMILE
AND FIRST CLASS MAIL

Darren P. Cunningham
Assistant Attorney General
P.O. Box 120
Hartford, CT 06141 0120

    Re: Case 2:91CV00180 (RNC)
        *P.J. v. State of Connecticut*

Dear Darren:

    I am writing, pursuant to Rules 33, 34 and 37(a)(2)(B), Fed. R. Civ. P., in a good faith attempt to resolve our differences over your objections to Plaintiffs' Motion for Disclosure and Production dated March 30, 2007. I have responded to your answers and objections below.

## I.    Interrogatory 1

    This interrogatory asked you to confirm the accuracy of plaintiffs' detailed analysis of CSDE's computer data attached as Exhibit A to the Interrogatory. Exhibit A is plaintiffs' analysis of students who appear to float in and out of the CSDE data set two or more times during the five year period up to and including the 2005-2006 school year. Your response is that you cannot confirm that plaintiffs' analysis in Exhibit A is accurate without knowing the procedure used to produce Exhibit A.

    We are attaching the code we used to identify the "floaters" as requested so that you can replicate the procedure we used.[1] Using this procedure, please confirm whether the plaintiffs analysis in Exhibit A – that students float in and out of the data – is accurate or not.

    We do not agree with your contention that this interrogatory is ambiguous and unduly and unreasonably burdensome. Under the Settlement Agreement the defendants

---

[1] The code is written in Ruby and copied into a Word document so that the file can be easily opened and read.

Darren P. Cunningham
June 19, 2007
Page two

have a duty to provide a list of class members, update that list periodically, and make reasonable progress on the five goals of the settlement. In addition, the Settlement Agreement provides that defendants must cooperate in plaintiffs' discovery. Given these obligations, we do not understand how agreeing or disagreeing with plaintiffs' determination that approximately 600 students float in and out of the class is unduly burdensome.

II.     **Interrogatory 2**

This interrogatory asks CSDE to indicate whether Exhibit A is an accurate description of students who have moved in and out of the data set. If not, CSDE is asked to explain why Exhibit A is not accurate. We also ask you to identify the person most knowledgeable about whether Exhibit A is accurate.

Your answer – that there are not 2727 students who move in and out of the data set two or more times over a 5 year period - is not responsive. The interrogatory does not ask you to agree whether there are 2727 students depicted in Exhibit A. Rather, the interrogatory asks whether Exhibit A is an accurate depiction of students who have moved in and out of the data set. Moreover, you have made no attempt to name the person most knowledgeable about whether Exhibit A is accurate, as requested.

Please respond by indicating whether Exhibit A is <u>accurate</u>. If not, provide an analysis of why you believe Exhibit A is not accurate. Please also provide the name of the person most knowledgeable about whether Exhibit A is accurate.

You also indicate that you cannot fully respond until the procedure plaintiffs used to prepare Exhibit A is known. As previously indicated, we have enclosed the code we used to develop Exhibit A. With this information you should have no objection to responding as requested.

We do not agree with your assertion that interrogatory #2 is "unduly and unreasonably burdensome." As previously mentioned, in light of CSDE's obligation under the Settlement Agreement to cooperate in discovery, to develop and maintain an accurate list of class members, and to report on progress made on the five goals of the settlement, a proper analysis of whether over 600 students move in and out of the class should be viewed as an obligation under the Settlement Agreement, rather than a burdensome task.

Darren P. Cunningham
June 19, 2007
Page three

### III.    Interrogatory 3

This interrogatory asks CSDE to explain why each of the students on Exhibit A appear, disappear and reappear in the data set. Your response is that it is "unduly burdensome" to respond. You also indicate that plaintiffs have been "given and continue to give plaintiffs full access to the relevant non-privileged student records from which this information may be derived…"

We disagree with your assertion that responding to this interrogatory, as requested, will be unduly burdensome. As it is CSDE's duty under the Settlement Agreement to know who is properly included in the class, CSDE should feel obligated to determine why students are floating in and out of the data set with or without a discovery motion.

We disagree with so much of the last paragraph of your response to interrogatory #3 that represents that plaintiffs have been given access to the relevant data. The defendants have failed to provide us with the data necessary to track students who have floated in an out of the data set. Rather, CSDE has provided only limited data that does not reveal the placements, programs or disability labels of these "floaters" during times they have floated out of the data set. Accordingly much of the data relating to these students is exclusively in CSDE's possession and control.

In light of the fact that defendants believe that it is too burdensome to respond to this inquiry, plaintiffs' request all of the data relating to these "floaters" so that we can investigate this problem. Under this scenario, defendants would turn over all data sets with information about the students in Exhibit A, with all related handbooks, and instructions, and we would complete all analyses that are appropriate. As individuals who float in and out of the data are class members we are entitled to this data without further delay.

### IV.    Interrogatories 4 and 5

These interrogatories request that CSDE identify each student who has been exited from the data set, and requests specific information about each student who has been exited. Your response – that you do not understand the interrogatory, and that

Darren P. Cunningham
June 19, 2007
Page four

responding will be unduly burdensome – is inadequate. As the interrogatory clearly states, we are interested in *all* students who have been exited from the class.

Given the unexplained reduction in the size of the class from over four thousand to under three thousand students, and the serious concerns raised by plaintiffs and the Expert Advisory Panel about this attrition, CSDE has a duty under the Settlement Agreement to identify the exited students and assess whether they have been properly removed from the class list. Accordingly, defendants may not properly assert that this task is ambiguous or burdensome.

Moreover, the task should be readily achievable by defendants without undue burden, as all of the requested data is readily available in CSDE's own data. Page 27 of the PCI Handbook dated August 2002 defines "the reasons the students left special education or the school system." They include: 1) the student has graduated with diploma; 2) the student has received a certification of completion or fulfillment of IEP goals; 3) the student has dropped out; 4) the student no longer receives special education; 5) the student is deceased; 6) the student has reached the maximum age; 7) the student moved, know to be continuing and 8) the student moved and is not known to be continuing. In addition to the above, interrogatory 5 asks CSDE to provide the exit date, and to identify which class members were reclassified into another disability type, and the IDEA special needs category (pp. 17-19 of the Special Needs Handbook) into which each such class member was reclassified. Further, for those who no longer receive special education (exit reason #4) an explanation is requested.

### V.     Request for Production # 4

This request asks CSDE to produce all data on students who have exited the class, whether from the PCI data base or another CSDE data base. Once again, you have objected on the ground that the request is overly broad (e.g. no time frame, no identification to which students are being referred, no definition of "exit") and on the ground that the request is unduly burdensome.

Your response – that there is no definition of "exit" – has been addressed above. Again, we want <u>all</u> data as described in the previous section on all students with a label of mental retardation or intellectual disability that were exited from the class at any point between 1998 and 2007 for any reason, along with the specific information described above. We want this information on all such students who were exited whether they appear in Exhibit A or not.

Darren P. Cunningham
June 19, 2007
Page five

    In the last paragraph of your letter response you indicate that CSDE will supply data on the reasons for a special education student's exit from public schools during the period 1998 through 2005. This is not an adequate response. As indicated above, our request for production asks for all CSDE data on all students with ID or mental retardation who have been exited from the PCI or other CSDE data bases at any point between 1998 and 2007.

    In light of the fact that there were several requests by CSDE to postpone the time within which your responses to this discovery were due, and much of the requested information was not provided, we request a prompt reply. Thank you.

                                      Sincerely,

                                        /s/ David C. Shaw

                                        David C. Shaw