EXHIBIT D



RICHARD BLUMENTHAL
ATTORNEY GENERAL

55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Tel: (860)808-5210
Fax: (860) 808-5385

Office of The Attorney General
## State of Connecticut

July 2, 2007

David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT 06002-2463

RE:    *P.J. et al. v. State of Connecticut, et al.*

Dear David:

Thank you for your letter of June 19, 2007. I appreciate your efforts to resolve the differences over our objections to your production requests of March 30, 2007. I am optimistic that we can resolve our differences to our mutual satisfaction.

At the outset, please note that Anne Louise will be away on vacation until July 9. Thus, although you and I were unable to speak before her departure – I left a message at your office on June 26 – we thought it appropriate to share with you our thoughts on the outstanding discovery issues. It is our hope that after reading this letter you will better understand our previous response.

**Interrogatory 1**
**Ambiguous and unduly and unreasonably burdensome**

Thank you for helping to clarify what your intent was in this interrogatory. Based on your clarification, we believe that the interrogatory is requesting the defendants to confirm that the approximately 600 students listed by COMPID in Exhibit A is an accurate depiction of students whom at any time between 1998 and 2005 were identified as a student with an ID and who moved in and out of the dataset of class members that were provided to the plaintiffs by the defendants for those years. When we indicated that we needed to know the procedure in order to replicate it, we anticipated receiving a descriptive task analysis of the procedure so that we could understand and replicate what data was being presented in order for us to provide a truthful response as to its accuracy. The code that you provided is not programming language used at the State Department. However, the CSDE believes that, most likely, Exhibit A is an accurate depiction of the data set the plaintiffs have. However, Exhibit A may not be and most likely is not an accurate depiction of class membership over time and we have attempted to explain why in the response to interrogatory #2 below.

D____d C. Shaw, Esq.
July 2, 2007
Page 2

We do not find it unduly or unreasonably burdensome to provide a list of class members, update that list periodically, and make reasonable progress on the five goals of the settlement agreement, and cooperate in plaintiff's discovery as these are our duties under the terms of the Settlement Agreement. We also recognize that it is important to determine, to the best extent possible, the status of each class member over time for as far back as our data system will permit in order to assess the CSDE's progress on the goals of the Settlement Agreement. The burden which was noted in our objection is with respect to the tasks that need to be completed in order to determine if the 600 floaters that you identified are accurate (Interrogatories 1 and 2) and an explanation of the "floater" status (Interrogatory 3).

As we have stated over the past several years at EAP meetings and in our annual reports, to determine the accuracy of this information requires a complicated procedure which was broadly outlined in the Third Annual Report, June 2004, page 45. CSDE recognized the need to address the migration issue through determining the status of each class member in the years subsequent to their initial determination as a class member, yet the CSDE, as recorded in their, Fourth Annual Report noted that this, "*...process was not yielding significantly useful information to meet the expressed needs of the plaintiffs. Specifically, the CSDE was working to investigate the plaintiffs' concern that the enforcement of the Settlement Agreement was inadvertently provoking districts to, appropriately or inappropriately, exit members from the class by either re-determining eligibility for class members under different eligibility categories (e.g. not intellectually disabled, but another disability) or exiting class members from the system of special education altogether. In discussion with the EAP in October 2004, a decision to discontinue the statewide tracking of class members and focus on the movement of class members from 1998-2004 within the twenty-four targeted districts was agreed upon. This analysis examined the impact of patterns of re-determining eligibility, exiting class members and identification of new class members on districts' incidence rates across the years. These data were presented to the EAP and the plaintiffs in January 2005. As a result of these analyses, several audit and monitoring activities were identified in conjunction with the EAP and plaintiffs.*"

Following the auditing activities described in the Fourth Annual Report, and in dialogue with the plaintiffs, the CSDE attempted a different approach to achieve a more precise accounting of class membership status over time. In 2006-07 we contracted with an independent data expert to assist in developing analytic procedures (a Longitudinal Analysis of Class Members) that, with the available data, would yield a more accurate depiction of class membership from 1998 through current date than plaintiff's Exhibit A. This process is anticipated to be completed by Fall 2007 and we will, of course provide you with the results once they are available. The information revealed through this will allow the CSDE as well as the plaintiff's to have as accurate a picture as is possible of each class member since 1998 and what has occurred to them in each subsequent year to date. This will yield answers to the plaintiff's interrogatories as well as

additional information on class members over time. The CSDE determined that investigating the plaintiff's analysis would be unduly burdensome if it were to occur in addition to the analytic work already underway at the CSDE.

It is important to note that, in 2005-06, a system of assigning each public school student in Connecticut a unique identifier was developed. Beginning with the special education data collected in 2006-07, data on students with disabilities will now be able to be reliably tracked over time.

**Interrogatory 2**

Our intention was not to be unresponsive to Interrogatory #2. When asked to explain why Exhibit A was not accurate we believed it was our obligation to note that the comment on page 2 of the interrogatory that "2727 students move in and out of the data set two or more times ..." was inaccurate. It seems that there are approximately 600 students that moved in and out of the data set.

To clarify our objection on the grounds that Interrogatory 2 was ambiguous, we were unclear if you were asking: 1) Is Exhibit A is an accurate depiction of a student as a floater in this dataset (i.e. the student is missing data in a given year in the data set provided to the plaintiffs)?, or 2) Is this student truly a floater (i.e. the CSDE has no information on this student in the given year)? If you were asking question #1, the CSDE believes Exhibit A is accurate. If you are asking question #2, then Exhibit A is most likely not accurate because your dataset does not have the universe of information about students with disabilities.

To get all of the information on a class member across time, you need to be able to look for information on that class member in the dataset that contains information on all students with disabilities. Based on the data sets that you have, just because a student record is identified as a floater, this does not mean the information on this student was not reported to the state in that year (e.g.; the student would not be a "floater" in the all-disability dataset, but would be in your dataset). For example, the student may have been reported as having a disability other than ID, reported under another compid, (note: the variable OLD_COMPID does not necessarily capture changes in COMPID over time, so it cannot be used to resolve instances of floaters over time), student may have exited (as per one of the 8 exit codes), or the student's information was never reported to the state. All of these examples would have created a floater status for a student record in your dataset because you did not have this information in your dataset. This information is contained in the all-disability dataset and we do not have the authority to release to you the all-disability dataset as this database contains all the students with disabilities in the state and our authority under FERPA and the Settlement Agreement only extends to the class members. The Longitudinal Analysis of Class Members will extract the information on class members from this database in order to provide this to the plaintiffs. Since the CSDE has access