David C. Shaw, Esq.
July 2, 2007
Page 4

to the entire database of students with disabilities in Connecticut, we can work to determine which records are linked with Class Members even in the years that they were not reported as having an intellectual disability Because this requires searching through information on students who are not Class Members (students who were never reported to the CSDE has having ID) we cannot permit the plaintiffs to have access to the entire database to conduct this type of analysis on their own Of course, we are prepared to release that information once we have linked, to the best of our ability, Class Member information contained in the databases over time.

We do not find it unduly or unreasonably burdensome to provide a list of class members, update that list periodically, and make reasonable progress on the five goals of the settlement agreement, and cooperate in plaintiff's discovery as these are our duties under the terms of the Settlement Agreement. We also recognize that it is important to determine, to the best extent possible, the status of each class member over time for as far back as our data system will permit in order to assess the CSDE's progress on the goals of the Settlement Agreement. The burden which was noted in our objection is with respect to the tasks that need to be completed in order to determine if the 600 floaters that you identified are accurate (Interrogatories 1 and 2) and an explanation of the "floater" status (Interrogatory 3).

You indicated that we did not provide you with the name of the individual most knowledgeable about whether Exhibit A is accurate. This is not correct, as we did provide this information under Interrogatory #2 **Answer and Objection** on page 4 of the "Defendants Responses to Plaintiff's Motion for Disclosure and Production dated March 30, 2007". This person was identified as Heather Levitt Doucette.

**Interrogatory #3**

We are not objecting to fulfilling our obligation to "determine why students are floating in and out of the dataset, with or without a discovery motion". In fact, we have been attempting to do this since the beginning of the Settlement Agreement and currently believe we have a system of doing this via our Longitudinal Analysis of Class Members. What is unduly burdensome are the steps that have to be taken to explain why the approximately 600 students in Exhibit A appear, disappear and reappear in the dataset over time using the code and data that you are using. Specifically, the manhours and resources that would be needed to accomplish this (as described on page 4, paragraphs 3 and 4 of Defendant's Responses to Plaintiff's Motion for Disclosure and Production Dated march 30, 2007) would need to occur in addition to the Longitudinal Analysis of Class Members described in Interrogatory #1 above.

We recognize that the data provided to the plaintiffs limits their ability to determine a true depiction of class member placement, programs and disability labels over time. The CSDE did not have the authority to release the extent of the information necessary for the plaintiff's to

David C. Shaw, Esq.
July 2, 2007
Page 5

complete this analysis at the time of their request for class member data. We have been working on the extraction of class member data from the privileged student database (i.e. students whose eligibility may have changed) in order to inform the class member database. Once we extract the information from the all student dataset in our Longitudinal Analysis of Class Members, we will release this information to the plaintiffs. This will yield a dataset that will enable a true depiction of Class Members placement, programs and disability labels over time to the greatest extent that the data will permit. We cannot provide this dataset or handbook at this time as neither is completed. We anticipate that the data and corresponding handbook will be completed by Fall 2007.

In response to the plaintiff's request in your letter dated June 19, 2007, for "…all data sets with information about the students in Exhibit A, with all related handbooks, and instructions…", (paragraph 4, page 3 of the letter dated June 19) the CSDE has already provided the plaintiffs with all the datasets and handbooks that we have the authority to provide for the students listed in Exhibit A. Those datasets do not provide the information on floaters necessary to determine their placement, programs and disability labels. The information necessary to determine this information on floaters is considered privileged information at this time due to it residing in the all-disability student dataset. The Longitudinal Analysis of Class Members will extract Class Member information from the all-disability dataset affording the CSDE the authority to provide it to the plaintiffs. We have always believed that this information is valuable to both defendants and plaintiffs, and we are not delaying in the production of this information.

**Interrogatories #4 and #5**

Thank you for helping to clarify your intent with interrogatories #4 and #5. We now understand that you are requesting an explanation for the point in time that a class member no longer had a record in the datasets that were provided to you by the CSDE. In addition to the explanations that you have requested (any of the 8 exit code reasons as listed in the PCI Handbook as well as a change in disability) there are other reasons that a student may not reappear in any of the subsequent years of data. These reasons may include: the data never being reported to the CSDE; the student was reported in subsequent years of data under an alternate COMPID; the student was reported twice in one year of data, so the duplicate record seems to disappear over time, etc. The Longitudinal Analysis of Class Members will include the 8 exit codes, disability change, as well as these other potential reasons for a student disappearing from the dataset.

We have always believed--along with the plaintiffs and the EAP--that it was important to investigate the reduction in Class size. Our objection on the grounds that this work would be unduly and unreasonably burdensome was with respect to the tasks that need to be completed in order to determine the exit status of the students listed in Exhibit A. Specifically, the manhours

David C. Shaw, Esq.
July 2, 2007
Page 6

and resources that would be needed to accomplish this (as described on page 4, paragraphs 3 and 4 of Defendant's Responses to Plaintiff's Motion for Disclosure and Production Dated march 30, 2007) would need to occur in addition to the Longitudinal Analysis of Class Members described in Interrogatory #1 above. Now that we believe we have clarification from you that you are requesting an explanation for the point in time that a class member no longer had a record in the datasets that were provided to you by the CSDE, we expect that the explanation for why a student exits the data never to return will be contained in the Longitudinal Analysis of Class Members to be completed in Fall 2007.

For those students who no longer receive special education (exit reason #4), you have requested that an explanation be provided. According to the PCI Handbook, provided to you August 29, 2005, an exit code of 4 should be reported for "Students, who were served in special education during the previous reporting year but at some point during that 12-month period, met the objectives of the IEP or were withdrawn from special education by a parent. These are students who no longer have an IEP and are receiving all their educational services from a general education program." The CSDE does not collect further specific information regarding this exit code.

**Request for Production #4**
Thank you for clarifying the definition of "exit" in your request for production #4. We understand that you would like information on any student that ever carried the label of MR or ID that were exited from the class between 1998 through 2007 for any reason. We understand that you would like information on these students, whether or not they are listed in Exhibit A, contained in PCI as well as other CSDE databases.
As per our correspondence dated August 29, 2005, we have provided you with that data for the years in which Class Members were reported in PCI as "active" (no exit code) students with ID up through the year of data indicated in the August correspondence. Furthermore, upon completion of the Longitudinal analysis of Class Members, we will be able to provide the plaintiffs with the exit codes for Class Members 1998-2006.

For students who permanently exit from PCI (students who are reported with codes 1, 5, and 6), there is no CSDE data beyond the year in which they permanently exit. So there is nothing to be provided to you under the request for production #4 for these students.

At this time, for the following reasons, we will not be working to fulfill the request for production #4 for students with the remaining exit codes (2, 3, 4, 7 and 8). As there is not a unique student identifier in each of CSDE databases, a low matching rate of student records across databases is expected. When we attempted to provide you with information on Class Members contained in various CSDE databases as per the August 2005 correspondence, the result was an unreliable, unmeaningful cross-reference of the data. In the past, the various CSDE data collections were not designed to be cross-referenced; most were designed to be analyzed in

David C. Shaw, Esq.
July 2, 2007
Page 7

the aggregate and not at the individual student level. Although every student in the state is now assigned a unique student identifier, this does not help us in matching historical data, which is what you are requesting under production #4 relative to previously exited Class Members and information contained on those students in CSDE databases.

Given the current emphasis on the Longitudinal Analysis of Class Members, and in light of the problems inherent in the process of attempting to match student records across CSDE databases, which is unduly and unreasonably burdensome and expensive to the state, request for production #4 will be completed following the Longitudinal Analysis of Class Members.

As I indicated above, I hope we can bridge our differences with respect to your concerns. I look forward to hearing from you.

Sincerely,

Darren P. Cunningham
Asst. Attorney General

DPC/lm
CC: Anne Louie Thompson