-5-

Auersperg, 481 U.S. 1015 (1987).

Although state evidentiary privileges are not determinative, they must still be considered. Lora v. Board of Educ. of City of New York, 74 F.R.D. 565, 577 (E.D.N.Y. 1977). "The granting or withholding of any privilege requires a balancing of competing policies." Id. at 578, citing Carr v. Monroe Mfg. Co., 431 F.2d. 384, 388 (5th Cir. 1970), cert. denied, Aldridge v. Carr, 400 U.S. 1000 (1971). "The potential harm from disclosure of any communication subject to a privilege must be weighed against the benefits of disclosure." Lora, 74 F.R.D. at 578. In balancing the potential harm against the potential benefits of disclosure of any communication subject to a privilege, courts have formulated a variety of tests. See e.g. ACLU of Mississippi v. Finch, 638 F.2d 1336 (5th Cir. 1981); King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988); Burka v. New York City Transit Auth., 110 F.R.D. 660 (S.D.N.Y. 1986); Brown v. Matias, 102 F.R.D. 580 (S.D.N.Y. 1984). In Doe v. Meachum, 126 F.R.D. 444 (D. Conn. 1989), a class action brought by prison inmates who tested positive for exposure to HIV, plaintiffs challenged the policies of the Connecticut Department of Corrections regarding such inmates. In this court's ruling on Doe plaintiff's request for production of plaintiff inmates' medical and mental health records, the four-part test formulated in Lora was adopted:

-6-

> "In determining whether disclosure in this case will unreasonably interfere with justifiable privilege expectations . . . four significant factors must be considered. First, is the identification of the individuals required for effective use of the data? Second, is the invasion of privacy and risk of psychological harm being limited to the narrowest possible extent? Third, will the data be supplied only to qualified personnel under strict controls over confidentiality? Fourth, is the data necessary or simply desirable?"

Doe, 126 F.R.D. at 499, quoting Lora, 74 F.R.D. at 579. Defendants in Doe argued that disclosure of the records was prohibited by Conn. Gen. Stat. §§ 52-146c to 52-146j absent written consent by each classmember; that the court has discretion under Fed. R. Civ. P. 23(d)(2) to require notice to all class members that they may sign consent forms with respect to the confidential health records; and that in the absence of written consent forms the court should permit only a random selection of redacted medical records. Doe, 126 F.R.D at 449. In rejecting defendants' arguments, this court stated that all four factors of the Lora test favored disclosure of the requested documents. Id.

The instant case is similar to Doe in that it involves a class of individuals alleging system-wide practices which violate classmembers' interests as protected by 42 U.S.C. § 1983. Here, as in Doe, the second and third factors of the Lora test favor disclosure because the state's interest in confidentiality can be

-7-

accommodated by an appropriate protective order limiting disclosure to plaintiffs' counsel and their experts. See Doe, 126 F.R.D. at 449. The fourth factor also favors disclosure since the information sought is crucial to plaintiffs' ability to substantiate their allegations. See Plaintiff's Memorandum at 4.

While it was noted in Doe that "the first element is the troubling one, in that to some extent, the experts' use of the files would not be hampered by eliminating identifying data," disclosure of the identity of individual classmembers was found necessary because "it may be critical for plaintiffs' experts and their counsel to be aware of the names of individual inmates in order to evaluate their medical records over time." Doe, 126 F.R.D. at 449. See also Inmates of Unit 14 v. Rebideau, 102 F.R.D. 122, 128 (N.D.N.Y. 1984) (discovery of supervisory evaluations in personnel files of defendant corrections officers is extremely important in the need to support pattern and practice allegations of unlawful assault, intimidation, and harassment of inmates in violation of 42 U.S.C. § 1983). Plaintiffs allege that defendants' policies and practices of "restraint and medication . . . and indefinite stigmatizing confinement of non-dangerous retarded and brain-injured persons with dangerous psychotic patients violates their rights secured by the Fourteenth Amendment." Plaintiff's Memorandum at 3. In order to substantiate the alleged mistreatment of named