**Interrogatories ##3, 4 and 5 and Request for Production # 4:**

Interrogatory # 3 asks defendants to explain why each of the students listed on Exhibit A to the Motion for Disclosure and Production appear, disappear and reappear in the CSDE data set disclosed to plaintiffs.

Interrogatory #4 asks the defendants to identify students who entered the CSDE data set for one or more years then exited the data never to return.

Interrogatory # 5 asks the defendants to identify each student who has entered the CSDE data set and then were exited never to return, and provide the exit date, reason for exiting the student, whether those students were reclassified into another disability category and if so to identified the new category and whether the students were exited from special education altogether.

Request for Production # 4 asks defendants to produce all data on students who have been exited, whether from the PCI data base or other CSD data bases.

The defendants' response to each of these discovery requests is basically the same. First they argue that the requests are unreasonable and unduly burdensome in that it would take CSDE over 200 hours to respond. Exhibit B, p. 5. Second, they argue that plaintiffs already have the relevant non-privileged student records from which this information can be provided. Exhibit B, p. 5. Third, they argue that they are hiring an expert to conduct the requested analyses. Exhibit D, pp. 3-5. Fourth, they argue that they are prohibited from releasing confidential information about non-class members. Exhibit D, pp. 2, 3 and 6.

It is readily apparent from the text of the Settlement Agreement and the defendants'

letter dated July 2, 2007 that defendants' first two arguments have no merit. Defendants cannot claim that it is unduly burdensome to clearly identify every member of the class, the circumstances of that class member, and the basis for any assertion that any former class member has been appropriately exited from the class. This because the defendants have a duty under Section I.2. of the Settlement Agreement (to prepare an update list of students carrying the label mental retardation or intellectual disabilities.) Moreover, under Section III of the Settlement Agreement the defendants have a duty to accurately report on the progress that has been made toward achieving the five goals of the Agreement. Defendants obviously cannot argue they have made adequate progress based on data that overlooks one-third of the class or that is based on count of students that is inaccurate.

The defendants appear to have backed away from their argument that plaintiffs already have all of the data necessary to fulfill their responsibilities as class counsel. Indeed it is apparent from defendants' answers to interrogatories 3-5 and request for production # 4 that they have not produced the data necessary for plaintiffs to assess the reasons for the reduction in the class by one-third and/or why 600 students float in and out of the CSDE data set. Indeed, without the CSDE data on all persons who have been included in the class at any time since the Court approved the Settlement Agreement, the plaintiffs cannot identify all members of the class or assess the appropriateness of the programs of all members of the class.

Plaintiffs reject the third and fourth arguments proffered by defendants. The plaintiffs have an obligation as class representatives to assure that members of the class are identified and that they receive the benefit of the monitoring and oversight of their programs provided under

the Settlement Agreement. Plaintiffs cannot fulfill this responsibility if the data on over 1000 class members is withheld. The force of this argument is not lessened by the CSDE's decision sometime in 2006-2007 to contract with an independent data expert "to assist in developing analytic procedures that, with the available data, would yield a more accurate depiction of class membership from 1998 through the current date…" Exhibit D, p. 2. In light of defendants' failure to address plaintiffs' concerns about the loss of class members over the past five years, CSDE's appointment of an expert of its choosing to conduct an analysis of uncertain dimensions that is unclear does not address plaintiffs' concerns.

In light of the magnitude of the problem, and the failure of defendants to address plaintiffs' concerns about the unexplained reduction in the size of the class, defendants must be ordered to respond fully to interrogatories 3-5 and request for production # 4 and to produce all of its data on class members with any handbooks or manuals on these data bases so that plaintiffs can conduct their own independent analysis of the data and defendants' representations about what an analysis of those data reveals.

The plaintiffs acknowledge that production of all data on class members may mean that databases containing identifying information about class members and non class members will have to be produced. Given the importance of identifying and monitoring the special education programs of *all* class members, however, the Court should order the production of this data subject to the proposed protective order attached as Exhibit E.

It is well established that state and federal statutory privileges, such as those involved here, do not necessarily preclude the disclosure of documents and data in federal civil rights

lawsuits. Federal courts have repeatedly allowed broad discovery on issues involving client confidentiality when the need for disclosure outweighs privacy concerns. *See, Burka v. New York Transit Authority*, 110 F.R.D. 660 (S.D.N.Y.1986); *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N.Y. 1977); *C.T.B.I.A. v. Hogan,* No. H90-97 (PCD)(Exhibit G). Because plaintiffs have asserted federal claims, plaintiffs' claims of privilege are governed by federal common law. *Burka,* 110 F.R.D. at 663-664. However, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Id*. at 664. Like rights and interests generally, claims to privilege and privacy are qualified and must be balanced against competing private and state interests. *Burka*, 110 F.R.D. at 664.

As Judge Weinstein ruled in *Lora v. Board of Education of City of New York*, 74 F.R.D. 565, 569 (E.D.N.Y. 1977), regarding New York State's statutorily created privilege between special education students or parents and school psychiatrists, psychologists, and social workers, "[t]he New York law of privileges is not decisive because the claim arises under federal law…. Nevertheless, …New York's view of the matter and the expectations of its professional and its patients may not be ignored…"(citations omitted). The *Lora* decision is particularly instructive. The plaintiffs were minority students attending schools for the socially maladjusted and emotionally disturbed, who contended that such school was being operated in a racially discriminatory manner. Judge Weinstein developed the following four-part balancing test in the context of that dispute to determine whether the plaintiff's need for information to prove their case outweighed the students' right to prevent disclosure:

First, is the identification of the individuals required for the effective use of the data? Second, is the invasion of privacy and risk of psychological harm limited to the narrowest possible extent? Third, will the data be supplied only to qualified personnel under strict controls? Fourth, is the data necessary or simply desirable? *Lora v. Board of Educ.*, 74 F.R.D. at 579.

After applying this four-part test, the *Lora* Court determined that the need to fully and fairly litigate the case outweighed the right to privacy. The Court ordered disclosure of fifty randomly selected diagnostic and referral files of non-party special education students, subject to a strict protective order. *Lora v. Board of Educ.*, 74 F.R.D. at 587.

The courts in this district have applied this four-part test to resolve disputes over whether privileges arising under state and federal law prohibit discovery, and have regularly permitted disclosure of such information. In *Doe v. Meachum,* 126 F.R.D. 444, 449-450 (D. Conn. 1989) the Court concluded that psychologist –patient communications must be disclosed to plaintiff during discovery because the expectation of privacy under Conn. .Gen. Stat. § 52-146c(c)(2) was outweighed by the plaintiff's need for information about HIV-infected inmates needed to litigate their case. Similarly, in *C.T.B.I.A. v. Hogan,* No. H-90-97 (PCD) (Ruling on Motion for Orders Relating to Discovery)(Exhibit G) the Court held, following the application of the four-part Lora test, that the release of confidential records to plaintiff's counsel, subject to a Protective Order, was necessary to ensure full and fair litigation of the dispute and that the interest in protecting confidential information relating to the disabled plaintiffs under Conn. Gen. Stat. §§ 52-146d and 52-146e was outweighed by the interest in fully litigating the case.