UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO. |
|     Plaintiffs, | : | 291CV00180 (RNC) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al. | : | |
|     Defendants. | : | JULY 15, 2008 |

### MEMORANDUM IN SUPPORT OF MOTION FOR ORDERS COMPELLING COMPLIANCE WITH DISCOVERY AND COMPLIANCE WITH SETTLEMENT AGREEMENT

**I.   FACTS:**

The Plaintiffs move for an order compelling the Defendants to comply with Plaintiffs' Motion for Disclosure and Production dated June 12, 2008 (Exhibit A), to produce for deposition the individual or individuals described in the four Notices of Deposition dated June 12, 2008, attached as Exhibit B hereto, and to comply with the Plaintiffs' discovery requests contained in the letter from David Shaw, Esq. to Darren Cunningham, Esq., dated June 18, 2008 (Exhibit C).  In support of this Motion the Plaintiffs represent the following.

The Settlement Agreement that resolved the issues raised in the complaint was approved and entered by the Court following an extensive trial, extensive settlement negotiations supervised by the Court, notice to class members of the proposed Settlement Agreement, a Fairness Hearing on May 22, 2002, and approval and adoption of the Settlement Agreement by the Court.  [Doc. ## 462, 463].

Section III of that Settlement Agreement provides that the Court shall have jurisdiction

to enforce the Settlement Agreement for five years from the date the Expert Advisory Panel ("EAP") is empanelled pursuant to Section IX of the Settlement Agreement.

Section III provides further that the Court shall have jurisdiction to entertain Plaintiffs' motions for substantial non-compliance with the Settlement Agreement for a period of eight years from the empanelling of the EAP pursuant to Section IX of that Agreement. The Settlement Agreement provides further that for a period of eight years beyond the empanelling of the EAP, the Court shall have jurisdiction to entertain motions for substantial non-compliance. *Id.* The EAP was empanelled on August 13, 2002.

During the period August 13, 2002 through May 16, 2007, the Defendants prepared and submitted to the Court, the EAP and the Plaintiffs four annual reports and held periodic meetings with the EAP to discuss progress on the implementation of the Settlement Agreement. The Plaintiffs prepared and submitted comments on each of these Annual Reports to the Defendants and the EAP. The EAP also prepared and submitted reports to the Court on the progress that had been made toward implementing the Settlement Agreement. The EAP's last report was submitted to the Court in February 2007. In that Report, the EAP indicated that adequate progress had not been made on the five central goals of the Settlement Agreement, that the vast majority of local school districts, including virtually all of the suburban school districts, had not become involved in the implementation efforts, that the technical assistance and training required by the Settlement Agreement had not been implemented, and that the significant and unexplained reduction in the number of students with intellectual disabilities

attending public schools made Defendants' assertions of progress and proper identification of members of the class highly questionable. The EAP also indicated that continued external oversight of the CSDE efforts to implement the Settlement Agreement was essential given the fact that so little progress had been made.

The EAP was discharged by the Defendants on May 16, 2007 against the recommendation of the EAP and over the objections of the Plaintiffs. Following the Defendants' unilateral decision to terminate the EAP, the Plaintiffs attempted to conduct discovery to assess Defendants' compliance with the Settlement Agreement. These efforts began in the fall of 2007.

The initial phase of that discovery involved Plaintiffs' experts visiting a sample of twenty school districts to review the programs and services class members were receiving in public schools. The Defendants agreed to an appropriate discovery order relating to sending experts to local school districts, stipulated to discovery orders necessary to complete this phase of discovery and cooperated in the implementation of those discovery orders.

In the fall of 2007, the Plaintiffs sought to continue their evaluation of Defendants' compliance with the Settlement Agreement by conducting an analysis of the oversight and monitoring CSDE has provided under the Settlement Agreement. In a letter dated November 5, 2007, the Plaintiffs requested that CSDE personnel and or contractors responsible for monitoring and oversight activities and development of technical assistance and training in local school districts be made available for interviews with Plaintiffs' experts Mark Mlawer and

Cheryl Jorgensen, Ph.D.  (Exhibit D.)

On December 7, 2007, the Defendants indicated in a letter to Plaintiffs' counsel that they had no duty under the Settlement Agreement to make their employees and contractors available for interviews by Plaintiffs' experts and that CSDE would not comply with Plaintiffs' request.  (Exhibit E.)

On April 15, 2008, the Plaintiffs filed a Motion for Orders To Remedy Substantial Non-Compliance With The Settlement Agreement pursuant to Section III of the Settlement Agreement.  [Doc. ## 549, 550].

On June 2, 2008, following a status conference, the Court entered an Order that states in relevant part:

> [T]he parties shall confer in good faith in an effort to resolve any discovery issues. After conferring in good faith, if outstanding discovery issues still exist,    the plaintiffs shall file a motion in which they set forth with particularity each type of discovery sought and the authority for granting their discovery request.  Any such motion shall be filed on or before June 18, 2008.

*P.J. v. State of Connecticut,* Order of June 2, 2008.  [Doc. # 561].

On June 12, 2008, the Plaintiffs served a Motion for Disclosure and Production (Exhibit A) and Notices of Deposition (Exhibit B) on the Defendants.  The depositions were noticed to commence on July 3, 2008.  On June 18, 2008, Plaintiffs' counsel wrote a letter to Defendants' counsel requesting the Defendants' cooperation in facilitation review by Plaintiffs' experts of a sample of class members who have been reclassified and exited from the class.  (Exhibit C)

On June 27, 2008, the Court granted Plaintiffs' Motion for Enlargement of Time and

4

extended the date by which Plaintiffs were required to file a motion setting forth with particularity each type of discovery sought and the authority for granting their discovery request until July 15, 2008. [Doc. # 565].

The Defendants failed to produce any CSDE employees in response to the depositions noticed by Plaintiffs. On July 3, 2008, Defendants' counsel wrote a letter to Plaintiffs' counsel responding to Plaintiffs' discovery requests. (Exhibit F) In that letter Defendants took the position that they have no obligation to respond to Plaintiffs' discovery requests. However, Defendants indicated they would voluntarily provide sworn answers to Plaintiffs' request for interrogatories by July 18, 2008. In all other respects, Defendants refused to comply with Plaintiffs' discovery requests. *Id.*

The Plaintiffs assert in their Motion for Orders to Remedy Substantial Non-Compliance [Doc. ## 549, 550] that the Defendants have failed to comply with the Settlement Agreement in many respects, including, but not limited to the following: 1) they have failed to provide and update a list of class members; 2) they have failed to determine why the number of class members has been reduced by one-third, why nearly 600 students have drifted in and out of the class data base and why several hundred students have been reclassified and not accounted for by Defendants in assessing compliance; 3) they have failed to accurately assess and report on the progress made in implementing the Settlement Agreement; 4) they have failed to develop a system of technical assistance and make the limited technical assistance activities that have been developed available to all local school districts; 5) they have failed to make adequate

progress toward achieving the five central goals of the Agreement; 6) they have failed to adequately monitor and oversee the implementation efforts of local school districts; 7) they have failed to assess whether class members are placed in regular classes with adequate supplementary aids and services and modifications to the general education curriculum and take action to identify and address the needs of those students with intellectual disabilities who currently have wholly inadequate supplementary aids and services; 9) they have failed to make any meaningful effort to address the continued practice of assigning students with intellectual disabilities to segregated educational facilities; 10) they have failed to make sufficient documents and data available to Plaintiffs so that they can assess compliance and advocate for adequate remedial orders, and 11) they have dismissed and terminated the functions of the EAP without Plaintiffs' consent even though the Settlement Agreement contemplated ongoing oversight by the EAP.

Sections I.3 and III of the Settlement Agreement assign to the Plaintiffs the responsibility to represent the class and to monitor adequacy of the Defendants' efforts to implement the Settlement Agreement and the extent to which the Defendants are in compliance.

## II.    ARGUMENT:

As Plaintiffs' Motion for Substantial Non-Compliance with Settlement Agreement raises significant questions about the adequacy of Defendants' compliance with the Settlement Agreement, the case law establishes that the Court should order adequate and sufficient discovery for the class representatives to assess compliance. *California Dept. of Social Services*

*v. Leavitt,* 523 F.3d 1025, 1033 -1035 (C.A.9, 2008), *see also*, *Hallett v. Morgan,* 296 F.3d 732, 751 (C.A.9, 2002).  The Court's power to enter necessary and appropriate discovery orders is evident from the text of the Settlement Agreement itself and from the inherent power of the Court to order such discovery as is necessary to aid the Court in determining whether CSDE has complied with the Settlement Agreement.

With regard to the Court's jurisdiction to entertain discovery under the Settlement Agreement, the parties have stipulated that the Court has jurisdiction to entertain Plaintiffs' motions for substantial non-compliance with the Agreement for a period of eight years beyond the empanelling of the EAP.  Settlement Agreement Sec. III.1.  Since the EAP was empanelled on August 13, 2002, and the Court retains jurisdiction to entertain motions and resolve disputes until August 2010,[1] the Agreement specifically contemplates that the Court will entertain motions for substantial non-compliance (Settlement Agreement Sec. III.1), entertain Defendants' motions to terminate Court jurisdiction, based on a finding of compliance (Settlement Agreement Sec. III.2) and to receive the comments of the EAP and resolve disputes over non-compliance that cannot be resolved by the EAP (Settlement Agreement Sec. IX 2 and 3.)  There is, therefore, no doubt that the parties intended the Court to have jurisdiction over motions challenging the adequacy of Defendants' compliance.

The Settlement Agreement also contemplates that the Plaintiffs will have the ability to

---

[1] The Court approved the Settlement Agreement, entered it on the record and retained jurisdiction over the case.  The Court has not dismissed or otherwise terminated its oversight of the case.

conduct discovery necessary to assess Defendants' compliance and take such actions as are necessary to ensure that the benefits of the Settlement Agreement are enjoyed by all class members. Plaintiffs are authorized to collect such data as necessary to determine whether the list of class members provided by Defendants is adequate and to collect such data and files relating to the adequacy of the class list prepared by Defendants as required by Section I.2. of the Agreement, to collect and analyze information for all purposes relating to enforcement and implementation of the Settlement Agreement, and to resolve disputes over compliance through negotiation and litigate matters referred to the Court by the EAP. (Settlement Agreement § I. 3, IX. ¶¶ 2 and 3.)

The intent of the parties is made even clearer by § IX.2 through 5 of the Settlement Agreement which authorizes the EAP to collect and analyze such data as necessary to advise the Defendants and the Court on all matters relating to implementation, to resolve disputes over implementation and refer matters to the Court which cannot be settled. It is evident from this that the parties used the word "data" in § IX and elsewhere in the Settlement Agreement to mean any and all information needed to assess compliance and resolve disputes. The EAP's practice was to collect information from State officials and employees, review computer data, visit public schools, interview school officials and teachers, hold public hearings and reviews. In light of this history, Defendants' assertion that the Agreement contemplates releasing only computer data and documents to the Plaintiffs and EAP is not a plausible construction of the Agreement. Such an interpretation would leave the Plaintiffs and the Court to assess compliance

with computer data that is inaccurate and misleading.  *See*, Exhibit G.  The Court should interpret this language as indicating that the parties intended that the Plaintiffs would conduct appropriate discovery to the extent necessary to assess compliance and address problems with implementation, either informally, or through formal motions filed with the Court.

Defendants' attempt to limit discovery to the documents and computer data is also not consistent with the applicable case law. The courts have recognized that a defendant's discovery obligations in the implementation phase of litigation, must be assessed based on the nature of the litigation and the extent on non-compliance involved.  *See*, *California Dept. of Social Services v. Leavitt,* 523 F.3d 1025, 1033 -1035 (9th Cir. 2008).  Here, in requiring the Defendants to produce files and data "for all purposes relating to the enforcement and implementation of this Agreement" the parties clearly intended the class representatives sufficient information to assess whether Defendants have met their obligations under the Agreement, and to have enough information to fairly and adequately represent the class in the negotiations and litigation that might become necessary.  This interpretation is reinforced by the requirements of Section IX which authorizes the EAP to have access to "collect and analyze data" sufficient to enable it to make recommendations to the parties and the Court relating to implementation, resolve disputes and refer disputes over implementation to the Court.

Moreover, the Court has inherent power to order discovery to aid the Court in determining whether Defendants have complied with the Settlement Agreement even if it is determined that the Settlement Agreement itself does not require such discovery. The Plaintiffs'

9

discovery requests are ones the district court can grant, as part of its inherent power to enforce its judgments. *California Dept. of Social Services v. Leavitt,* 523 F.3d 1025, 1033 -1035 (9th Cir. 2008), citing, *Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1449 (9th Cir.1991) (referencing post-judgment discovery); *Wilkinson v. FBI,* 922 F.2d 555, 556-58 (9th Cir.1991) (same), *abrogated on other grounds by Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Flores v. Arizona,* 480 F.Supp.2d 1157, 1159-60 (D.Ariz.2007). *See also, e.g., Natural Gas Pipeline Co. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1408-09 (5th Cir.1993) (discussing the inherent power to order discovery and various exercises of that power); *cf.* Fed.R.Civ.P. 69(a)(2)(permitting discovery "[i]n aid of the judgment or execution" for money judgments). *See also*, *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). In *California Dept. of Social Services v. Leavitt*, the court indicated that the appropriate standard for determining whether to grant a post-judgment discovery request is whether the discovery request could have "provided potentially favorable information," and whether the discovery would "have shed light on any of the issues …"). Where significant questions regarding noncompliance have been raised, appropriate discovery should be granted where such discovery might generate information that could raise significant questions concerning compliance. *Id*.[2]

---

[2] *California Dept. of Social Services v. Leavitt* involved compliance with a judgment and relief from judgment. It is clear the same standard applies here. A court has jurisdiction where jurisdiction is retained after the matter is settled, *Consolidation Coal Co. v. United States Department of Interior*, 43 F.Supp.2d 857, 863 (S.D.Ohio 1999), where the stipulated agreement is embodied in a court order, or where a court approved stipulation (i) contains obligations of the court that were beyond the power of the parties to perform and that could be enforced only by the District Court, and (ii) the record indicates that the District Court carefully reviewed the terms of the stipulation-or reviewed it prior to approving it. *Torres v. Walker, supra, citing, Geller v. Branic International Realty Cort.,* 212 F.3d 734, 737 (2d Cir.

Here, this standard is easily met. Information already present in the record raises

---

2000); *Williamsburg Fair Housing Committee v. New York City Housing Authority*, 2005 WL 736146 (S.D.N.Y. 2005); *The Brandner Corp. v. V-Formation, Inc.,* 2004 WL 1945761 *3 (S.D.N.Y. 2004).

Here, the District Court carefully reviewed the terms of the Settlement Agreement before approving it.  Following an extensive trial and extensive settlement negotiations supervised by the Court, the Court preliminarily approved the Settlement Agreement on April 5, 2002 [Doc. # 455], issued notice to class members of the proposed Settlement Agreement, held a Fairness Hearing on May 22, 2002 and approved and entered the Settlement Agreement on May 22, 2002.  [Doc. ## 462, 463].

Further, the Court retained jurisdiction following approval of the Settlement.  While the matter was closed administratively, the case was never dismissed and the Court retained jurisdiction over the case.  The Court therefore has retained jurisdiction for all purposes until such time as the jurisdiction of the Court expires due to the passage of time or the Court terminates its jurisdiction pursuant to Section V.2. of the Settlement Agreement.  The parties expressly recognized in the continuing jurisdiction of the Court by stipulating, in Section III of the Settlement Agreement, that until the jurisdiction of the Court ends either by the passage of time or by an order of dismissal pursuant to Section III.2 of the Agreement, that the Court will e continuing jurisdiction to entertain motions for substantial non-compliance (Settlement Agreement § III), to rule on motions to end the Court's jurisdiction (Settlement Agreement § III.2), resolve disputes over non-compliance that cannot be resolved by the parties and the Expert Advisory Panel (Settlement Agreement §IX. 2) and receive recommendations from the EAP related to progress toward the goals of the Settlement Agreement, development of technical assistance, targeted monitoring, complaint resolution, parent training and next steps (Settlement Agreement §§ IX 2 and 3).

Further, the Settlement Agreement contains obligations of the Court that are beyond the power of the parties to perform and that could be enforced only by the District Court.  In particular, Section III provides that the annual reports of CSDE will be submitted to the Court and that the reporting requirements will terminate in June 2005 unless the Court issues further orders extending the reporting period. Settlement Agreement § III.1.  The Defendants have the right under the Agreement to petition the Court for an end to the Court's jurisdiction and for dismissal of the matter based on the Defendants' substantial compliance with the terms of the Agreement.  Settlement Agreement § III.2. Finally, the Settlement Agreement requires the Expert Advisory Panel make written comments at least annually to the court, facilitate compliance with the Settlement Agreement, identify difficulties in compliance, facilitate resolution of compliance issues without court intervention, and referring to the court issues that cannot be resolved by discussion and negotiation.  Settlement Agreement §§ IX.2 and 3. The Settlement Agreement also provides that the EAP was to provide ongoing comments and recommendations to the Court relating to progress under the Settlement Agreement, resolve compliance issues without court intervention and refer to the Court issues that cannot be resolved by discussion and negotiation. Settlement Agreement § IX.2.  The obligation to resolve disputes that cannot be resolved by the EAP and/or the parties, to resolve motions for substantial compliance and to terminate the Court's jurisdiction upon an adequate showing by Defendants, are clearly matters that are beyond the power of the parties to perform and can only by the District Court under the Settlement Agreement.  Further, it is clear that under the Settlement Agreement the Court retains jurisdiction to address matters that are beyond the power of the parties to address.

questions of noncompliance, to justify granting the request to authorize discovery. Plaintiffs assert on pages 13-18 of their Memorandum in Support of Motion To Remedy Substantial Non-Compliance With Settlement Agreement that the Defendants have failed to identify and update a list of class members as required by Section I of the Settlement Agreement, and that they have failed to investigate Plaintiffs' assertion that hundreds of class members have been reclassified and not taken into account in the Defendants' reports of progress made on Goals 1 – 5 of the Settlement Agreement.  *See also*, Affidavit Heather Hammer, Ph.D. (Exhibit G) ¶¶ 8-12. Plaintiffs produced data showing that despite the objections of Plaintiffs and the EAP the number of students who are considered class members for purposes of Defendants' reporting has been reduced from 4103, when the Settlement Agreement was signed, to 2794 today.  Given the fact that the Defendants have failed to provide any explanation for this reduction in the size of the class by one-third, it is obvious that Plaintiffs must conduct their own independent assessment through a review of a sample of reclassified class members. *See also,* Affidavit of Heather Hammer, Ph.D., ¶¶ 8-12.[3]

     Defendants have objected to Plaintiffs' request to conduct such a review on the ground that it has no obligation to permit such discovery. Exhibit F.  Class counsel obviously cannot represent the class adequately when a substantial number of their clients are not accounted for, and have not been taken into account in Defendants' reports of progress made to the EAP and

---

[3] Dr. Hammer's assertions are of particular concern as it appears from her Affidavit that there may be significant errors in Defendants' reports to the Court and EAP throughout the five year implementation period.

the Court on Goals 1-5 of Section II of the Settlement Agreement. Affidavit of Heather Hammer, Ph.D., *Id*. Moreover, given the fact that Defendants have consistently failed to provide the computer data necessary to track class members and have failed to investigate the concerns expressed by the EAP and the Plaintiffs relating to the disappearances and/or reclassifications[4] of class members, the Defendants must be ordered to cooperate with Plaintiffs in conducting a review of a sample of class members who have been reclassified and were otherwise not taken into account in Defendants' reports of progress under the Settlement Agreement following the same procedures previously agreed to by the parties as requested in Plaintiffs' letter dated June 18, 2008. (Exhibit C)

Evidence of the need for the discovery requested by Plaintiffs in their Notices of Deposition, and Motion for Disclosure and Production dated June 12, 2008 (Exhibits A and B) can be found in the arguments set out on pages 18-28 of Plaintiffs' Memorandum In Support of Motion for Substantial Non-Compliance.  There, Plaintiffs present considerable data showing that the progress on Goals ## 1-5 of the Settlement Agreement are inadequate and/or are far

---

[4] The Defendants failed to provide data that could be used to follow individual class members from year to year for the first five years of the Settlement Agreement.  Affidavit of Heather Hammer (Exhibit G) ¶ ¶¶ 6-9. This made it impossible for Plaintiffs to determine whether the Defendants' reports of progress in their Annual Reports were based on placements of the same class members who were identified when the Settlement Agreement was signed.  In the fall of 2007, the Defendants provided another computer data set which permitted class members to be tracked from year to year.  Affidavit of Heather Hammer ¶ 8.  This new data set revealed a large number of class members who had been reclassified to other disability groups, and hundreds of class members who moved in and out of the data set each year.  Affidavit of Heather Hammer ¶¶ 8, 10.  Throughout the six year history of this case, Defendants have not provided an explanation as to why the class has been reduced in sized from 4103 to 2794, why so many class members have been reclassified, why so many class members move in and out of the data set each year, or how these gross errors in the data set affects their reports to the Court relating to progress under the Settlement Agreement.

below the benchmarks set by the EAP, even if the disappearance of a substantial number of class members are not taken into account. Plaintiffs further assert on pages 23-25, based on the reports of the EAP, that the Defendants have failed to provide the monitoring and oversight of local school districts as required by Section V of the Settlement Agreement. Again, these allegations relate to the failure of the State Department of Education to provide adequate monitoring and oversight of the 169 cities and towns responsible for placing over four thousand class members in properly supported regular classes. Further, on pages 25-29 of Plaintiffs' Memorandum in Support of Motion for Substantial Non-Compliance the Plaintiffs assert that the Defendants have failed to put in place the system of technical assistance and a sufficient number of qualified specialists necessary to implement the Settlement Agreement.

On pages 29-33 of their Memorandum in Support of Motion for Substantial Non-Compliance, the Plaintiffs argue that the Defendants ignored many of the recommendations of the EAP, ignored the EAP findings that Defendants made inadequate progress on all of the Goals of the Settlement Agreement, that 145 cities and towns made little to no progress under the Settlement Agreement and that continued implementation of the Settlement Agreement would not occur, and that the small gains that had been made would be lost, if external oversight of the Defendants' implementation efforts was not provided. Settlement Agreement. *Id.* at 31-32. The Defendants terminated the EAP without Plaintiffs' consent on May 16, 2007 in violation of the Settlement Agreement. This unilateral action terminated all external oversight of Defendants' implementation efforts as well as the role the EAP was playing in

advising the parties and the Court, resolving disputes out of court and referring disputes that could not be settled to the Court for resolution.

The nature and extent of these violations require broad discovery. In order to meet their need for discovery the Plaintiffs have served a Motion for Disclosure and Production and four notices of deposition on the Defendants on June 12, 2008. In their Motion for Disclosure and Production (Exhibit A) Plaintiffs request that Defendants identify the person or persons most knowledgeable about the defendants' efforts to identify class members (Interrogatories 1 and 2), the person or persons most knowledgeable about the Defendants' efforts to implement Goals 1 – 5 of the Settlement Agreement (Interrogatories 3-9), the person or persons most knowledgeable about the Defendants efforts to establish a monitoring system to collect, analyze, and use quantitative and qualitative information and data to identify problems and provide consistent feedback to all LEAs on their performance in achieving the five state goals of the Settlement agreement (Interrogatories 10 -13), the person or persons most knowledgeable about Defendants' efforts to establish a system of technical assistance with sufficient qualified specialists to support local school districts in placing class members in regular classes (Interrogatories 14 and 15) and the person or persons most knowledgeable about the efforts Defendants have made to provide training to parents (Interrogatory 16). The Plaintiffs' request, pursuant to Rule 34, Fed. R. Civ. P., that the Defendants produce for interviews the persons identified in interrogatories 1-16 for interviews with the Plaintiffs' Experts, Cheryl Jorgensen,

Ph.D. and Mark Mlawer. (Exhibit A, pp. 7 and 8)[5]

The Notices of Deposition (Exhibit B) ask that the Defendants identify and produce for deposition the person or persons most knowledgeable about the efforts Defendants have made to implement the Sections of the Settlement Agreement Plaintiffs allege have not been implemented. In addition, the depositions of Ann Louise Thompson, Deb Richards, and Brian Cunnane are noticed as they are the persons known to Plaintiffs who have been significantly involved in Defendants' implementation efforts. Ms. Thompson, for example, was the person designated by the Defendants as the staff person responsible for the progress in implementing the terms of the Settlement Agreement pursuant to Section VI.2 of the Settlement Agreement; Ms. Richards was assigned responsibilities with regard to parent training and Mr. Cunnane was assigned some responsibilities under the Settlement Agreement. These depositions are necessary to assess what steps Defendants have taken to implement the Settlement Agreement, and what progress has been made. Without this discovery Plaintiffs have no way of assessing compliance and no way of enforcing the Agreement.

## III.    CONCLUSION:

For the foregoing reasons, the Plaintiffs request that the Court enter orders requiring the Defendants to: 1) respond fully to Plaintiffs' Motion for Disclosure and Production dated June

---

[5] *See*, *New York State Ass'n for Retarded Children Inc. v. Carey*, 706 F.2d 956, 960 -961 (2nd Cir.,1983) where the Court upheld the district court's discovery order permitting Plaintiffs' experts to interview for the proposition that Rule 34 may be used to interview defendants' employees for the purpose of assessing compliance with the provisions of a consent decree.

12, 2008; 2) make their employees and contractors available for interviews with and produce documents and data to Plaintiffs' experts as requested on page 7 of Plaintiffs' Motion for Disclosure and Production; 3) produce their employees and contractors for depositions noticed by Plaintiffs as indicated in Exhibit B; and 4) cooperate fully with Plaintiffs' request in their letter dated June 18, 2008 requesting the Defendants' cooperation in facilitation review by Plaintiffs' experts of a sample of class members who have been reclassified and are otherwise not properly taken into account in defendants' representations as to progress under the Settlement Agreement.

PLAINTIFFS,

By  /s/  David C. Shaw
David C. Shaw, Esq.
The Law Offices of David C. Shaw, LLC
Fed. Bar No. ct05239
34 Jerome Ave., Suite 210
Bloomfield, CT 06002
Tel. (860) 242-1238
Fax. (860) 242-1507
Email:  dcshaw@cttel.net

**CERTIFICATION**

I hereby certify that on July 15, 2007 a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Darren P. Cunningham
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

                                                                            /s/  David C. Shaw
                                                                           David C. Shaw, Esq.