UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL ACTION NO. 2:91cv180(RNC) |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al., | : | |
|     Defendants. | : | August 5, 2008 |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR ORDERS COMPELLING COMPLIANCE WITH
DISCOVERY AND COMPLIANCE WITH SETTLEMENT AGREEMENT**

The Settlement Agreement entered into between the parties on or about February 28, 2002 (hereafter "Settlement Agreement") explicitly and permissibly circumscribes the jurisdiction of this court. Germane to Plaintiffs' underlying motion seeking discovery, at this juncture in the Settlement Agreement the court's jurisdiction is limited to motions alleging "substantial non-compliance" with the Settlement Agreement. Plaintiffs' "Motion for Orders Compelling Compliance with Discovery and Compliance with Settlement Agreement" (Doc. #566) is therefore not a request made within the jurisdiction of the court. Accordingly, and for the reasons that follow, it should be dismissed.

I. Introduction

This discovery dispute[1] is rooted in a Special Education lawsuit brought "in 1991 by five school-aged children with mental retardation and their families against the Connecticut State Board of Education, the State Commissioner of Education and certain local school districts

---

[1] This memorandum is being filed in accordance with, inter alia, D. Conn. L. Civ. R. 37 which sets forth the specific procedures to be followed in discovery disputes.

alleging violation of 20 U.S.C. § 1412(a)(5)(A)." See Settlement Agreement dated February 28, 2002, attached as Exhibit 1.  On December 13, 1993, the case was certified as a class action as to the claims against the state defendants.  The court defined the class as: "All mentally retarded school-age children in Connecticut who have been identified as needing special education and who, on or after February 20, 1991, are not educated in regular classrooms."  Doc. # 224.  On February 28, 2002, following years of litigation and a trial, the parties settled their dispute via a fourteen page settlement agreement.

II.     Items of Discovery Sought/Opposed

As noted in Plaintiffs' "Memorandum in Support of Motion for Orders Compelling Compliance with Discovery and Compliance with Settlement Agreement" dated July 15, 2008 (hereafter "Memorandum in Support"), Plaintiffs are seeking discovery consisting of, inter alia, depositions, interviews and requests for production.  Plaintiffs argue that their right to discovery emanates from both "the text of the Settlement Agreement" as well as the "inherent power of the Court."  Memorandum in Support at 7.  For the reasons that follow, neither source provides a right of discovery.  Instead, the legally binding Settlement Agreement entered into by the parties explicitly forecloses such discovery and does not provide the court with the authority to compel it.  Accordingly, this court is without both the jurisdiction to entertain such a motion and the power to compel discovery.  Plaintiffs' requests should therefore be dismissed.

III.    Standard of Review

Plaintiffs devote a significant percentage of their memorandum to what they argue the parties intended to set forth in the Settlement Agreement with respect to discovery.  Plaintiffs take great lengths to point out various provisions of the Settlement Agreement that, they believe, taken together, permit discovery at this time.  However, as the Supreme Court noted in United

States v. Armour & Co., 402 U.S. 673, 681-682 (1971), it is the language of the consent decree that defines the obligations of the parties, not the parties' purported intent or purposes.

> [T]he decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of these opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.

Id. (Emphases in original), quoted in United States v. O'Rourke, 943 F.2d 180, 187-188 (2d Cir. 1991); see also Doc. #455 (order from Judge Chatigny noting that the Settlement Agreement was "negotiated by the parties"). Also, when reviewing settlement agreements courts must remember that "settlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999). Extrinsic evidence is only permitted "if the terms of the judgment, or of the documents incorporated in it, are ambiguous." EC v. Levine, 881 F.2d 1165, 1179 (2d Cir. 1989). Settlement agreements to end litigation are strongly favored by courts and are not lightly cast aside. Willgerodt v. Majority Peoples' Fund for the 21st Century, Inc., 953 F. Supp. 557, 560 (S.D.N.Y. 1997). Although courts have equitable powers to enforce consent decrees, such power exists only to ensure compliance with the decrees' terms. See United States v. Local 359, United Seafood Workers, 55 F.3d 64, 69 (2d Cir. 1995).

Finally, it is axiomatic that "[t]he party invoking federal jurisdiction bears the burden of establishing [standing]." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

IV.    The Settlement Agreement No Longer Permits Discovery

Taking the above framework as our guide, the analysis must begin by consulting the relevant language of the Settlement Agreement. Under the title "Continuing Jurisdiction" the Settlement Agreement provides:

> The jurisdiction of the court for enforcement of this Agreement <u>will end</u> five (5) years from the empanelling of the Expert Advisory Panel (EAP) called for in section IX, <u>except</u> that the Court, for a period of eight (8) years from empanelling of the EAP, <u>shall have jurisdiction to entertain Plaintiffs' motions for substantial non-compliance with this Agreement</u>. In no event shall the Court's jurisdiction over this Agreement exceed eight (8) years beyond the empanelling of the EAP. The Defendants shall cooperate with the Plaintiffs' reasonable requests to provide existing data to enable Plaintiffs to assess compliance during the five-to-eight year period.

Settlement Agreement, Section III, ¶ 1 (emphasis added). Unquestionably, the Settlement Agreement establishes two consecutive periods with respect to the jurisdiction of the District Court: a first period lasting five years and a second consecutive and contingent period lasting three years. Most importantly, the Settlement Agreement unequivocally states that the "jurisdiction" of the court "will end" five years from the empanelling of the EAP.[2] <u>Id.</u> The only exception to the termination of the jurisdiction of the court is insofar as Plaintiffs file "motions for substantial non-compliance" within eight years of the empanelling of the EAP. <u>Id.</u>

Although the parties disagree as to the starting date of the two periods, <u>see</u> note two <u>supra</u>, under either calculation the Plaintiffs' motion was brought during the second time period, the "five-to-eight year period." More specifically, Plaintiffs' motion is being brought at a time when the Settlement Agreement unequivocally provides that the District Court's jurisdiction is limited to consideration of a motion for substantial non-compliance.

---

[2] Although not dispositive here, it is worth pointing out that the parties disagree as to when the EAP was empanelled and thus when this timeline begins to run. The plaintiffs assert in their memorandum – without support – that the EAP was empanelled on August 13, 2002. <u>See</u> Memorandum in Support at 2. Defendants have long asserted that the EAP was empanelled no later than July 22, 2002, and probably earlier, and have provided support for that position. <u>See</u> Doc. # 541, Exhibit 4, Letter from Anne Louise Thompson to the EAP dated July 22, 2002 ("Thank you all for joining us in Connecticut to implement the Settlement Agreement in the case of P.J. ET AL v STATE OF CONNECTICUT, BOARD OF EDUCATION, ET AL.").

The plaintiffs gloss over these two time periods throughout their Memorandum in Support. Contrary to plaintiffs' implications, the power of the District Court "to entertain motions and resolve disputes" does not continue unfettered from "August 13, 2002 ... until August 2010."[3] Memorandum in Support at 7. Rather, as discussed herein, the District Court's power is circumscribed almost completely in years five through eight. Defendants therefore agree with the plaintiffs that the District Court "retained jurisdiction for all purposes until such time as the jurisdiction of the Court expires due to the passage of time or the Court terminates its jurisdiction…" Memorandum in Support at 11 n.2. However, the jurisdictional "passage of time" – with respect to all issues save motions for substantial non-compliance – occurred no later than July 22, 2007, almost a year before plaintiffs filed their underlying motion.[4]

To be certain, the Settlement Agreement can be read to allow the court to compel discovery during the first five years. The agreement provides that during the first five years the District Court shall have "jurisdiction…for enforcement of this Agreement." It can plausibly be argued that jurisdiction to enforce includes the jurisdiction to compel. Any other reading would seem unnecessarily narrow. But, the Settlement Agreement makes clear that the jurisdiction of the court "will" (not may) end after five years, the sole jurisdictional exception being that the District Court would entertain jurisdiction over motions for substantial non-compliance.

Indeed, plaintiffs lengthy argument that they are entitled to limitless discovery at this time on the basis of the Settlement Agreement would render the last sentence of the above-quoted Settlement language unnecessary for two reasons. First, the Settlement Agreement

---

[3] The plaintiffs do mention that the District Court retained jurisdiction for the first five years and that the District Court retained jurisdiction over motions for substantial non-compliance "for a period of eight years." Memorandum in Support at 1-2.

[4] Defendants have long espoused the view that the District Court's jurisdiction in the case was limited in years five through eight. See Doc. # 541, September 28, 2007 at 9.

requires that during years five-to-eight the Defendants "shall cooperate with the Plaintiffs' reasonable requests to provide existing data to enable Plaintiffs to assess compliance during the five-to-eight year period." If Plaintiffs' interpretation of the Settlement Agreement is correct, this entire sentence would be unnecessary because Plaintiffs would simply have normal discovery rights inherent in any litigation. Second, the Settlement Agreement provides Plaintiffs not with a right to pose questions or create legal theories but with a right to "existing data." Again, if the Settlement Agreement already provided Plaintiffs with the full panoply of discovery rights why would such a specific provision be necessary? It is a basic rule of contract interpretation that portions of a contract should not be construed so as to render them superfluous. See 11 Williston on Contracts, 4th Ed., § 32:5 (noting that contracts should not be interpreted to render a portion of the writing "superfluous[] . . . or inexplicable"). Plaintiffs' interpretation would render the final sentence of Section III, ¶ 1 meaningless or inapplicable. Accordingly, it should be rejected.

In fact, the only logical reason for that sentence is to provide Plaintiffs with a right to materials that they <u>otherwise would not be entitled</u> based on the previous language of the Settlement Agreement circumscribing jurisdiction. This is consistent with the rest of the paragraph which clearly seeks to phase out the relationship between the parties over the course of the eight years. Unquestionably, then, this sentence lends considerable weight to defendants' argument that in years five through eight the District Court does not have the power to compel discovery.

In summary, the crucial failings of plaintiffs' argument are twofold: (1) plaintiffs make no distinction between the role of the court in years one through five and five through eight, and (2) plaintiffs do not consider that the jurisdiction of the court was circumscribed by the parties

such that in years five through eight the District Court had no jurisdiction except insofar as a motion for substantial non-compliance. Plaintiffs would affectively enlarge and expand this explicit exception to encompass motions seeking depositions, requests for production, etc.[5] This was not the framework the parties agreed to and courts have been slow to embrace such an expansive approach to negotiated settlement language. See Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989) (explaining that once reached by the parties settlement agreements are binding and enforceable), rev'd on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994). Plaintiffs have the burden of demonstrating both that the court has jurisdiction over their motion and that their motion should be granted. On the basis of the Settlement Agreement, neither burden has been met.

V.     Inherent Power of the Court

Plaintiffs also argue that their right to discovery at this phase of the Settlement emanates from some inherent power of the court to "enforce its judgments."[6] However, in the context here – where a negotiated settlement circumscribing the jurisdiction of the court has been made part of an order of the court – courts have been weary to expand their jurisdictional reach beyond the extent negotiated by the parties. A District Court has the jurisdiction to enforce its judgments

---

[5] "The nature and extent of these violations require broad discovery." Memorandum in Support at 15.

[6] Plaintiffs also argue that such an inherent power arises because discovery would "aid the Court in determining whether Defendants have complied with the Settlement Agreement." Memorandum in Support at 9. The problem with this belief is that Plaintiffs – not the court -- bear the burden not only of demonstrating that the court has jurisdiction, see supra, but that the defendants are in "substantial non-compliance" with the Settlement Agreement. As is discussed infra, this need-based argument is seriously undermined by the fact that Plaintiffs have already filed a motion alleging substantial non-compliance. See Plaintiffs' "Motion for Orders to Remedy Substantial Non-Compliance with Settlement Agreement" dated April 15, 2008, Doc. # 549. Defendants look forward to addressing Doc. #549 once this discovery issue is resolved. See Ruling and Order dated June 2, 2008, Doc. #561 ("The parties agreed that before [Doc. # 549] can be resolved, the court must first address questions regarding discovery.")

(including settlements) when it has reserved the right to do so. Here, however, the relevant court order merely adopted the Settlement Agreement and that Agreement contained the jurisdictional limitations discussed <u>supra</u>. Accordingly, this court did not retain the power to enforce the Settlement Agreement in a manner inconsistent with the four corners of the Settlement Agreement. As discussed above, to allow discovery at this time would contradict the express language of Section III, ¶ 1 of the Settlement Agreement.

The cases cited by the plaintiffs in support of their position miss the mark.[7] Plaintiffs argue that "[a] court has jurisdiction where jurisdiction is retained after the matter is settled" and site various cases for that position. Memorandum in Support at 11. However, in cases such as here, where the <u>scope</u> of the court's jurisdiction has been explicitly limited by the parties and adopted via court order, the District Court must be careful not to alter the agreement negotiated by the parties. See <u>In re Air Crash Disaster at JFK Int'l Airport</u>, 687 F.2d 626, 629 (2d Cir. 1982); <u>Pigford v. Veneman</u>, 292 F.3d 918, 924 (D.C. Cir. 2002) ("[D]istrict courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, <u>but are instead constrained by the</u>

---

[7] For example, <u>Consolidation Coal Co. v. U.S. Dept. of Interior</u>, 43 F.Supp.2d 857 (S.D. Ohio 1999), <u>affirmed in part and vacated in part</u>, 345 F.3d 409 (6th Cir. Ohio 2003), involved a non-final interlocutory order that did not resolve the dispute between the parties. The district judge made clear that the court retained jurisdiction due to the interlocutory nature of the settlement:

> Here, there has been no final order or judgment resolving the dispute between Consol and Beazer, but only an interlocutory dismissal entry which is subject to revision by the Court at any time. Consequently, this Court concludes that it has the power to adjudicate the current dispute between Consol and Beazer even if the settlement agreement was not expressly incorporated into the dismissal entry, and even if the dismissal entry did not expressly reserve jurisdiction to the Court, because it never lost jurisdiction over the original dispute between those parties. <u>In other words, where an order of dismissal is merely interlocutory, no reservation of jurisdiction over the parties' dispute is needed because jurisdiction has never been lost.</u>

43 F.Supp. 2d at 863 (emphasis added).

terms of the decree and related order.")(emphasis added).  This approach stems from the fact that Settlement Agreements are contractual in nature and have been carefully negotiated.  See id.

Again, it is clear from the settlement language that in years five through eight the plaintiffs only had the right to "existing data" and the court only had jurisdiction over "motions for substantial non-compliance."  The Second Circuit has made clear that "[i]n the absence of … an independent basis for jurisdiction, a federal court has jurisdiction to enforce a settlement agreement only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement."  Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (1996) citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994).  Here, the relevant order from Judge Chatigny did not reserve the right to compel discovery.  Rather, Judge Chatigny merely incorporated the Settlement Agreement into his order and, as discussed, the Settlement Agreement contains the strict jurisdictional timelines outlined above.  See Doc. # 455.  Contrary to Plaintiffs' assertions, the District Court did not reserve any specific authority to retain jurisdiction above and beyond the four corners of the Settlement Agreement.[8]    And, the Settlement Agreement now greatly restricts the jurisdiction of the District Court.  Respectfully, the court should not now expand its jurisdiction.  Cf. EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 76 F.3d 76, 80 (2d Cir. 1996)("A court does not have inherent power to enforce an order that has expired."); see also Scelsa, 76 F.3d at 42 ("When [District Judge] Motley 'so ordered' the dismissal, the document became an order of the district court….While the judge did not expressly state that she had not intended to retain jurisdiction over the Agreement, this is the only reasonable conclusion that can be drawn from her actions.").

---

[8] Plaintiffs concede that the Settlement Agreement was "entered ... on the record" but make the vague assertion that the District Court "retained jurisdiction over the case." Memorandum in Support at 7 n.1.

EEOC v. Local 40, is instructive on this important point. There the Second Circuit held that it would be inappropriate to allow the District Court to enforce a consent decree twelve years after it expired. The court reasoned that to do so would "depriv[e] [one of the parties] of the benefit of its bargain," id. at 81, specifically the termination clause contained in the consent decree. The court also rejected the District Judge's assertion of inherent power based on the facts of the case. Id. Applied here, the court should not deprive the defendants of the Settlement Agreement terms which contain a provision explicitly limiting the jurisdiction of the District Court as well as the discovery to which plaintiffs are entitled. Just as a party in EEOC negotiated an outright termination of the consent decree, here the parties negotiated a Settlement Agreement that limited the jurisdiction of the court after five years. That is to say, the defendants negotiated for themselves the right not to be subjected to the very depositions, interviews, interrogatories, etc. that plaintiffs now seek. At the very least, the defendants negotiated for themselves a level of finality. Just as in EEOC it was improper to ignore the termination clause, here it would be improper to subject defendants to discovery at this time. Id.

Plaintiffs also make a "needs based" argument for the information they seek, asserting various areas in which Defendants have allegedly failed to comply with the goals of the Settlement Agreement. See Memorandum in Support at 15. However, the Second Circuit has long held that when adjudicating disputes over settlement agreements, courts should resist the temptation to delve into the merits of the underlying claim. "Settlement agreements are contracts, and disputes over such agreements are adjudicated 'without regard to the validity of the underlying claim.'" United States v. United States Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200), 242 Fed. Appx. 750, 751 (2d Cir. 2007) (emphasis added) quoting First Nat. Bank of Cincinnati v. Pepper, 454 F.2d 626, 632 (2d Cir.

1972). Furthermore, "[i]t is beyond a district judge's discretion to alter the terms of or refuse to enforce a settlement agreement, absent special circumstances, such as a material breach of the agreement, or duress." In re Air Crash Disaster at JFK Int'l Airport, 687 F.2d at 629 (internal citations omitted). That is, "the court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985). "A court may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree's goals." United States v. International Bhd. of Teamsters, 998 F.2d 1101, 1107 (2d Cir. 1993). This court should not feel compelled to order discovery on the basis of plaintiffs' underlying claims of substantial non-compliance which will surely be addressed at a later time. See note 6, supra.

Finally, it is worth noting that there is a certain incoherence to plaintiffs' needs based argument when viewed in the context of plaintiffs' other arguments. Essentially, plaintiffs' argument on this point is that discovery is required because the defendants have failed to comply substantially with the Settlement Agreement and the plaintiffs need to determine if the defendants have failed to comply substantially with the Settlement Agreement. See Memorandum in Support at 6. Q.E.D.

VI.   Conclusion

For the foregoing reasons it is respectfully submitted that the Plaintiffs' motion (Doc. #566) should be DISMISSED.

    STATE OF CONNECTICUT

    RICHARD BLUMENTHAL
    ATTORNEY GENERAL

    BY:___*Darren P. Cunningham*_____

Darren P. Cunningham
Assistant Attorney General
Federal Bar No. ct25380
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385
darren.cunningham@po.state.ct.us

On the brief: Nick Valenta, Law Student Intern

**CERTIFICATION**

I hereby certify that on August 5, 2008, a copy of the foregoing "Memorandum in Opposition to Plaintiffs' Motion for Orders Compelling Compliance with Discovery and Compliance with Settlement Agreement" was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      *Darren P. Cunningham*
Darren P. Cunningham
Federal Bar No. ct25380
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385
darren.cunningham@po.state.ct.us