UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

P.J., ET AL                                : CIVIL ACTION NO.
*Plaintiffs*                               : 291CV00180 (RNC)
                                           :
v.                                         :
                                           :
STATE OF CONNECTICUT,                      :
BOARD OF EDUCATION, ET AL                  :
*Defendants*                               : FEBRUARY 28, 2002

## SETTLEMENT AGREEMENT

### INTRODUCTION

This case was filed in 1991 by five school-age children with mental retardation and their families against the Connecticut State Board of Education, the State Commissioner of Education and certain local school districts alleging violation of 20 U.S.C. § 1412(a)(5)(A). Later, four statewide associations of persons with disabilities were granted the status of intervening parties.

On December 13, 1993 this case was certified as a class action as to plaintiffs' claims against state defendants. The court defined the class as: "All mentally retarded school-age children in Connecticut who have been identified as needing special education and who, on or after February 20, 1991, are not educated in regular classrooms." C.A.R.C. v State of Connecticut Board of Education, 2:91CV00180 (JAC), Ruling on Motion to Reconsider Denial of Motion for Class Certification, slip op. at 6 (D. Conn. December 13, 1993).

The state defendants deny the allegations in the plaintiffs' Amended Complaint in this case and admit no liability for the actions claimed therein. All parties to this litigation seek a resolution that is consistent with the requirements of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., its implementing regulations, and any other relevant federal law, and the provisions of state law and regulations.

The parties acknowledge and agree that each class member has an equal right to a free, appropriate public education. The defendants share with the LEAs the obligation to ensure that "to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." (20 U.S.C. § 1412(a)(5)(A)) See also, C.F.R. § 300.550 through 300.552 regarding least restrictive environment. The parties agree to the following to implement these rights and obligations.

**I.   Class Membership**

1. The parties agree that all school-age children labeled mentally retarded on or after February 20, 1991 who are not educated in regular classrooms will be class members as well as all students with the label "Intellectual Disability/Mental Retardation" who are not educated in the regular classroom. Students who either graduate or reach maximum age for eligibility for special education ("age out") will no longer be

considered class members. No student will lose his status as a class member due to the re-naming or re-labeling of his/her disability category from mental retardation to intellectual disability.

2. The defendants shall prepare and distribute to the parties and the court a list of public school students in Connecticut who on or after December 1, 1999 carry the label of either mental retardation or intellectual disability and who are eligible for special education; such list shall be updated periodically.

3. The plaintiffs shall have a right to collect data relating to the students identified in number 2. above and to challenge the adequacy of that list. CSDE shall cooperate with the plaintiffs to gain access to data and files relating to class members, to the extent allowed by state and federal statute, for all purposes relating to the enforcement and implementation of this Agreement. As with all other aspects of this Agreement, Plaintiffs' right to this data and these files shall end should the court end its jurisdiction and dismiss this matter as provided under Section III below.

## II. Goals and Outcomes

The parties agree that the desired outcomes for educational programs for students with mental retardation or intellectual disability consist of five main overall goals stated below.

1. An increase in the percent of students with mental retardation or intellectual disability who are placed in regular classes, as measured by the federal definition (eighty (80) percent or more of the school day with non-disabled students).

2. A reduction in the disparate identification of students with mental retardation or intellectual disability by LEA, by racial group, by ethnic group or by gender group.

3. An increase in the mean and median percent of the school day that students with mental retardation or intellectual disability spend with nondisabled students.

4. An increase in the percent of students with mental retardation or intellectual disability who attend the school they would attend if not disabled (home school).

5. An increase in the percent of students with mental retardation or intellectual disability who participate in school-sponsored extra curricular activities with non-disabled students.

Within sixty (60) days of the Court's approval of this agreement, the defendants will establish statewide and individual LEA baseline data for the main goals stated above with the exception of the goal related to home school and the goal related to participation in extra-curricular activities. The baseline data for the goals related to participation in extra-curricular activities and home school will be established as a result of the December 2001 data collection. All baseline data and data relating to changes from baseline will be provided to the plaintiffs and members of the expert panel. The defendants commit to achieving meaningful continuous improvement annually with respect to goals #1 and #4 and continuous improvement with respect to goals #2, #3, and #5. Reporting will begin September 30, 2002 for goals #1 through #3. With respect to goals #4 and #5 reporting will begin as of June 30, 2003.

### III. Continuing Jurisdiction

1. The jurisdiction of the Court for enforcement of this Agreement will end five (5) years from the empanelling of the Expert Advisory Panel (EAP) called for in section IX,

4

except that the Court, for a period of eight (8) years from empanelling of the EAP, shall have jurisdiction to entertain Plaintiffs' motions for substantial non-compliance with this Agreement. In no event shall the Court's jurisdiction over this Agreement exceed eight (8) years beyond the empanelling of the EAP. The Defendants shall cooperate with the Plaintiffs' reasonable requests to provide existing data to enable Plaintiffs to assess compliance during the five-to-eight year period.

For a period of four (4) years after the effective date of this agreement, the Defendants shall prepare an annual written report which:

   a. identifies CSDE activities related to the five stated goals and implementation of this Agreement for the prior school year;

   b. reports on all statewide and district-by-district data related to class members; and

   c. reports on the documented progress on each stated goal.

The report will also set forth CSDE's proposed activities for the next school year to implement this agreement. The annual report will be submitted to the Court, the Expert Advisory Panel (EAP), and the Plaintiffs for review no later than June 30th of each year, except for the first report. The first report shall be submitted September 30, 2002; the final report will be submitted June 30, 2005. The parties will meet annually to discuss CSDE implementation and ways to effectively increase progress towards the achievement of each of the stated goals. See *Section IX, Expert Advisory Panel* for related information. The annual reporting

requirements of this paragraph shall terminate in June of 2005 unless the Court issues further orders extending the reporting period.

2. The Defendants shall have the right at any time to move or petition the Court for an end to the Court's jurisdiction and for dismissal of the matter based on the Defendants' substantial compliance with the terms of this Agreement.

## IV. Responsibility

1. The Connecticut State Board of Education has issued a position statement with regard to the education of children with disabilities. The Parties agree that this position statement (attached to this agreement) reflects the intent of IDEA.

2. The Defendants will issue a policy letter from the Commissioner of Education within ninety (90) days of the Court's approval of this Agreement, which reiterates the Board position and which affirms the right of each child with mental retardation or another disability to be educated with non-disabled children to the maximum extent appropriate.

In addition, the Defendants will issue a policy memorandum from the Chief of the Bureau of Special Education and Pupil Services of the Connecticut State Department of Education (CSDE) that reiterates the individual student decision-making process that must be followed by the Planning and Placement Team (PPT) with regard to identification of the least restrictive educational environment for each child who has mental retardation and other disabilities, including the requirement that the PPT consider the placement of the student in regular classes with supplementary aids and services.

The policy memorandum shall inform LEAs that the CSDE shall conduct oversight activities to ensure that class members, whenever appropriate, are placed in regular classes, in home schools, and in extracurricular activities with appropriate supplemental aids and services, that promising practices are used with regard to instruction in regular classes, and that, whenever appropriate, class members who are placed out of district will be returned to their home districts.

The policy memorandum shall inform LEAs of the joint state and local obligation to work towards the greater successful inclusion of students with mental retardation in all aspects of the school program through actions such as placement in home schools and regular classes, participation in extracurricular activities with appropriate supplementary aids and services, and use of promising practices with regard to instruction in regular classes.

The policy letter and policy memorandum will be forwarded together with a copy of this Settlement Agreement to each superintendent of schools, each member of the school board of each LEA, each IDEA hearing officer, and each teacher preparation program in Connecticut.

## V.  Program Compliance Review (Monitoring)

1. CSDE will establish a targeted, data-based monitoring system to facilitate continuous improvement in each of the stated goals of this Agreement. The monitoring system established by the defendants shall enable defendants to collect, analyze, and use quantitative and qualitative information and data to identify problems and provide

consistent feedback to all LEAs on their performance in achieving the five stated goals of this Agreement.

2. In addition, state defendants will monitor the participation and progress of students with mental retardation or intellectual disability in the general curriculum, use of out-of-district placements, and use of, in CSDE's judgement, promising practices with respect to the education of class members with non-disabled students. State defendants will also monitor the availability of supplementary aids and services to support the regular class placements of such students and the implementation of hearing officers' final decisions related to LRE for such students.

3. The focus of monitoring activities will be continuous improvement. Districts that are not making satisfactory progress toward the stated goals established pursuant to this agreement, or found deficient as a result of monitoring established pursuant to paragraph #2, will receive a focused monitoring by the defendants designed to identify and provide solutions to the district's failure to make progress.

4. As part of its Program Compliance Review (PCR) for 2002-2003, the CSDE will include those LEAs (approximately 8-12 in the first year of the implementation of this agreement) most in need, as determined by CSDE in its annual review of data related to the stated goals of this agreement. This focused monitoring activity in the eight to twelve LEAs in year one is not meant to exclude other LEAs from monitoring activities required by this agreement.

Activities for the identified districts will include the following:

a. Review of relevant data reflecting identification and placement of students with mental retardation or intellectual disability;

b. On-site visits;

c. Annual development by each district of an improvement plan related to the stated goals of this agreement;

d. Customized training of district staff in principles and strategies of effective and promising instruction in regular classes; and

e. Monitoring of districts' efforts toward achieving continuous improvement on the five goals stated in this agreement consistent with Section II.

## VI. Technical Assistance

1. To support full implementation of IDEA throughout Connecticut and to fully implement this Agreement, the Defendants shall:

   1. design and implement a system of technical assistance to be made available to all LEAs to enable them to extend and improve education in regular classes for students with mental retardation or intellectual disability; and

   2. utilize federal professional development funds to provide, as a component of the system of technical assistance, a sufficient number of qualified specialists to assist LEAs in carrying out their training, supervision and support responsibilities specified in this Agreement. These specialists shall possess, in the CSDE's

judgment, knowledge and skill in teaching students with mental retardation or intellectual disability in regular classes, and in assisting teachers and other personnel to accommodate and to support students with mental retardation or intellectual disability in regular classes.

2. The State Commissioner of Education will designate a staff person, who in the Commissioner's judgment possesses appropriate professional qualifications and experience, with responsibility to design, implement, and coordinate all efforts under this agreement, including technical assistance. The designated staff person shall be responsible for the progress in implementing the terms of this agreement and the good faith efforts of the CSDE in meeting the five stated goals set forth in Section II. State defendants shall provide the designated staff person with the administrative support, consultants and other resources necessary to perform the functions set forth. The designated staff person shall serve as the liaison to members of the Expert Advisory Panel.

3. The EAP, established under Section IX below, will advise the CSDE and make recommendations regarding the establishment of technical assistance, the identification of and qualifications of specialists as well as the effectiveness and adequacy of the technical assistance provided to advance the goals of this Agreement.

**VII.   Parent Involvement**

The state defendants, with the advice and assistance of the Connecticut Parent Advocacy Center, shall allocate funds for training programs to enable parents of class members to effectively advocate for the education of their children in least restrictive environments.   Such

programs shall provide for the continuing training of parents in the development of IEPs, management and teaching activities and routines, and the development of active parent groups.

Continuing through June 30, 2005, the CSDE will allocate funds to the Connecticut Parent Advocacy Center (CPAC) to conduct parent training focused on implementation of this Agreement for class members and the implementation of 20 U.S.C. 1412(a)(5)(A). CPAC shall work closely with other parent-centered groups, such as the Connecticut Coalition for Inclusive Education, in the design and conduct of this training.

## VIII. Complaint Resolution Process

CSDE will establish and maintain a complaint resolution process to resolve complaints pursuant to 34 C.F.R. § 300.660. The parties recognize that CSDE must seek to comply with all directives of the U.S. Department of Education regarding what is required of the complaint resolution process.

## IX. Expert Advisory Panel (EAP)

State defendants shall establish an Expert Advisory Panel to advise the parties and the Court regarding the implementation of this Agreement. This EAP will consist of four individuals agreed to by the parties, with each party nominating two members, but with both parties agreeing to all four individuals prior to agreement. The Expert Advisory Panel shall have the following responsibilities:

1. Advise and serve as a resource to CSDE with respect to implementation of all aspects of this agreement including the design and conduct of technical assistance, training and monitoring of LEAs. All advice and recommendations of the Expert Advisory Panel

shall be made by consensus and represent the collective judgment of the Panel as a whole. The CSDE will not be bound by either the individual or collective advice of the EAP. Individual members of the Expert Advisory Panel may, at the request of the CSDE, participate in the design and conduct of training, technical assistance and monitoring described in this Settlement Agreement.

2. Facilitate the defendants' compliance with this Agreement, identifying difficulties in compliance, facilitating resolution of compliance issues without court intervention, and referring to the court issues that cannot be resolved by discussion and negotiation.

3. receive the annual reports prepared pursuant to Section III (2) and will provide annual written comment to the Court, plaintiffs and defendants.

4. review annually and make recommendations relating to progress toward the goals stated in Section II, development of statewide technical assistance, targeted monitoring, complaint resolution, parent training, and next steps.

5. Collect and analyze data it deems necessary relating to class members and the implementation of this agreement. The parties shall jointly develop procedures and protocols that shall protect the confidentiality of client specific data and student records.

6. The State Commissioner shall convene the Expert Advisory Panel in Hartford within ninety (90) days of the effective date of this Agreement. Thereafter, the EAP will meet three (3) times per year and more often as necessary, with a schedule developed jointly by the EAP and the CSDE.

7. Members of the EAP shall be reimbursed by the state defendants for their reasonable expenses, subject to prior approval and regular state procedures.

8. Nothing in this agreement limits the EAP's ability to bring issues related to the implementation of this Agreement to the attention of the Court.

## X. **Payment**

The Defendants shall make to the Plaintiffs in P.J., et al v. State of Connecticut Board of Education, et al, a one-time payment of $675,000.00 in attorneys' fees and costs, payable to Attorney David Shaw, attorney for the Plaintiffs, within ninety (90) days of the effective date of the approval of this agreement.

## XI. **Total Agreement**

This agreement contains the complete and sole agreement of the parties.

Signatures:

_____ 3/26/2002
Theodore S. Sergi        Date
Commissioner
CT State Department of Education

_____ 3/26/02
Ralph E. Urban        Date
Assistant Attorney General
Office of the Attorney General

_____ _____
Frank Laski        Date
Attorney for the Plaintiffs

_____ 3/28/02
David Shaw        Date
Attorney for the Plaintiffs

13

7. Members of the EAP shall be reimbursed by the state defendants for their reasonable expenses, subject to prior approval and regular state procedures.

8. Nothing in this agreement limits the EAP's ability to bring issues related to the implementation of this Agreement to the attention of the Court.

## X. Payment

The Defendants shall make to the Plaintiffs in P.J., et al v. State of Connecticut Board of Education, et al, a one-time payment of $675,000.00 in attorneys' fees and costs, payable to Attorney David Shaw, attorney for the Plaintiffs, within ninety (90) days of the effective date of the approval of this agreement.

## XI. Total Agreement

This agreement contains the complete and sole agreement of the parties.

Signatures:

_____    _____
Theodore S. Sergi         Date      Ralph E. Urban          Date
Commissioner                        Assistant Attorney General
CT State Department of Education    Office of the Attorney General

_____    _____
Frank Laski               Date      David Shaw              Date
Attorney for the Plaintiffs         Attorney for the Plaintiffs