UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.J., et al., | : | CIVIL NO. |
| Plaintiffs, | : | 291CV00180 (RNC) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT,  et al. | : | |
| Defendants. | : | AUGUST 8, 2008 |

**REPLY TO MEMORANDUM IN OPPOSITION TO
MOTION TO COMPEL DISCOVERY**

**I.      INTRODUCTION:**

The facts relating to the issues raised by the Plaintiffs' Motion for Orders Compelling

Compliance with Discovery and Compliance with Settlement Agreement [Doc. # 566] are not in

dispute. The parties entered into a Settlement Agreement that was approved by the Court

following a Fairness Hearing on May 22, 2002.  [Doc. # 462].  The Settlement Agreement was

then filed with the Court.  [Doc. # 463].  The Court retained jurisdiction over the case and did

not enter any orders dismissing the case or that otherwise limiting its jurisdiction.  During the

first five years of the Settlement Agreement the Expert Advisory Panel filed five reports with

the Court indicating that the State Defendants made inadequate progress in implementing the

Settlement Agreement.  However, after a conference with the Court, and at the Court's urging,

the Plaintiffs met with the Expert Advisory Panel ("EAP") and Defendants during the first five

years of the implementation period and attempted in good faith to use the remedial process

described in the Settlement Agreement to resolve their complaints relating to the Defendants'

failure to implement the Settlement Agreement. During that five year period the EAP identified

areas of substantial non-compliance in reports to the Court and attempted to address its

concerns through meetings with the parties.  The Defendants dismissed the EAP on May 16,

2007 over the objection of Plaintiffs at a time when areas of non-compliance were substantial

and readily apparent to all parties.  The Plaintiffs then attempted to conduct an independent

assessment of the extent to which Defendants were in compliance with the Settlement

Agreement pursuant to Section I.3 of the Settlement Agreement. Defendants cooperated in

Plaintiffs' expert reviews in local school districts, but repeatedly failed to provide sufficient

data and documents necessary to assess compliance.  Affidavit of Heather Hammer, Ph.D.

(Exhibit G to Memorandum in Support of Motion for Orders Compelling Compliance With

Discovery and Compliance with Settlement Agreement) ¶¶ 7-12.  [Doc. # 566].  In fact,

throughout the implementation of the Settlement Agreement, the Defendants have failed and

refused to provide documents and data necessary to identify class members and/or explain why

nearly one-third of the class has apparently disappeared and hundreds have been reclassified to

other disability groups and eliminated from Defendants' assessments of compliance without

explanation. *Id.*  Defendants have refused to provide sufficient data and documents that would

allow Plaintiffs to adequately assess compliance with the Settlement Agreement or cooperate

with Plaintiffs' attempts to independently assess compliance through the discovery process.

Memorandum in Support of Motion for Orders Compelling Compliance with Discovery and

Compliance With Settlement Agreement, pp. 3 - 5.  [Doc. # 566].  The Plaintiffs, on April 16,

2008, filed a Motion for Orders To Remedy Substantial Non-Compliance on Motion to Compel

Discovery and sought discovery in connection with that Motion.  [Doc. # 550].  In that Motion, the Plaintiffs allege, based on information currently available, substantial statewide non-compliance with the Settlement Agreement.  The Plaintiffs sought discovery in order to ensure that a complete, accurate and up to date record was available in connection with Plaintiffs' Motion for Substantial Non-Compliance.  The Plaintiffs filed a Motion for Orders Compelling Discovery when Defendants refused to comply with Plaintiffs' discovery.[1]  [Doc. # 566].

The Defendants now argue that the Court cannot order necessary discovery in connection with Plaintiffs' Motion for Substantial Non-Compliance because the text of the Settlement Agreement and the Court's approval of that Settlement Agreement deprives the Court of jurisdiction to order discovery.

## II.    ARGUMENT:

### 1.  The Defendants' Argument that Discovery Is Not Authorized By The Settlement Agreement Is Incomplete and Without Merit.

The Defendants argue, citing *United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971) and *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2nd Cir. 1999), that the meaning of the Settlement Agreement, and the Court's power to enforce it, must

---

[1] The Defendants provided a partial response to Plaintiffs' Motion for Disclosure and Production dated June 12, 2008 several days after this Motion was filed with the Court. See, Exhibit A hereto.  In that response the Defendants identified state employees most knowledgeable about CSDE's efforts to implement the Settlement Agreement, but Objected to Plaintiffs' Motion for Production/Inspection and refused to make its employees available for interviews with Plaintiffs' experts and depositions.  *Id*.  This Motion therefore seeks to compel the Defendants to comply with the Plaintiffs' Notices of Deposition, to overrule Defendants' Objection to Plaintiffs' Request for Production/Inspection on pages 6 and 7 of Plaintiffs' Motion for Disclosure and Production and an order that would require Defendants to comply with this Request for Production/Inspection.

be discerned within the four corners of the document. Defs' br. at 3.  The Defendants argue that the Court does not have jurisdiction to oversee and supervise litigation to enforce the Settlement Agreement, or to order discovery necessary to properly develop the evidentiary record relating to an enforcement motion.

The Defendants' argument should be rejected for several reasons.  First, the Defendants' description of the applicable law is incomplete and therefore inaccurate. While Defendants are correct that a court cannot expand or contract the terms agreed upon, they have failed to note the long line of cases that recognize that authorizing a Court to entertain enforcement motions vests it with equitable discretion to enforce the obligations imposed on the parties. *See, U.S. v. Local 359, United Seafood Workers*, 55 F.3d 64, 68 -69 (2nd Cir.,1995); *EEOC v. Local 580, International Association of Bridge, Structural & Ornamental Ironworkers,* 925 F.2d 588, 593 (2d Cir.1991) ("[T]hough a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad."); *Berger v. Heckler,* 771 F.2d at 1567-68 (consent decrees are "hybrid" in the sense that, though construed as contracts, "they are ... enforced as orders"). The court's interest in protecting the integrity of such a decree "justifies any reasonable action taken by the court to secure compliance." *Id.* at 1568 (internal quotes omitted). "Until parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion-pursuant to its independent, juridical interests-to ensure compliance." *EEOC v. Local 580, International Association of Bridge, Structural & Ornamental Ironworkers,* 925 F.2d at 593.

The Defendants have failed to address the Plaintiffs' argument that under this case law, the Court has the power to order discovery to ensure that motions for substantial non-compliance are properly presented and addressed based on a full and accurate trial record.

Moreover, the Defendants ask the Court to conclude from the inapposite commercial cases they cite, that in interpreting the Settlement Agreement, the Court may not take into account the nature of the subject matter of the lawsuit or the fact that this Settlement Agreement "reach[s] beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 758 (1992). The Second Circuit has repeatedly held that a more flexible approach in implementing and modifying such decrees is essential to achieving the goals of reform litigation. *Id.* The Defendants attempt to treat the Settlement Agreement as if it were a commercial contract, ignores the public purpose of the Settlement Agreement to integrate some 4000 students with intellectual disabilities into regular classrooms throughout the State of Connecticut, and is at odds with case law relating to the implementation of settlement agreements in institutional reform litigation.

Second, the Defendants have not responded to the Plaintiffs' straightforward argument on pages 8 and 9 of their memorandum that Section I.3 of the Settlement Agreement requires the Defendants to comply with the Plaintiffs' discovery requests. Under that Section, the Plaintiffs are authorized to collect such data and files relating to the adequacy of the class list and to collect and analyze information for all purposes relating to the enforcement and

implementation of the Settlement Agreement and to resolve disputes over compliance through negotiation and litigation of matters referred by the EAP and motions for substantial non-compliance.  As the Affidavit of Heather Hammer, Ph.D. indicates, Plaintiffs have not been able to assess the adequacy of the class list or compliance, or take appropriate action based on the computer data and documents the Defendants have produced.[2]  Affidavit of Heather Hammer, Ph.D. (Exhibit G to Memorandum in Support of Motion for Orders …) ¶¶ 5-12.  In these circumstances, Section I.3 must be interpreted as requiring the Defendants to comply with Plaintiffs' reasonable discovery requests.  Given the specific language of  the Agreement the Court can order the requested discovery without resort  to  its inherent power or ancillary jurisdiction . Third, the text of the Agreement does not support the Defendants' argument that the parties intended to deprive the Court of the power to enter such discovery orders as necessary to ensure that motions for substantial non-compliance are fully and fairly tried.  The Defendants argue on page 8 of their brief, that the Court has entered an order limiting its jurisdiction.  However, the record clearly indicates that the Court has not entered any order dismissing this lawsuit, or otherwise limiting its jurisdiction in any way.  Rather, it has approved the Settlement Agreement and has retained any and all powers necessary to fully implement the Settlement Agreement until such time "as the court should end its jurisdiction

_____

[2] The Defendants have also not contested Plaintiffs' interpretation  on pages 8 and 9 of their Memorandum that the word "data" that appears throughout the Settlement Agreement clearly has a much broader meaning than "computer data" given the parties' stipulation in Sections III.3. and IX.5 that the EAP and Plaintiffs are to have access to sufficient data to fully assess the adequacy of implementation, resolve disputes out of court, make recommendations to the Court, and file Motions for Substantial Non-Compliance where efforts to resolve disputes out of court are not successful.

and dismiss[es] this matter as provided in Section III [of the Settlement Agreement].  Settlement

Agreement § I.3.

   Moreover, the Defendants' argument that the parties have expressed the intention to

limit the Court's jurisdiction such that it can entertain motions for substantial non-compliance,

but not manage or oversee the litigation of such motions, strains the language of the Settlement

Agreement beyond recognition.  The Defendants argue that the parties' intention to deprive the

Court of its power to manage motions brought before it can be found from the fact that the

parties stated in the Settlement Agreement that "the jurisdiction of the Court for enforcement

will end five (5) years from the empanelling of the Expert Advisory Panel."[3]  The problem with

this argument is that the Court's jurisdiction to entertain enforcement motions is the same

throughout the entire eight year life of the Settlement Agreement, and the Settlement

Agreement contains no explicit limitation on the Court's power to entertain discovery motions

in connection with motions filed to enforce the Settlement Agreement.  Defendants are urging

the Court to read a restriction into the Agreement without citing any text that supports their

argument.  As a court must interpret the Agreement according to the plain meaning of the

explicit language of the Agreement, the Defendants improperly seek to have the Court depart

---

[3] Section III.1 of the Settlement Agreement provides that:
   "[t]he jurisdiction of the Court for enforcement of this Agreement will end five(5) years from the
   empanelling of the Expert Advisory Panel (EAP) called for in Section IX, except that the Court, for a
   period of eight(8) years from empanelling of the EAP, shall have jurisdiction to entertain Plaintiffs'
   motions for substantial non-compliance with this Agreement….
Settlement Agreement, § III.1.

from the accepted rules of construction and find a restriction where the plain meaning of the

applicable text does not support such interpretation. *Berjer v. Hecker*, 771 F.2d 1556, 1568 (2nd

Circ. 1985)

      The Settlement Agreement does not explicitly detail the power of the Court has with

respect to managing and overseeing discovery or whether its jurisdiction to oversee and compel

discovery is any different in years five through eight of the implementation period than it is

during years one through five.[4]  Defendants do not argue, and the text does not support the

argument that the Settlement Agreement places any limits on the Court's power to manage and

oversee discovery or places any different limitation during the fifth through the eighth years

implementation that it does during years one through five of the Agreement.  Moreover,

Defendants have not proffered any case law to support its argument that a court that has

retained jurisdiction over a Settlement Agreement may be so restricted in its power to supervise

enforcement litigation that the class representative is deprived of sufficient information to

present the case to the court.

      On page 5 of its brief the Defendants again assert that "the District Court's power is

circumscribed almost completely in years five through eight."  However, Defendants do not

point to any specific language in the Settlement Agreement that indicates that the Court's power

---

[4] Although it does not address the scope of the Court's power to order discovery, section I.2 provides that the Plaintiffs have the same right to collect data and access to files relating to class members for all purposes relating to the enforcement and implementation throughout the implementation period until this case dismissed by the Court under Section III of the Agreement.  The Plaintiffs' right to access to existing data sufficient to assess compliance during the five to eight year period is reiterated in Section III.1.

to oversee discovery relating to Motions for Substantial Non-Compliance during years five through eight is circumscribed in any way or is greater in years one through five then it is during years five through eight.

The Defendants argue that the jurisdiction to enforce during years one through five of the Agreement can arguably be interpreted to allow the Court to enter orders compelling discovery, but that the Agreement cannot be interpreted to compel discovery relating to Motions for Substantial Non-Compliance during years five through eight. Again, the Defendants have not identified any text of the Settlement Agreement that limits the Court's inherent power to order discovery relating to motions for substantial non-compliance during any phase of the Agreement. The parties clearly intended the Court to have jurisdiction to manage and oversee litigation concerning Motions for Substantial Non-Compliance throughout the eight-year life of the Settlement Agreement.

The Defendants argue that during years five through eight of the Settlement Agreement, the Court's jurisdiction is limited to entertaining motions for substantial non-compliance. Defs' br. at 7. The Defendants urge the Court to reach this conclusion based on the fact that the only provision relating to jurisdiction after years one through five authorizes the Court to entertain motions for substantial non-compliance. The problem with this argument is that the Settlement Agreement provides that the Court has the same jurisdiction to entertain motions for substantial non-compliance throughout the entire life of the Settlement Agreement. It does not provide that the Court has more or less power to supervise litigation involving motions for substantial non-

compliance in year one of the Agreement, than it does in year eight.  With respect to motions

for non-compliance, the Agreement extends the same power throughout the entire life of the

Agreement.  Defendants' argument that the Settlement Agreement can "certain[ly]" be

interpreted to authorize discovery during the first five years, but the only Settlement Agreement

text referenced is the Court has "jurisdiction …for enforcement of this Agreement."

Defendants fail to explain how the jurisdiction for enforcement in the first five years is any

different from the jurisdiction to entertain motions for substantial non-compliance for the eight

year period following the empanelling of the EAP.  The Defendants have produced no

compelling argument based on the text of the Agreement or the Court record that the Court has

limited its power to order discovery relating to motions for substantial non-compliance, that the

parties intended to limit the Court's power to enter such discovery orders, or that the parties

have the power to strip the Court of its ability to properly handle motions properly brought

before it under the Settlement Agreement.

        Having failed to find any language in the Settlement Agreement that limits the Court's

power with regard to discovery in aid of enforcement motions, the Defendants argue that the

sentence in Section III.1 – that during years five through eight the Defendants "shall cooperate

with the Plaintiffs' reasonable requests to provide existing data to enable Plaintiffs to assess

compliance…" – is rendered meaningless if Plaintiffs' argument that discovery is available in

connection with motions for substantial non-compliance is accepted.  Defs' br. at 6.  According

to Defendants, this sentence is unnecessary if full and complete discovery is available under the

Settlement Agreement under Section III.1.

This argument is untenable for three reasons. First, it ignores the fact that essentially the same requirement appears in Section I.3. of the Settlement Agreement and that requirement applies "for all purposes relating to the enforcement and implementation of this Agreement" throughout the life of the Settlement Agreement. Second, it ignores the fact that the Sections I.3 and III.1 clearly were intended to require voluntary production of information and voluntary resolution of disputes under the Settlement Agreement. There is nothing in these provisions that is inconsistent with the Plaintiffs' right to conduct discovery in connection with motions for substantial non-compliance. Third, Defendants' argument that Defendants' obligation in Section III.a. to produce data is inconsistent with the right to conduct discovery, makes little sense in light of the fact that the same requirement exists in Section I.3 during a period when Defendants admit discovery was authorized. Fourth, the plain meaning of the language in Section III.1 does not support the argument that the parties intended to preclude discovery to assess compliance.

**2. The Court Has Inherent Authority To Oversee and Manage Litigation Specifically Authorized By The Settlement Agreement.**

Plaintiffs argue on pages 9-16 of their brief that the Court has inherent power to order discovery to aid the Court in determining whether Defendants have complied with the Settlement Agreement even if it is determined that the Settlement Agreement itself does not require discovery. As previously mentioned, the Defendants' brief does not respond to Plaintiffs' argument that the Settlement Agreement itself requires compliance with reasonable

11

discovery requests.  In light of the Defendants' failure to respond, the Court should interpret the

Settlement Agreement as requiring compliance with Plaintiffs' discovery requests.

On pages 7 – 11 of their brief, Defendants respond to Plaintiffs' argument that the Court

has inherent power to order discovery by essentially reiterating their argument that the

Settlement Agreement prohibits discovery.  Moreover, the Defendants do not discuss or

distinguish the cases relied upon by the Plaintiffs.  Significantly, Defendants do not mention or

attempt to distinguish the case primarily relied upon by Plaintiffs – the holding of the Court of

Appeals for the Ninth Circuit Court of Appeals in *California Dept. of Social Services v. Leavitt,*

523 F.3d 1025, 1033 – 1035 (9th Cir. 1008).  In *California Dept. of Social Services v. Leavitt* the

plaintiff requested limited discovery as part of her motion to enforce the judgment.  The

requested discovery was tailored to whether the reviews required by the consent decree were

occurring and whether the retroactive benefits were being paid to claimants as required by the

consent decree.  *California Dept. of Social Services v. Leavitt,* 523 F.3d 1025, 1033 -1034 (9th

Cir., 2008).  The Court began by recognizing that "[t]here is no question that courts have

inherent power to enforce compliance with their lawful orders through civil contempt" and held

that the request for discovery to assess compliance was one the district court could have

granted, as part of its inherent power to enforce its judgments.  *Id.*  It held that the district judge

should have granted the plaintiff's request for discovery to establish noncompliance with its

order, if the request provided potentially favorable information.  *Id.*

It is readily apparent from this decision that the Plaintiffs should be authorized to

conduct discovery to assess the adequacy of compliance. Just as in *California Dept. of Social Services v. Leavitt,* the Plaintiffs cannot possibly assess compliance with the Settlement Agreement or take appropriate action to enforce it, without discovery. This is evident from the size and complexity of the lawsuit and systemic changes required. The Settlement Agreement in this matter calls for the placement of some undetermined number of the 4000 students with intellectual disabilities into regular classrooms with supplementary aids and services in the 169 school districts throughout the State of Connecticut. The Settlement Agreement also calls for the State to identify and monitor the placements of all class members, to establish monitoring systems to ensure that class members receive the supplementary aids and services needed for successful integration and for a system of technical assistance to provide technical support and training to school districts. Given the inaccurate and misleading data provided by Defendants to date, it is obvious that the Plaintiffs cannot possibly assess whether these substantial systems changes have occurred unless discovery is permitted.

The Defendants' arguments do not address the holding in *California Department of Social Services v. Leavitt* or obvious inability of the Plaintiffs or the Court to assess compliance without discovery. Rather, they reiterate their unsupported argument that the parties in the Settlement Agreement precluded discovery. The simple answer to Defendants' position is that the Settlement Agreement states that motions for substantial non-compliance can be filed during years five through eight of the implementation period. It does not state, however, whether discovery will be permitted. Without discovery, the Settlement Agreement's provision allowing

motions for substantial non-compliance during years five through eight of the Agreement is meaningless.  Indeed, by prohibiting discovery, the Court would depriving the Plaintiffs of the benefit of their bargain that meaningful enforcement motions would be permitted in years five through eight of the Agreement.

Defendants also assert that the cases cited by Plaintiffs are distinguishable, but they make no attempt to distinguish the cases relied upon by Plaintiffs.[5]  Instead, the Defendants cite cases standing for the proposition that the Court may not alter an "explicit agreement" to limit the Court's jurisdiction.  Defs' brief at 8, 9.  However, as previously argued, there is no language in the Settlement Agreement that limits discovery in aid of a motion for substantial non-compliance. Moreover, the cases cited by Defendants shed no light on the Defendants' argument that a Court does not have inherent power to order discovery necessary to pursue an admittedly proper enforcement motion.[6]

On pages 9 and 10 of their brief the Defendants argue that the Court has no power to enter discovery orders because Judge Chatigny did not enter an order explicitly reserving specific authority to order discovery or take action other than what is contained in the four

---

[5] The only case they seek to distinguish is *Consolidated Coal Co. v. United States Dept. of Interior*, 43 F.Supp.857, 863 (S.D. Ohio 1999).  Plaintiffs cited that case on page 10 footnote 2 for the limited proposition that "[a] court has jurisdiction where jurisdiction is retained after the matter is settled."  This legal principle is well established and is not at issue here.

[6] *In re Air Crash Disaster at JFK Int'l Airport*, 687 F.2d 626, 629 (2nd Cir. 1982) involved a decision to reverse a district court judge for not honoring the parties' agreement to settle "without costs".   There is no explicit provision the Defendants seek to enforce here.  *Pigford v. Veneman,* 292 F.3d 918, 924 (C.A.D.C., 2002) supports the Plaintiffs' argument that where a court retains the power to enforce a Settlement Agreement it has ancillary jurisdiction to enter discovery orders to make its enforcement powers meaningful.

14

corners of the Settlement Agreement.[7]  However, there is no case law that holds that a federal

court must explicitly retain jurisdiction to undertake those actions necessary to fully carry out

its responsibilities under a settlement agreement, such as the jurisdiction to entertain, hear, and,

where appropriate, enter appropriate remedial orders following the filing of a motion for

substantial non-compliance. Once the court has jurisdiction to entertain a matter, it has ancillary

jurisdiction to take such actions as are necessary to "function successfully, that is to manage its

proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins.*

*Co.*, 511 U.S. 375, 380 (1994).  The Court has expressly recognized a federal court's inherent

authority to investigate and prosecute violation of a court's order. *Kokkonen v. Guardian Life*

*Ins. Co. of America,*  511 U.S. at 380.  As the parties are in agreement that the Court has

jurisdiction to entertain motions for substantial non-compliance, its inherent power to take such

---

[7] The Defendants argue on pages 9 and 10 of their brief, citing *Scelsa v. City Univ. of N.Y,* 76 F.3d 37, 40 (1996) and *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2nd Cir. 1996), that the case law holds that unless a dismissal order specifically reserves jurisdiction to enforce a settlement agreement or the dismissal order incorporates the terms of the settlement.  In making this argument the Defendants have ignored the more recent case law cited on pages 10 and 11, note 2 of the Plaintiffs' Memorandum in Support of Motion for Orders.  The more recent case law holds that where the parties stipulate that the court will have certain obligations that are beyond the power of the parties to perform and that could only be enforced by the district court, and the court carefully reviews the terms of the stipulation, or reviews it prior to approving it, the court has jurisdiction to enforce the settlement agreement.  *Torres v. Walker,* 356 F.3d 238, 243 -244 (2nd Cir., 2004).  Here, Judge Chatigny reviewed the Settlement Agreement carefully before approving it and the Settlement Agreement expressly provides that the Court retains jurisdiction to entertain motions for substantial non-compliance until the Court ends its jurisdiction and dismisses this matter under Section III of the Settlement Agreement.  Settlement Agreement § I.3. Moreover, the Court has not entered an order dismissing this lawsuit or otherwise ordered the termination of this litigation.  In these circumstances, the Court has jurisdiction to enforce the Settlement Agreement in accordance with its terms.

actions as necessary to manage its proceedings, such as ordering discovery to assess compliance, is, based on this precedent, clear.

## III.    CONCLUSION:

For the foregoing reasons, and for the reasons set out in Plaintiffs' Memorandum in Support of Motion for Orders Compelling Compliance with Discovery and Compliance With Settlement Agreement, the Court should authorize the deposition discovery requested by Plaintiffs (Exhibits B1-B4 to Memorandum in Support of Motion for Orders Compelling Compliance with Discovery and Compliance With Settlement Agreement), order the review by Plaintiffs' experts of a sample of class members who have been reclassified as requested in Plaintiffs' letter dated June 18, 2008 (Exhibit C to Memorandum in Support of Motion for Orders Compelling Compliance with Discovery and Compliance With Settlement Agreement), overrule the Defendants' objection to Plaintiffs' Request for Production/Inspection, and order the Defendants to make their employees and contractors available for interviews with Plaintiffs' experts and comply with the requests of Plaintiffs and their experts for documents and data (Exhibit A).

PLAINTIFFS,

By  /s/  David C. Shaw
David C. Shaw, Esq.
The Law Offices of David C. Shaw, LLC
Fed. Bar No. ct05239
34 Jerome Ave., Suite 210
Bloomfield, CT 06002
Tel. (860) 242-1238
Fax. (860) 242-1507
Email:  dcshaw@cttel.net

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on August 8, 2008 a copy of the foregoing Motion was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Darren P. Cunningham
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

 /s/  David C. Shaw

David C. Shaw, Esq.