UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

P.J., et al.,                    :
                                 :
      Plaintiffs,                :
                                 :
      v.                         :        CASE NO.  2:91CV180(RNC)
                                 :
STATE OF CONNECTICUT, et al., :
                                 :
      Defendants.                :


RECOMMENDED RULING ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

       Plaintiffs filed this action in 1991 against the Connecticut
State Board of Education, the State Commissioner of Education and
certain local school districts alleging violation of the
Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.
§ 1400 et seq.  They claimed that the defendants failed to comply
with the IDEA's "least restrictive environment" requirement.[1]  The
case was certified as a class action.[2]  (Doc. #224.)  In 2002, the

_____

       [1]The IDEA's "central mandate is to provide disabled students
with a free appropriate public education in the least restrictive
environment suitable for their needs." Cave v. E. Meadow Union Free
Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008).  The IDEA's "least
restrictive environment" requirement mandates that:
       [t]o the maximum extent appropriate, children with
       disabilities . . . are educated with children who are not
       disabled, and special classes, separate schooling, or
       other removal of children with disabilities from the
       regular education environment occurs only when the nature
       or severity of the disability of a child is such that
       education in regular classes with the use of
       supplementary aids and services cannot be achieved
       satisfactorily.
20 U.S.C. § 1412(a)(5)(A).

       [2]The class is defined as: "All mentally retarded school-age
children in Connecticut who have been identified as needing special

court approved a settlement agreement and closed the case. (Doc. #463.) Pending before the court is the plaintiffs' "Motion for an Award of Costs and Attorneys' Fees." (Doc. #684.) For the reasons that follow, the undersigned recommends[3] that the motion be granted in part as set forth below.

I.   Background

This case was aimed at statewide educational reform. From its inception, it has been unwieldy, complicated and challenging. Although the case culminated in a settlement agreement, the settlement process was fraught with difficulty and hobbled by miscommunication. The resulting agreement, rather than resolving the case, gave rise to a host of issues. The court has carefully and methodically reviewed the voluminous record. The following undisputed facts are necessary to place in context the instant motion for an award of attorneys' fees.

In January 2000, the parties began a trial to the court (Chatigny, J.). In March 2000, before the trial concluded, the parties began settlement negotiations with the undersigned magistrate judge. The negotiation process was bifurcated: the initial phase addressed the merits of the case and the second phase

_____

education and who, on or after February 20, 1991, are not educated in regular classrooms." (Doc. #463, Settlement Agreement.)

[3]On July 26, 2011, United States District Judge Robert N. Chatigny referred the motion to the undersigned for a recommended ruling. (Doc. #695.)

was to focus on attorneys' fees.

Negotiations were lengthy and challenging.  After several months, the parties reached a settlement agreement on the substantive provisions.  They memorialized these terms in a draft settlement agreement dated November 1, 2000.  Under the agreement, the defendants agreed to five main goals, including an increase in "the percent of students with mental retardation or intellectual disability who are placed in regular classes" and "the mean and median percent of the school day that students with mental retardation or intellectual disability spend with nondisabled students." (Settlement Agreement § II.)  The agreement provided for the creation of an "Expert Advisory Panel" (EAP) at defendant's expense "to advise the parties and the Court regarding the implementation of th[e] Agreement." (Settlement Agreement § IX.) The EAP's recommendations were not binding on the defendants. (Settlement Agreement § IX.1)  The parties agreed to meet annually regarding the defendants' implementation and progress. (Settlement Agreement § III.)  By the terms of the agreement, the court's jurisdiction expired eight years after the EAP was empaneled.[4]

The settlement agreement contemplated plaintiffs' involvement in monitoring and enforcement.  Plaintiffs were charged with nominating two of the four experts constituting the EAP. (Settlement Agreement § IX.)  Plaintiffs had "a right to collect

_____

[4]The parties agree that this date is August 12, 2010.

data" relating to students who "carry the label of either mental
retardation or intellectual disability and who are eligible for
special education" and to "challenge" that list. (Settlement
Agreement § I.)   The agreement also provided plaintiffs with
"access to data and files relating to class members," "baseline
data and data relating to changes from baseline" and defendants'
reports regarding their progress as to the five goals for "purposes
relating to the enforcement and implementation of th[e] Agreement."
(Settlement Agreement § I.3, II, III.) Plaintiffs were entitled to
"existing data to enable [them] to assess compliance" and to file
motions alleging that the defendants were in substantial non-
compliance of the agreement. (Settlement Agreement § III.)

Having reached agreement on settlement of the merits of the
case, the parties then turned to the issue of attorneys' fees.  At
the undersigned's behest, the plaintiffs provided the defendants
with a statement of attorneys' fees and costs incurred to that
point, that is, from 1991 until November 28, 2000.  The plaintiffs
demanded payment of $972,115.91.    After more negotiations,
plaintiffs agreed to accept $675,000.

On May 18, 2001, the parties met with the undersigned to
discuss some language in the agreement unrelated to fees.  The
parties agreed to certain changes which they handwrote into the
November 1, 2000 settlement agreement.  Defense counsel agreed to
incorporate the changes into the agreement and provide counsel and

the undersigned with copies.  At that point, the draft agreement
was silent as to attorneys' fees.

On June 6, 2001, the plaintiffs learned that defense counsel
had submitted the settlement agreement to the Connecticut General
Assembly and that the Connecticut General Assembly had approved the
settlement agreement.   The settlement agreement that the
legislature approved, however, included a new provision that was
not in the November 1, 2000 agreement.   Unbeknownst to the
plaintiffs and the court, defense counsel had unilaterally drafted
and inserted a provision - called Section X - into the settlement
agreement.  Section X is entitled "Payment" and states:

> The Defendants shall make to the Plaintiffs in P.J., et
> al. v. State of Connecticut Board of Education, et al.,
> a one-time payment of $675,000 in attorneys' fees and
> costs, payable to Attorney David Shaw, attorney for the
> Plaintiffs within ninety (90) days of the effective date
> of the approval of this agreement.

The plaintiffs were shocked at the inclusion of Section X.
They protested to the court that they had not agreed to Section X.
Plaintiffs pointed out that the $675,000 only reflected fees and
costs incurred to November 28, 2000 but that the language in
Section X suggested that the "675,000 is the only payment for costs
and attorneys' fees that will ever be made under" the agreement.
(Doc. #690, Ex. L.)  Plaintiffs' counsel contended that a waiver of
fees for future work had never been discussed. (Id.)  Defendants
did not dispute that there had been no discussions as to future
attorneys' fees.  (Doc. #690, Ex. N.)  They maintained that the

5

inclusion of Section X was proper because "all that remained to be done" was "to insert the provision calling for the payment of the $675,000 in attorneys' fees and costs, which was to be a single payment." (Doc. #690, Ex. N.)

The parties were at an impasse and the settlement was at risk of unraveling.  They attempted to resolve the dispute by exchanging letters containing proposed language to clarify Section X.  When these negotiations failed, the plaintiffs moved to enforce the settlement agreement without Section X. (Doc. #431.)

In an attempt to resolve their dispute and save the settlement, counsel had a settlement conference with the undersigned in February 2002.  "[P]ending ... discussions with legislative leadership," the parties agreed to certain language construing Section X.  (Doc. #690, Ex. S.) The defendants then sought and obtained approval for the proposed additional language. In a letter dated March 1, 2002, the defendants notified the plaintiffs and the undersigned that they had received the necessary authorization.  The parties' agreement on Section X is memorialized in a letter (the "side letter") from defense counsel to plaintiffs' counsel.  The letter states:

> [T]he defendants do not interpret Section X of the draft agreement to preclude the Court from awarding reasonable attorneys' fees and costs to the plaintiffs upon a finding by the Court that the defendants had failed to substantially comply with the consent decree.  The parties agree to be bound by controlling law on the issue of attorneys' fees and costs.

(Doc. #690, Ex. T, Ltr dated 3/1/02.)  With the side letter in place, the parties finally executed the settlement agreement on March 28, 2002. (Doc. #690 at 14.)  After a fairness hearing on May 22, 2002, the court approved the settlement agreement. (Doc. ##462-63.)  Defendants paid plaintiffs' counsel $675,000.

In April 2009, the plaintiffs filed a motion alleging that the defendants had failed to make adequate progress toward achieving the agreement's goals and were in "substantial noncompliance" with the settlement agreement.[5]  (Doc. #580.)  After an evidentiary hearing in June 2010, the court (Chatigny, J.) denied the plaintiffs' motion.  (Doc. ##686, 706.)  In July 2010, the plaintiffs filed the instant motion seeking attorneys' fees of $906,010.85 and costs of $197,181.15.[6] (Doc. #684.)

II.  Discussion

The plaintiffs argue that they are prevailing parties as a result of the settlement agreement and, as such, are entitled to an award of attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B), 29 U.S.C. § 794 and 42 U.S.C. § 1988.  They seek fees and costs from November 29, 2000 through the June 2010

---

[5]The plaintiffs' previous "Motion for Orders to Remedy Substantial Non-Compliance with Settlement Agreement" (doc. #549) was denied without prejudice to renewal upon resolution of a discovery dispute.  (Doc. #571.)

[6]The plaintiffs have moved to supplement their requests. (Doc. ##685, 687).

evidentiary hearing.[7]  The bulk of the requested fees is for time spent in activities plaintiffs describe as post-judgment monitoring and enforcement.  They argue they are entitled to such fees pursuant to <u>Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air</u>, 478 U.S. 546, 559 (1986) ("post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee").

The issue of the plaintiffs' entitlement to fees is hotly disputed.  In support of their motion, plaintiffs filed a compendious fee application reflecting ten years of work and approximately two thousand hours of time.  The defendants make a number of arguments in support of their position that plaintiffs are barred from collecting any fees at all.

The plaintiffs' motion presents complicated legal and factual issues best approached step by step.  In an attempt to manage the issues, the court limits its consideration at this juncture to the threshold issue of whether the plaintiffs are precluded from seeking an award of attorneys' fees.  The defendants' challenge to the amount of fees has been stayed pending the court's

---

[7]Plaintiffs divide their request into 3 phases: November 29, 2000 through March 20, 2002 for negotiating the plaintiffs' fee claim and securing a final settlement agreement after the defendants inserted Section X; March 21, 2002 through May 22, 2002 for drafting a notice of the proposed settlement to the class, preparing for the fairness hearing and securing a court-order approving the settlement agreement; and June 4, 2002 through the June 2010 evidentiary hearing for "monitoring and enforcement activities." (Doc. #690 at 15-16.)

determination as to whether the plaintiffs are eligible for such an award.[8]

The defendants maintain that the plaintiffs are not eligible for an award of fees because (1) the court lacks jurisdiction to decide their motion; (2) the plaintiffs did not comply with a court order regarding the request for fees; (3) the text of the settlement agreement precludes a fee award; and (4) plaintiffs' post-judgment work is not compensable pursuant to Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598 (2001).

A.  Jurisdiction

The defendants first argue that according to the settlement agreement, the court does not have jurisdiction to adjudicate the plaintiffs' motion.  (Doc. #688 at 2.)

The settlement agreement provides in relevant part that "[i]n no event shall the Court's jurisdiction over this Agreement exceed eight (8) years beyond the empanelling of the EAP."  (Settlement Agreement § III).  As noted, the parties agree that the court's

_____

[8]With their opposition to the plaintiffs' motion, the defendants filed a motion for extension of time.  Defendants requested that "[i]n the event that the Court does not agree with the State Defendants' arguments that Plaintiffs' motion should be denied as a matter of law," that they be granted "30 days from the court's decision in which to respond to the particular fee claims" of the plaintiffs' request.  (Doc. #689.) The undersigned granted the defendants' motion, stating: "In the event the court grants an award of attorneys' fees and costs, the court will set a date for the submission of the defendants' opposition to the particular fee claims sought in the plaintiffs' fee petition."  (Doc. #699.)

jurisdiction ended August 12, 2010.   Under the terms of the settlement agreement, defendants argue, the court "lacks jurisdiction at this time to entertain plaintiffs' motion." (Doc. #688 at 2.)

It is undisputed that the plaintiffs filed their fee application during the court's oversight period and that the motion was pending before the court when the settlement agreement expired. There is persuasive authority that the expiration of the settlement agreement does not divest the court of jurisdiction over the plaintiffs' pending motion.  See Nix v. Billington, 448 F.3d 411, 416 (D.C. Cir. 2006)("appellants' claims were within the jurisdiction of the District Court, because they were filed during the oversight period and were still pending before the trial court when its oversight jurisdiction under the Agreement expired"); Thomason v. Russell Corp., 132 F.3d 632, 634 (11th Cir. 1998) ("Neither the parties in agreeing to the Decree's provisions, nor the district court in approving them, could have intended that the court would be barred from passing on a motion to enforce the Decree simply because the court could not reach a decision until after the Decree's expiration date.").  In view of this authority, the court should decline to deny the plaintiffs' motion on the grounds of jurisdiction.

B.   Compliance with court's order

The defendants next argue that the plaintiffs' motion should

be denied because the plaintiffs did not comply with an order of the court before filing the motion.

The plaintiffs filed an earlier motion for an award of attorneys' fees and costs. (Doc. #482.) The court denied the motion without prejudice to refiling. The order stated in relevant part that "[b]efore the motion is renewed or refiled, the court shall hear from the parties as to the most appropriate manner of addressing the issue in view of the current status of the record." (Doc. #530.) The defendants state that the plaintiffs did not notify the court before they filed this motion and that as a result, the motion should be denied.

The plaintiffs represent, and the defendants do not dispute, that they sought leave from the court during the evidentiary hearing to file their motion. (Doc. #690 at 18.) Even if that were not the case, the plaintiffs' omission would not warrant denial of the motion.

C.   <u>Terms of the Settlement Agreement</u>

The defendants next argue that the plaintiffs' motion is foreclosed by the terms of the settlement agreement.

The settlement agreement provides in relevant part:

> The Defendants shall make to the Plaintiffs in <u>P.J., et al. v. State of Connecticut Board of Education, et al.</u>, a one-time payment of $675,000 in attorneys' fees and costs, payable to Attorney David Shaw, attorney for the Plaintiffs within ninety (90) days of the effective date of the approval of this agreement.

(Doc. #463, Settlement Agreement, Section X.)

11

As discussed above, after the defendants' inserted Section X, the parties agreed on additional language in a side letter to guide interpretation of Section X.  The side letter provides:

> [T]he defendants do not interpret Section X of the draft agreement to preclude the Court from awarding reasonable attorneys' fees and costs to the plaintiffs upon a finding by the Court that the defendants had failed to substantially comply with the consent decree.  The parties agree to be bound by controlling law on the issue of attorneys' fees and costs.

(Doc. #690, Ex. T, Letter dated 3/1/02.)

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002)(internal quotation marks and alteration omitted).  When analyzing a contract, the Court looks "at the contract as a whole and give[s] operative effect to all of its provisions. . . . The Court's analysis must focus on the intention of the parties, as discerned from the language they employed." Paradigm Contract Management Co., Inc. v. St. Paul Fire and Marine Ins. Co., No. 3:10cv211(MRK), 2011 WL 4348132, at *4 (D. Conn. Sept. 16, 2011)(applying Connecticut law).  "[W]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Lee v. BSB Greenwich Mortg. Ltd. Partnership, 267 F.3d 172, 178 (2d Cir. 2001). "Contract language is unambiguous when it has a definite and precise meaning concerning which there is no reasonable basis for a difference of

opinion." World Properties, Inc. v. Arlon, Inc., 663 F. Supp.2d 98, 103 (D. Conn. 2009) (quoting Isham v. Isham, 292 Conn. 170, 181 (2009)). "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Finally, in construing contracts, [the court] give[s] effect to all the language included therein, as the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous." Id. "[I]f ambiguity exists, then extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language." Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993). See also Broadcast Music, Inc. v. DMX Inc., 683 F.3d 32, 43 (2d Cir. 2012)("When the language of a [consent] decree is ambiguous . . . a court may consider, inter alia, extrinsic evidence to determine the parties' intent, including the purpose of the provision and the overall context of the decree.")

Defendants argue that "the plaintiffs, by virtue of the [settlement] agreement itself, have waived" their statutory eligibility for an award of attorneys' fees. (Doc. #688 at 6.) See, e.g., Evans v. Jeff D., 475 U.S. 717, 730-732 (1986) (prevailing party in civil-rights action may waive its statutory

eligibility for attorney's fees).  Defendants say that according to
the "plain and unambiguous wording" of the settlement agreement
"plaintiffs explicitly waived any claim to further fees and costs."
(Doc. #688 at 6.)  As support, they point to the agreement's
provision of a "one-time payment" of $675,000.  Defendants argue
that this language "clearly limits attorneys' fees and costs to a
specific, negotiated amount" and bars any further award of fees.
(Doc. #688 at 9.)

Plaintiffs are adamant that they never waived their right to
seek fees to which they might be entitled under controlling law.
Everyone understood, the plaintiffs state, that $675,000
represented compensation only for fees plaintiffs had incurred as
of November 28, 2000; the parties never agreed that plaintiffs
would be precluded from seeking future fees.  Plaintiffs maintain
that the term "one-time payment" refers to the manner of paying the
$675,000, that is, that the money was to be paid in a single
payment.  According to plaintiffs, the phrase cannot reasonably be
construed as "reflective of an intent" to waive future attorneys'
fees.  (Doc. #690 at 33.)  And further, they argue, the side letter
elucidating Section X contemplates future fees and therefore is
inconsistent with defendants' present argument that Section X acts
as a complete bar to additional fees.

The court has carefully considered the parties' arguments and
examined the settlement agreement.  The plain and unambiguous

language of the settlement agreement does not manifest an intent to waive plaintiffs' statutory right to seek attorneys' fees. It is undisputed that the $675,000 payment was only for fees plaintiffs incurred prior to November 29, 2000. The agreement, while providing for the payment of a specified amount in fees up to that point, is silent as to any other fees. It does not contain a release. There are no indicia of waiver - the agreement simply fails to address the possibility of additional attorneys' fees. See Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist., 71 F.3d 1053, 1058 (2d Cir. 1995) (where parties agreed to dismiss any claims pursuant to Rule 11 and 28 U.S.C. § 1927, "[g]iven that the parties specified with particularity that some costs were covered by their agreement, we find it difficult to conclude that the settlement manifested an unspoken intent to waive any costs not mentioned - in this instance, plaintiffs' attorneys' fees pursuant to § 1988."); Brown v. General Motors Corp., 722 F.2d 1009, 1012 (2d Cir. 1983) (settlement agreement using broad language to effect a mutual release of claims and accompanied by a stipulation that the case be dismissed "without costs to any party" "is, absent circumstances indicating otherwise, intended to settle all claims involved in the particular litigation, including a claim for attorney's fees"). The defendants' reliance on the phrase "one-time payment" as evidence of the parties' intent to waive further fees is unavailing; the phrase "one-time payment" cannot

bear the weight of the defendants' interpretation.  The agreement does not evince an intent to waive plaintiffs' attorneys' fees.

In the event that the language in Section X is ambiguous, "extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language." Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993).  Here, the parties' side letter undercuts the defendants' interpretation.  See Torres v. Walker, 356 F.3d 238, 246 (2d Cir. 2004)(finding the language of the stipulation at issue was clear and that even if it was not, extrinsic evidence supported plaintiffs' interpretation).  The defendants do not address the parties' agreed upon side letter.  But the history of the negotiations makes apparent that the side letter was a linchpin in the parties' agreement to resolve the case.  The record is plain that the parties were not able to reach settlement until they agreed upon language construing Section X.  The purpose of the side letter was to inform the interpretation of Section X.  By providing that plaintiffs could be awarded fees if the court found that the defendants failed to substantially comply with the consent decree and that "controlling law" would dictate the award of fees, the side letter reflects the parties' agreement that Section X was not a complete bar to future fees. (Doc. #690, Ex. T, Letter dated 3/1/02.)

D.   <u>Controlling Law</u>

Not surprisingly, the parties do not agree on the "controlling law" regarding fees.  The defendants argue that fees are foreclosed by the controlling law espoused in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources</u>, 532 U.S. 598 (2001).   The plaintiffs, on the other hand, rely on <u>Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air</u>, 478 U.S. 546 (1986) as the controlling law that permits compensation for their post-judgment activities.

Defendants maintain that plaintiffs' reliance on <u>Delaware Valley</u> is misplaced in view of the Supreme Court's subsequent decision in <u>Buckhannon</u>.  According to defendants, <u>Buckhannon</u> wrought "a fundamental change" in the law and precludes an award of fees for post-judgment monitoring that does not lead to a judgment or order.  (Doc. #688 at 7.)  Defendants point out that the plaintiffs' post-judgment efforts did not result in a "judicially sanctioned change in the legal relationship of the parties," which is required under <u>Buckhannon</u> for attorneys' fees.  <u>Buckhannon</u>, 532 U.S. at 605.  Plaintiffs respond that <u>Buckhannon</u> does not disturb the court's discretion under <u>Delaware Valley</u> to award prevailing civil rights plaintiffs attorneys' fees for post-judgment monitoring.

In <u>Delaware Valley</u>, the Supreme Court permitted fees for time counsel spent in administrative hearings because the time spent was

reasonably necessary to "secure the final result obtained from the litigation." 478 U.S. at 561. The court reasoned that "[p]rotection of the full scope of relief afforded by the consent decree . . . [is] crucial to safeguard the interests asserted by [plaintiff]; and enforcement of the decree, whether in the courtroom before a judge, or in front of a regulatory agency, . . . involve[s] the type of work which is properly compensable as a cost of litigation." 478 U.S. at 558. As described by the Supreme Court, to be compensable, the work must be "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Id. at 561. "Application of this standard is left to the discretion of the district judge." Id. In light of Delaware Valley, courts have awarded fees for post-judgment monitoring. See, e.g., Martin v. Hadix, 527 U.S. 343, 347-49 (1999) (awarding attorneys' fees for post-judgment monitoring performed in prison litigation); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1145 (2d Cir. 1983) (remanding due to excessiveness of fees, but permitting fees incurred in connection with monitoring compliance of consent decree); West v. Manson, 163 F. Supp.2d 116, 119 (D. Conn. 2001)("prevailing civil rights plaintiffs are entitled to reasonable attorneys' fees for post-judgment monitoring").

In Buckhannon, the Supreme Court considered the meaning of "prevailing party" for purposes of federal fee-shifting statutes.

18

The court rejected the "catalyst theory" for "gauging whether the prevailing parties requirement was met. . . . Under the catalyst theory, a plaintiff prevailed for the purpose of fee-shifting provisions whenever the lawsuit 'had sufficient merit to withstand a motion to dismiss' and 'brought about a voluntary change in the defendant's conduct.'" Perez v. Westchester County Dept. of Corrections, 587 F.3d 143, 150 (2d Cir. 2009) (quoting Buckhannon, 532 U.S. at 601, 605.) "Instead, the Court held, plaintiffs must receive 'some relief on the merits' to be termed prevailing parties, as, for example, when they win a judgment on the merits or obtain 'settlement agreements enforced through a consent decree.'" Perez, 587 F.3d at 150 (quoting Buckhannon, 532 U.S. at 603-04).

Courts considering Delaware Valley and Buckhannon have held that the cases are not inconsistent.  The case of Balla v. Idaho, 677 F.3d 910 (9th Cir. 2012), decided after the parties briefed this issue, is instructive.  In that case, the Ninth Circuit concluded that Delaware Valley survives Buckhannon.  The court distinguished the cases, explaining that Buckhannon "speak[s] to the case where there never has been judicially ordered relief" whereas "Delaware Valley speaks to the case where there has been judicial relief, though the monitoring work is subsequent to the judicial order and produces no new order." Id. at 918.  Other circuits have similarly held that attorneys' fees for post-judgment monitoring not resulting in additional relief may be awarded after

19

Buckhannon.   See Johnson v. City of Tulsa, 489 F.3d 1089, 1108
(10th Cir. 2007) ("Buckhannon does not purport to overturn, or even
limit, Delaware Valley. . . In light of Delaware Valley . . . we
cannot accept the proposition that attorney fees for post-decree
efforts are compensable only if they result in a judicially
sanctioned change in the parties' legal relationship. The Decree
itself was such a change, and attorney fees incurred for reasonable
efforts to enforce that change - that is, protect the fruits of the
Decree - are compensable."); Cody v. Hillard, 304 F.3d 767, 773
(8th Cir. 2002) (plaintiffs were prevailing parties as a result of
consent decree and were entitled to reasonable fees for monitoring
compliance with decree). But see Alliance to End Repression v. City
of Chicago, 356 F.3d 767, 771 (7th Cir. 2004)("Monitoring may
reduce the incidence of violations of a decree, but if it does not
produce a judgment or order, then under the rule of Buckhannon it
is not compensable.")  Under the relevant controlling law, then,
"post-judgment monitoring of a consent decree is a compensable
activity for which counsel is entitled to a reasonable fee."
Delaware Valley, 478 U.S. at 559.

     For all these reasons, an award of attorneys' fees is not
wholly barred by either the terms of the settlement agreement, the
plaintiffs' failure to seek leave prior to filing their motion, or
the Supreme Court's decision in Buckhannon.  This, however, does
resolve the plaintiffs' motion.  Only the preliminary question of

whether the plaintiffs are barred from an award of attorneys' fees has been answered.  Finding that the plaintiffs are not foreclosed from an award of attorneys' fees and costs is not the same as concluding that they are entitled to the award they seek.  That determination remains.  In the next step, the court must determine, inter alia, whether the activities for which plaintiffs seek compensation are properly compensable.  As the court earlier indicated, the defendants have yet to brief this issue.

Caselaw gives guideposts as to an award of fees.  Establishing prevailing party status in one stage of litigation "does not make all later work compensable." Blackman v. District of Columbia, 328 F. Supp.2d 36, 42 (D.D.C. 2004).  See Rosie D. ex rel. John D. v. Patrick, 759 F. Supp.2d 146, 150 (D. Mass. 2011)(reasonable monitoring "does not give a plaintiff's attorney carte blanche to expend whatever hours are deemed necessary, willy nilly, with confidence that the court will necessarily award fees to compensate them.")  To be compensable under Delaware Valley, the precedent upon which plaintiffs rely, activities must be "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Delaware Valley, 478 U.S. at 561.  Courts have construed Delaware Valley as permitting compensation to plaintiffs "for work done in protecting and enforcing their favorable judgment, even where those efforts are not entirely successful, provided that the work was reasonably necessary and appropriate and

contributed to some degree to the goal of ensuring the defendants' compliance with the judgment." West v. Manson, 163 F. Supp.2d 116, 119 (D. Conn. 2001). See, e.g., Cody v. Hillard, 304 F.3d 767, 775 (8th Cir. 2002) (work done to defend a remedy is compensable).

To adjudicate the compensability of the fees and costs plaintiffs request, the court requires further input from the parties. Following the District Judge's ruling on this recommended ruling, the undersigned will set a schedule.

III. Conclusion

For these reasons, the court recommends that the plaintiffs' motion for attorneys' fees and costs (doc. #684) be granted only as to the plaintiffs' eligibility to seek further fees as set forth herein.

Any party may seek the district court's review of this recommendation. See 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within fourteen days after service of same); Fed. R. Civ. P. 6(a), 6(d) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut. Failure to timely object to a magistrate judge's report will preclude appellate review. Small v. Sec'y of Health and Human Serv., 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED at Hartford, Connecticut this 21st day of August, 2012.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge